**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CLOVIS ONCOLOGY, INC., *et al.,*[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 22-11292 (JKS)<br><br>(Jointly Administered)<br><br>**Objection Deadline:**<br>**January 19, 2023 at 4:00 p.m. (ET)**<br><br>**Hearing Date:**<br>**January 26, 2023 at 10:00 a.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**PURSUANT TO SECTIONS 105(a), 362(a)(3) AND 541 OF THE**
**BANKRUPTCY CODE AND BANKRUPTCY RULE 3001, ESTABLISHING**
**NOTICE AND HEARING PROCEDURES FOR TRADING IN, OR**
**CERTAIN CLAIMS OF WORTHLESSNESS WITH RESPECT TO,**
**EQUITY SECURITIES IN DEBTORS CLOVIS ONCOLOGY, INC.,** ***ET AL.***

The above-captioned debtors and debtors in possession (the "Debtors") hereby file this motion (this "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit B (the "Proposed Order") respectively, pursuant to sections 105(a), 362(a)(3) and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rules 3001, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), establishing notice and hearing procedures that must be followed before certain transfers of, or certain claims of worthlessness for federal or state tax purposes with respect to, equity securities in Clovis Oncology, Inc. ("Clovis"), or of any beneficial interest therein, are deemed effective. In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Paul E. Gross in Support of Debtors' Chapter 11 Petition and First Day Motions* (the "First Day

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, to the extent applicable, are Clovis Oncology, Inc. (5355), Clovis Oncology UK Limited, and Clovis Oncology Ireland Limited. The Debtors' headquarters is located at 5500 Flatiron Parkway, Suite 100, Boulder, CO 80301.

Declaration") [Docket No. 30]. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of an order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and legal predicates for the relief sought herein are sections 105(a), 362(a)(3), and 541 of the Bankruptcy Code, and Bankruptcy Rules 3001, 6003 and 6004.

## BACKGROUND

### I. General Background

3. On December 11, 2022 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 22, 2022, the United States Trustee of Region 3 appointed the Official Committee of Unsecured Creditors (the "Committee") [Docket No. 129].  As of the date hereof, no trustee or examiner has been appointed in any of the Debtors' cases.

5.  Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

## RELIEF REQUESTED

6.  By this Motion, the Debtors seek entry of the Proposed Orders establishing, pursuant to sections 105(a), 362(a)(3) and 541 of the Bankruptcy Code, notification and hearing procedures for certain transfers of, or certain claims of worthlessness for federal or state tax purposes with respect to, equity securities in Clovis or of any beneficial interest therein, including Options (as defined below) to acquire such equity securities, that must be complied with before such transfers of equity securities or claims of worthlessness are deemed effective. The procedures for trading in, or claiming a worthless stock deduction with respect to, equity securities in Clovis are necessary to protect the potential value of the Debtors' United States federal and state tax attributes, including, but not limited to, significant net operating loss carryforwards ("NOLs" and, collectively with any capital losses, unrealized built-in losses, certain tax credits and other tax benefits, the "Tax Attributes").

7.  If no restrictions on trading or claiming worthless stock deductions are imposed by the Court, such trading or deductions could severely limit or even eliminate the Debtors' ability to utilize their Tax Attributes, which could lead to significant negative consequences for the Debtors, their estates, creditors, and other stakeholders. To preserve, to the fullest extent possible, the Tax Attributes, the Debtors seek immediate procedural relief that will enable the Debtors to closely monitor certain transfers of, or certain claims of worthlessness for federal or state tax purposes with respect to Clovis equity securities so as to be in a position to act expeditiously if necessary to

preserve their Tax Attributes. Thus, the Debtors request that the Court enter the Proposed Order preserving the status quo in this regard.

## THE DEBTORS' TAX ATTRIBUTES

8.  The Debtors have generated, and are currently generating, a significant amount of Tax Attributes for United States federal income tax purposes. As of the Petition Date, the Debtors believe they have approximately $1.8 billion of NOLs (some of which are subject to certain limitations set forth in the IRC (defined below)), as well as other valuable Tax Attributes, such as certain tax credits. By this Motion, the Debtors seek authority to protect and preserve the value of their Tax Attributes, including, without limitation, their NOLs. While the value of the Debtors' Tax Attributes is contingent upon the amount of the Debtors' taxable income that may be offset by the Tax Attributes before they expire, the Tax Attributes could translate into potential future tax savings for the Debtors.

9.  The Tax Attributes are a valuable asset because the Debtors generally can carry forward their Tax Attributes to reduce or eliminate their income tax liability. In particular, the Tax Attributes may be available to the Debtors to offset taxable income generated by ordinary course activity and other transactions completed during the course of the Chapter 11 Cases. Additionally, the Debtors can carry forward the NOLs and credits to reduce their future tax liability. See 26 U.S.C. §§ 39, 172.

## POTENTIAL LIMITATIONS ON THE USE OF THE TAX ATTRIBUTES

10. As a general matter, if a corporation undergoes an "ownership change," section 382 of title 26 of the United States Code ("Section 382"), the Internal Revenue Code of 1986, as amended (the "IRC"), this could severely limit or eliminate the corporation's ability to use its NOLs and certain other tax attributes to offset future taxable income. Under Section 382, an ownership change occurs when the percentage, by value, of a company's equity held by one or

4

more persons holding five percent or more of the stock (in certain cases, taking into account Options to acquire such stock) (the "5% Shareholders") has increased by more than 50 percentage points over the lowest percentage of equity owned by such shareholders at any time during the preceding three-year period or since the last ownership change, as applicable (the "Testing Period").[2]

11.     An "ownership change" can also occur as a result of a "worthless stock deduction" claimed by any "50-percent shareholder." A 50-percent shareholder is any person that owned 50% or more of a corporation's stock "at any time during the 3-year period ending on the last day of the taxable year" in which the worthless stock deduction is claimed. See I.R.C. § 382(g)(4)(D). If the 50-percent shareholder still owns the corporation's stock at the end of the year, Section 382 of the IRC essentially treats the person as if they purchased new stock on the first day of the next taxable year. That deemed purchase would cause an ownership change, because the 50-percent shareholder would be deemed to have a 50 percentage point increase in its stock ownership. Notably, in the seminal case of In re Prudential Lines, Inc., 928 F.2d 565 (2d Cir. 1991), which is generally relied upon to support equity trading motions, the specific issue in the case was a worthless stock deduction.

12.     If there has been a prior ownership change, the Testing Period for determining whether another ownership change has occurred begins on the first day following the date of the

---

[2] For example, assume (i) an individual ("A") owns 50.1% of the stock of corporation XYZ ("XYZ") and (ii) A sells her 50.1% interest in XYZ to another individual ("B"), who currently owns 5% of XYZ's stock. Under Section 382, an ownership change has occurred upon B's acquisition of A's 50.1% interest in XYZ because the percentage of XYZ stock held by B has increased more than fifty (50) percentage points (from 5% to 55.1%) during the Testing Period. The same result would follow even if B owned no XYZ stock prior to the transaction with A because B both becomes a "5-percent shareholder" and increases the percentage of XYZ stock B holds by more than fifty (50) percentage points during the Testing Period. To be clear, a "5-percent shareholder" increasing its holding by 50 percent (i.e., from 5% to 7.5%) as opposed to 50 percentage points would not, in and of itself, result in an "ownership change" under Section 382. Any subsequent ownership change with respect to XYZ would be determined based only on equity transfers that occur subsequent to the ownership change resulting from the transaction between A and B described immediately above.

prior ownership change. Section 383 of the IRC imposes a similar limitation on certain tax credits of a corporation. For clarity, this discussion refers only to Section 382 but the rules, principles, and policies discussed therein are generally applicable to Section 383's limitation on a corporation's use of credits after an ownership change and are incorporated by reference into Section 383 by the IRC and the Treasury Regulations promulgated thereunder. See IRC § 383(e); 26 C.F.R. § 1.383-1(g).

13. The general purpose of Section 382 is to prevent a company with taxable income from reducing its tax obligations by acquiring control of another corporation with NOLs, unrealized built-in losses ("Built-in Losses") or certain other tax attributes. To achieve this objective, Section 382 limits the amount of taxable income that can be offset by a pre-change loss to an amount equal to the product of the long-term tax-exempt rate (as published monthly by the United States Department of the Treasury) as of the ownership change date and the value of the equity of the loss corporation immediately before the ownership change (a "Section 382 Limitation").[3] Built-in Losses recognized during the five-year period after the ownership change may be subject to similar limitations.

**PROPOSED PROCEDURES FOR TRADING IN EQUITY SECURITIES**

14. By establishing procedures for continuously monitoring the trading of Clovis equity securities, the Debtors can preserve their ability to seek substantive relief at the appropriate time, particularly if it appears that additional trading may jeopardize the use of their Tax Attributes.

---

[3] For ownership changes occurring in December 2022, the applicable long-term tax-exempt rate will be 3.29% percent. If a corporation has a "net unrealized built-in gain" ("NUBIG") in its assets as of the time of the ownership change, the Section 382 Limitation may be increased in certain circumstances. If a corporation has a "net unrealized built-in loss" ("NUBIL") in assets as of the time of the ownership change, any recognized built-in losses during the five-year period beginning on the date of the ownership change will be subject to the Section 382 Limitation. The Debtors are in the process of analyzing whether it currently has a NUBIL or a NUBIG in its assets.

Accordingly, the Debtors request that the Court enter the Proposed Orders establishing the below procedures for trading in equity securities (including Options to acquire such securities) of Clovis:[4]

(a) Any purchase, sale, or other transfer of equity securities (including Options to acquire such securities) in Clovis on or after the Petition Date in violation of the procedures set forth herein shall be null and void *ab initio* as an act in violation of the automatic stay under section 362 of the Bankruptcy Code.

(b) Any person or entity (as defined in Treasury Regulations Section 1.382-3(a)(1)) who currently is or becomes a Substantial Shareholder (as defined in subparagraph (f) below) shall file with the Court, and serve on counsel to the Debtors, a notice of such status, in the form attached hereto as <u>Exhibit A-1</u>, on or before the later of (i) twenty (20) calendar days after the date of the Notice of Order (as defined below and as applicable) and (ii) ten (10) calendar days after becoming a Substantial Shareholder.

(c) At least twenty-one (21) calendar days prior to effectuating any transfer of equity securities (including Options to acquire such securities) that would result in an increase in the amount of Clovis Stock (as defined below) beneficially owned by a Substantial Shareholder or would result in a person or entity becoming a Substantial Shareholder, such Substantial Shareholder (or person or entity that may become a Substantial Shareholder) shall file with the Court, and serve on counsel to the Debtors, advance written notice, in the form attached hereto as <u>Exhibit A-2</u>, of the intended transfer of equity securities (including Options to acquire such securities).

(d) At least twenty-one (21) calendar days prior to effectuating any transfer of equity securities (including Options to acquire such securities) that would result in a decrease in the amount of Clovis Stock beneficially owned by a Substantial Shareholder or would result in a person or entity ceasing to be a Substantial Shareholder, such Substantial Shareholder shall file with the Court, and serve on counsel to the Debtors, advance written notice, in the form attached hereto as <u>Exhibit A-3</u>, of the intended transfer of equity securities (including Options to acquire such securities) (the notices required to be filed and served under subparagraphs (c) and (d), each a "<u>Notice of Proposed Transfer</u>").

(e) The Debtors shall have twenty-one (21) calendar days after receipt of a Notice of Proposed Transfer to file with the Court and serve on such Substantial Shareholder (or person or entity that may become a Substantial

---

[4] The Debtors request that the Court permit the Debtors to waive, in writing, and in their sole and absolute discretion, any and all restrictions, stays, and notification procedures contained in this Motion or in any order entered with respect hereto should the Debtors conclude in their sole discretion that any such restriction, stay or notification procedure is not necessary to protect their Tax Attributes; <u>provided</u>, <u>however</u>, that the Debtors shall provide notice of any such waiver to the U.S. Trustee in writing within three business days thereafter.

       Shareholder) an objection to the proposed transfer of equity securities (including Options to acquire such securities) described in the Notice of Proposed Transfer on the grounds that such transfer may adversely affect the Debtors' ability to utilize their Tax Attributes. During such 21-day period, and while any objection by the Debtors (or any other party in interest) to the proposed transfer is pending, such Substantial Shareholder shall not effectuate the proposed transfer to which the Notice of Proposed Transfer relates and thereafter shall do so only in accordance with the Court's ruling, and, as applicable, any appellate rules and procedures. If the Debtors do not object within such 21-day period, such transaction may proceed solely as set forth in the Notice of Proposed Transfer. Further transactions within the scope of this subparagraph (e) must be the subject of additional notices as set forth herein, with an additional 21-day waiting period.

(f)    For purposes of these procedures, (A) a "<u>Substantial Shareholder</u>" is any person or entity (as defined in Treasury Regulations Section 1.382-3(a)(1)) which has Beneficial Ownership of at least 4.5% of all issued and outstanding shares (equal to, as of September 30, 2022, approximately 6,501,600 shares[5]) of the common stock of Clovis ("<u>Clovis Stock</u>"), and (B) "<u>Beneficial Ownership</u>" or any variation thereof of Clovis Stock and Options to acquire Clovis Stock shall be determined in accordance with applicable rules under Section 382, Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (ii) ownership by the holder's family members and persons acting in concert with the holder to make a coordinated acquisition of stock, and (iii) ownership of an Option to acquire Clovis Stock, but only to the extent such Option is treated as exercised under Treasury Regulations Section 1.382-4(d). An "<u>Option</u>" to acquire stock includes all interests described in Treasury Regulations section 1.328-4(d)(9), including any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

## PROPOSED PROCEDURES FOR CLAIMING A WORTHLESS STOCK DEDUCTION

15.    The Debtors also request that the Court enter an order restricting the ability of shareholders that own or have owned 50% or more, by value, of the Debtors' equity securities to

---

[5] Based on approximately 144,480,000 shares of Clovis Stock issued and outstanding as of September 30, 2022.

claim a deduction for the worthlessness of those securities on their federal or state tax returns for a tax year ending before the Debtors emerge from chapter 11 protection. Under Section 382(g)(4)(D) of the IRC, any securities held by such a shareholder are treated as though they were transferred if such shareholder claims a worthlessness deduction with respect to such securities. Therefore, it is essential that shareholders that own or have owned 50% or more of the Debtors' equity securities defer claiming such worthlessness deduction until after the Debtors have emerged from bankruptcy.

16. By restricting 50% shareholders from claiming a worthlessness deduction prior to the Debtors' emergence from chapter 11 protection, the Debtors can preserve their ability to seek substantive relief to use the Tax Attributes. Accordingly, the Debtors request that the Court enter an order establishing the following procedures:

(a) Any worthless stock deduction claim of equity securities (including Options to acquire such securities,) in Clovis on or after the Petition Date in violation of the procedures set forth herein shall be null and void *ab initio* as an act in violation of the automatic stay under section 362 of the Bankruptcy Code.

(b) Any person or entity (as defined in Treasury Regulations Section 1.382-3(a)(1)) who currently is or becomes a 50% Shareholder (as defined in subparagraph (e) below) shall file with the Court, and serve on counsel to the Debtors, a notice of such status, in the form attached hereto as <u>Exhibit A-4</u>, on or before the later of (i) twenty (20) calendar days after the date of the Notice of Order (as defined below and as applicable) and (ii) ten (10) calendar days after becoming a 50% Shareholder.

(c) At least twenty-one (21) days prior to filing any federal or state tax return, or any amendment to such a return, claiming any deduction for worthlessness of the equity securities (including Options to acquire such securities) in Clovis, for a tax year ending before the Debtors' emergence from chapter 11 protection, such 50% Shareholder shall file with the Court, and serve on counsel to the Debtors, an advance written notice, in the form attached hereto as <u>Exhibit A-5</u> (a "<u>Notice of Intent to Claim a Worthless Stock Deduction</u>") of the intended claim of worthlessness.

(d) The Debtors will have twenty-one (21) calendar days after receipt of a Notice of Intent to Claim a Worthless Stock Deduction to file with the Court and serve on such 50% Shareholder an objection to any proposed claim of

     worthlessness described in the Notice of Intent to Claim a Worthless Stock Deduction on the grounds that such claim might adversely affect the Debtors' ability to utilize their Tax Attributes. During such 21-day period, and while any objection by the Debtors (or any other party in interest) to the proposed claim is pending, such 50% Shareholder shall not claim, or cause to be claimed, the proposed worthless stock deduction to which the Notice of Intent to Claim a Worthless Stock Deduction relates and thereafter shall do so only in accordance with the Court's ruling, and, as applicable, any appellate rules and procedures. If the Debtors do not object within such 21-day period, the filing of the tax return with such claim would be permitted only as set forth in the Notice of Intent to Claim a Worthless Stock Deduction. Additional tax returns or amendments within the scope of this subparagraph must be the subject of additional notices as set forth herein, with an additional 21-day waiting period.

  (e) For purposes of these procedures, (A) a "<u>50% Shareholder</u>" is any person or entity that, at any time during the three-year period ending on the Petition Date, has had Beneficial Ownership of 50% or more of the equity securities in Clovis (determined in accordance with IRC section 382(g)(4)(D) and the applicable regulations thereunder), and (B) "<u>Beneficial Ownership</u>" or any variation thereof of Clovis Stock and Options to acquire Clovis Stock shall be determined in accordance with applicable rules under Section 382, Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (ii) ownership by the holder's family members and persons acting in concert with the holder to make a coordinated acquisition of stock, and (iii) ownership of an Option to acquire Clovis Stock, but only to the extent such Option is treated as exercised under Treasury Regulations Section 1.382-4(d). An "<u>Option</u>" to acquire stock includes all interests described in Treasury Regulations section 1.382-4(d)(9), including any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

## **NOTICE PROCEDURES FOR PROPOSED ORDER**

  17. To ensure parties in interest receive appropriate notice of the procedures for trading in equity securities and claiming worthless stock deductions, the Debtors request that the Court approve the following notice provisions for the procedures for trading in equity securities and claiming worthless stock deductions.

18. Following entry of the Proposed Order, the Debtors propose to send a notice in substantially the form attached hereto as Exhibit A-6 (the "Notice of Order") to the Equity Trading Notice Parties.

19. Upon receipt of the Notice of Order, the Nominees shall serve the Notice of Order to any beneficial holders of the Clovis Stock by no later than five (5) business days after being served with the Notice of Order. Additionally, any person or entity, or broker or agent acting on their behalf, who sells at least 4.5% of all issued and outstanding shares of Clovis Stock (or an Option with respect thereto) to another person or entity shall be required to provide the Notice of Order to such purchaser of such Clovis Stock, or any broker or agent acting on their behalf, to the extent reasonably feasible. The Notice of Order will provide information as to the procedures to be followed in trading, or claiming a worthless stock deduction with respect to, the Clovis Stock.

**BASIS FOR RELIEF**

II.    **The Significance of the Tax Attributes**

20. As a result of past and current operations, the Debtors presently have significant Tax Attributes. These Tax Attributes may increase as the Chapter 11 Cases proceed, and could translate into potential future income tax savings for the Debtors.

21. As discussed above, Section 172(b) of the IRC permits corporations to carry forward certain Tax Attributes to offset future taxable income, thereby significantly improving such corporation's cash position in the future. Thus, the Tax Attributes are a valuable asset of the Debtors' estates, and their availability could improve creditor recoveries. However, absent the relief requested herein, trading and accumulation of Clovis Stock, or certain claims of worthlessness with respect thereto, during the pendency of the Chapter 11 Cases could severely limit the Debtors' ability to utilize the value of their Tax Attributes.

### III. The Provisions of Section 382

22. As described above, Section 382 limits the amount of taxable income that can be offset by a corporation's Tax Attributes in taxable years (or portions thereof) following an ownership change. If an ownership change were to occur during the course of the Chapter 11 Cases, Section 382 would limit the amount of taxable income that the Debtors could offset by their pre-change losses in taxable years (or portions thereof) to an annual amount equal to the value of the equity of the corporation prior to the ownership change multiplied by the long-term tax-exempt rate. See 26 U.S.C. § 382(b). Pre-change losses would include the Debtors' Tax Attributes. This formulaic limitation under Section 382 can severely restrict the ability to use pre-change losses because the value of the equity of a distressed company may be quite low.

23. The problem facing the Debtors, and the reason for this Motion, is that if certain equity holders transfer Clovis Stock, or certain worthless stock deductions are claimed with respect thereto, such transfers or deductions may trigger an ownership change that would not fall within the ambit of special relief provisions applicable to an ownership change resulting from a confirmed chapter 11 plan, because such an ownership change would not occur pursuant to such a plan. An ownership change occurring during the pendency of the Chapter 11 Cases is of particular concern because it could likely result in a Section 382 Limitation of zero or a nominal amount. Subsequent to such an ownership change, the Debtors' ability to utilize their Tax Attributes both during and after the Chapter 11 Cases could be limited.

24. The Debtors, through this Motion, seek the ability to monitor and object to changes in ownership of, or certain claims of worthlessness with respect to, Clovis Stock so that the Debtors may prevent an ownership change during the pendency of the Chapter 11 Cases, and to preserve (1) the ability to utilize their Tax Attributes during the pendency of the Chapter 11 Cases to offset taxable income and any potential prepetition tax claims that may be asserted; and (2) the flexibility

in crafting a possible plan of reorganization, depending on facts and circumstances as they develop. In short, the Debtors seek to maximize their ability to reduce federal income taxes by offsetting their income earned during the Chapter 11 Cases and thereafter with current Tax Attributes.

IV. **Special Section 382 Bankruptcy Rules**

25. To qualify for the Section 382 bankruptcy relief provisions under Section 382(l)(5) and (l)(6), any ownership change must occur pursuant to the consummation of a plan of reorganization. Under Section 382(l)(5), a Section 382 Limitation will not apply to an ownership change resulting from consummation of a chapter 11 plan, <u>provided</u> that under the plan, the debtor's pre-change shareholders (i.e., persons or entities who owned the debtor's stock immediately before such ownership change) and/or certain qualified creditors emerge from the reorganization owning at least 50% of the total value and voting power of the debtor's stock immediately after the ownership change as a result of being shareholders or qualified creditors immediately before such change. Section 382(l)(6) provides that if a corporation undergoes an ownership change pursuant to a plan of reorganization in chapter 11 and Section 382(l)(5) does not apply (either because the corporation elects out of that provision or because its requirements are not satisfied), then under Section 382(l)(6), the value of the equity of the corporation for purposes of calculating the Section 382 Limitation shall reflect the increase (if any) in value of the old loss corporation resulting from any surrender or cancellation of creditors' claims in the transaction. Thus, assuming the value of the equity of Clovis increases as a result of a reorganization, Section 382(l)(6) will provide for a higher annual limitation than would result under the general rules of Section 382 and could allow the Debtors to use a greater portion of their Tax Attributes to offset any post-change income. The Debtors do not expect that an ownership change during the pendency of the Chapter 11 Cases would qualify for either of these exceptions. Thus, in all circumstances, it is in the best interests of the Debtors and their estates for the Court

to grant the requested relief so as to prevent an ownership change prior to consummation of a plan of reorganization.

## V. Tax Attributes Are Property of the Debtors' Estates and Are Entitled to Court Protection

26.   Courts have uniformly held that a debtor's tax attributes constitute property of the estate under section 541 of the Bankruptcy Code and, as such, courts have the authority to implement certain protective measures to preserve the Tax Attributes.  The seminal case articulating this rule is In re Prudential Lines, Inc., in which the United States Bankruptcy Court for the Southern District of New York held that a "debtor's potential ability to utilize NOLs is property of an estate" and that the taking of a worthless stock deduction is an exercise of control over a debtor's NOLs, and thus was properly subject to the automatic stay.  In re Prudential Lines, Inc., 107 B.R. 832, 838, 842–43 (Bankr. S.D.N.Y. 1989), aff'd, 119 B.R. 430 (S.D.N.Y. 1990), aff'd, 928 F.2d 565 (2d Cir. 1991), cert. denied 502 U.S. 821 (1991); see also In re White Metal Rolling & Stamping Corp., 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) ("it is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them"); In re Delta Air Lines, Inc., Case No. 05- 17923 (PCB) (Bankr. S.D.N.Y. Sept. 16, 2005) (finding net operating losses are property of debtor's estate); In re Forman Enters., Inc., 273 B.R. 408, 415 (Bankr. W.D. Pa. 2002) (same).  Because the Debtors' NOLs are property of their estates, the Court has the authority under section 362 of the Bankruptcy Code to enforce the automatic stay by restricting the transfer of equity securities in the Debtors that could jeopardize the existence or value of this asset.  See In re Phar-Mor, Inc., 152 B.R. 924, 927 (Bankr. N.D. Ohio 1993) (holding that section 362 prohibited the sale of stock in the debtors as an exercise of control of the debtor's NOLs, which were property of the debtors' estate); In re Grossman's, Inc., Case No. 97-

695 (PJW), 1997 WL 33446314, at *1 (Bankr. D. Del. Oct. 9, 1997) (holding that net operating losses were property of debtor's estate and protected by automatic stay).

27. Unrestricted trading in the Debtors' equity securities or deductions for worthless stock with no advance warning jeopardize the Tax Attributes and could impair the value of the Debtors' estates. The Debtors respectfully submit that the Proposed Orders will play an integral role in the Debtors' success both during and after the Chapter 11 Cases, and there is an immediate need to establish the notice and hearing provisions regarding trading in equity securities in the Debtors and parties claiming that such equity securities are worthless. Accordingly, the Debtors respectfully request that the Court grant the relief requested herein.

## VI. The Requested Relief Is Narrowly Tailored

28. The requested relief does not bar all trading of, or claims for worthlessness with respect to, equity securities in the Debtors. At this early juncture, the Debtors seek to establish procedures enabling them only to monitor those types of trading in equity securities and the taking of worthless stock deductions which pose a serious risk under the Section 382 ownership change test, so as to preserve the Debtors' ability to seek substantive relief if it appears that a proposed trade of equity securities or worthless stock deduction will jeopardize the use of their Tax Attributes. The procedures requested by the Debtors in this Motion would permit most trading in equity securities to continue subject only to Bankruptcy Rules 3001(e) and 3002 and applicable securities, corporate, and other laws. The restrictions on claiming deductions for worthless stock would apply only to 50% shareholders, and even then would not prohibit such deductions entirely, but would merely require them to be postponed to taxable years ending after the Debtors emerge from chapter 11 protection. Because of the Tax Attributes' importance to the Debtors' restructuring, and thus all parties in interest, implementation of the requested relief outweighs

subjecting a limited number of transfers and/or worthless stock deductions to the procedures described above.

29. Moreover, the Debtors submit that the foregoing notice procedures satisfy due process and the strictures of Bankruptcy Rule 9014 by providing the counterparties with a notice and an opportunity to object and attend a hearing. See, e.g., In re Colorado Mountain Cellars, Inc., 226 B.R. 244, 246 (D. Colo. 1998) (noting that a hearing is not required to satisfy Bankruptcy Rule 9014). Furthermore, the proposed notice procedures protect the due process rights of the parties in interest without unnecessarily exposing the Debtors' estates to unwanted administrative expenses.

## VII. The Requested Relief Is Necessary to Avoid Irreparable Harm to the Debtors

30. Once a Tax Attribute is limited under Section 382, its use may be limited forever. The relief sought herein is necessary to avoid an irrevocable loss or reduction in the availability of the Tax Attributes and the irreparable harm that could be caused by unrestricted trading in Clovis' equity securities and the Debtors' resulting inability to offset taxable income freely with their Tax Attributes.

31. Courts in this and other jurisdictions have routinely restricted transfers of equity interests and declarations of worthlessness with respect to beneficial interests of a debtor's stock, or instituted notice procedures regarding proposed transfers and declarations of worthlessness, to protect a debtor against the possible loss or limitation of its tax attributes. See, e.g., In re HighPoint Res. Corp., No. 21-10565 (CSS) (Bankr. D. Del. Mar. 26, 2021) (approving notification procedures and restricting certain transfers of debtor's equity); In re Extraction Oil and Gas, Inc., No. 20-10548 (Bankr. D. Del. Jul. 13, 2020) (same); In re APC Auto. Techs. Intermediate Holdings, LLC, No. 20-11466 (CSS) (Bankr. D. Del. Jun. 23, 2020) (same); In re Akorn, Inc., No.

20-11177 (KBO) (Bankr. D. Del. Jun. 11, 2020) (same); In re Longview Power, LLC, No. 20-10951 (Bankr. D. Del. May 18, 2020) (same).

## WAIVER OF REQUIREMENTS OF BANKRUPTCY RULE 6004

32. To successfully implement the relief the Debtors request in this Motion, the Debtors also request that the Court waive the notice requirements of Bankruptcy Rule 6004(a) and the stay imposed by Bankruptcy Rule 6004(h). As discussed above, the relief requested herein must be granted without delay in order for the Debtors to continue operating their business and for preservation of their estates. Therefore, the Debtors respectfully request that the notice and stay requirements imposed by Bankruptcy Rules 6004(a) and 6004(h) be waived.

## RESERVATION OF RIGHTS

33. Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

## NOTICE

34. Notice of this Motion has been or will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Food & Drug Administration; (v) the Securities and Exchange Commission; (vi) counsel for the lender under the Sixth Street Financing Agreement (as defined in the First Day Declaration) and the debtor-in-possession financing facility; (vii) counsel to The Bank of New York Mellon Trust Company, N.A., as trustee

under the 2024 Notes (2019 Issuance), 2024 Notes (2020 Issuance) and 2025 Notes (as such terms are defined in the First Day Declaration); (viii) counsel to the Committee; (ix) all banks, brokers, intermediaries, other nominees or its mailing agents (collectively, the "Nominees") that hold Clovis Stock in "street name" for the beneficial holders of the Clovis Stock (with instructions to serve down to the beneficial holder level) as applicable; (x) the transfer agent(s) for the Clovis Stock, as applicable; and (xi) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (collectively, the "Equity Trading Notice Parties"). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary. No previous motion for the relief sought herein has been made to this court or any other court.

## CONCLUSION

WHEREFORE, the Debtors request that the Court enter the Proposed Orders, granting the relief requested herein and such other and further relief as is just and proper.

Dated:   January 5, 2023
        Wilmington, Delaware

**MORRIS NICHOLS ARSHT & TUNNELL LLP**

*/s/ Matthew O. Talmo*
Robert J. Dehney (No. 3578)
Andrew R. Remming (No. 5120)
Matthew O. Talmo (No. 6333)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
rdehney@morrisnichols.com
aremming@morrisnichols.com
mtalmo@morrisnichols.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Andrew S. Mordkoff (admitted *pro hac vice*)
Erin C. Ryan (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019-6099
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rstrickland@willkie.com
amordkoff@willkie.com
eryan@willkie.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*