## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CLOVIS ONCOLOGY, INC., *et al.,*[1] | Case No. 22-11292 (JKS) |
| Debtors. | (Jointly Administered) |

## JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR
## CLOVIS ONCOLOGY, INC. AND ITS AFFILIATED DEBTORS

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Andrew S. Mordkoff (admitted *pro hac vice*)
Erin C. Ryan (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:    212-728-8000
Facsimile:    212-728-8111

*Attorneys for Debtors and Debtors in Possession*

**MORRIS NICHOLS ARSHT & TUNNELL LLP**
Robert J. Dehney (No. 3578)
Andrew R. Remming (No. 5120)
Matthew O. Talmo (No. 6333)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

Dated: March 14, 2023
         Wilmington, Delaware

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, to the extent applicable, are Clovis Oncology, Inc. (5355), Clovis Oncology UK Limited, and Clovis Oncology Ireland Limited. The Debtors' headquarters is located at 5500 Flatiron Parkway, Suite 110, Boulder, CO 80301.

# TABLE OF CONTENTS

SECTION 1.    DEFINITIONS AND INTERPRETATION.................................................. 1

SECTION 2.    ADMINISTRATIVE EXPENSE, FEE CLAIMS, DIP FACILITY
CLAIMS, PRIORITY TAX CLAIMS, U.S. TRUSTEE FEES, AND
ADEQUATE PROTECTION CLAIMS. ...................................... 17

2.1    Administrative Expense Claims.................................................. 17
2.2    Time for Filing Administrative Expense Claims.............................. 17
2.3    Fee Claims.......................................................................... 18
2.4    Priority Tax Claims................................................................ 19
2.5    DIP Facility Claims................................................................ 20
2.6    U.S. Trustee Fees.................................................................. 20
2.7    Adequate Protection Claims ..................................................... 20

SECTION 3.    CLASSIFICATION OF CLAIMS AND INTERESTS. .............................. 20

3.1    Classification in General. ........................................................ 20
3.2    Formation of Debtor Groups for Convenience Only. ........................ 20
3.3    Summary of Classification. ...................................................... 21
3.4    Special Provision Governing Unimpaired Claims............................. 21

SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS....................................... 21

4.1    Prepetition Financing Claims (Class 1). ...................................... 21
4.2    Other Priority Claims (Class 2).................................................. 22
4.3    Other Secured Claims (Class 3). ................................................ 22
4.4    Unsecured Note Claims (Class 4). .............................................. 23
4.5    General Unsecured Claims (Class 5)............................................ 23
4.6    Existing Securities Law Claims (Class 6)....................................... 23
4.7    Interests (Class 7)................................................................. 24
4.8    Intercompany Claims and Intercompany Interests (Class 8A and Class
8B)................................................................................... 24

SECTION 5.    ACCEPTANCE OR REJECTION OF THE PLAN.................................... 24

5.1    Class Acceptance Requirement.................................................. 24
5.2    Tabulation of Votes on a Non-Consolidated Basis............................ 24
5.3    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or
"Cramdown".................................................................... 24
5.4    Elimination of Vacant Classes................................................... 25
5.5    Voting Classes; Deemed Acceptance by Non-Voting Classes. ............. 25

SECTION 6.    MEANS FOR IMPLEMENTATION. .................................................. 25

6.1    Joint Chapter 11 Plan. ........................................................... 25
6.2    No Substantive Consolidation................................................... 25

| | | |
|---|---|---|
| 6.3 | Plan Funding. | 25 |
| 6.4 | Liquidation Trust. | 25 |
| 6.5 | Liquidation Trust Tax Matters. | 30 |
| 6.6 | Elimination of Duplicate Claims. | 32 |
| 6.7 | Corporate Action. | 32 |
| 6.8 | Directors, Officers, Managers, Members and Authorized Persons of the Debtors. | 33 |
| 6.9 | D&O Policy. | 33 |
| 6.10 | Indemnification of Directors, Officers and Employees. | 33 |
| 6.11 | Withholding and Reporting Requirements. | 34 |
| 6.12 | Exemption From Certain Transfer Taxes | 34 |
| 6.13 | Effectuating Documents; Further Transactions. | 35 |
| 6.14 | Preservation of Rights of Action. | 35 |
| 6.15 | Stock Restrictions. | 35 |
| 6.16 | Closing of the Chapter 11 Cases. | 36 |
| | The Liquidation Trustee shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules | 36 |
| 6.17 | Cancellation of Existing Securities and Agreements; Release and Discharge of Notes Trustee. | 36 |

**SECTION 7.    DISTRIBUTIONS.    36**

| | | |
|---|---|---|
| 7.1 | Distribution Record Date. | 36 |
| 7.2 | Date of Distributions. | 37 |
| 7.3 | Delivery of Distributions. | 37 |
| 7.4 | Manner of Payment Under Plan. | 37 |
| 7.5 | Minimum Cash Distributions. | 37 |
| 7.6 | Setoffs. | 37 |
| 7.7 | Distributions After Effective Date. | 38 |
| 7.8 | Allocation of Distributions Between Principal and Interest. | 38 |
| 7.9 | No Postpetition Interest on Claims. | 38 |
| 7.10 | No Distribution in Excess of Amount of Allowed Claim. | 38 |
| 7.11 | Securities Registration Exemption. | 38 |
| 7.12 | Distributions to Holders of Allowed Unsecured Notes Claims. | 38 |

**SECTION 8.    PROCEDURES FOR DISPUTED CLAIMS.    39**

| | | |
|---|---|---|
| 8.1 | Objections to Claims. | 39 |
| 8.2 | Allowance of Claims. | 39 |
| 8.3 | Estimation of Claims. | 39 |
| 8.4 | No Distributions Pending Allowance. | 39 |
| 8.5 | Resolution of Claims. | 39 |
| 8.6 | Amendments to Claims and Late Filed Claims. | 40 |
| 8.7 | Insured Claims. | 40 |

SECTION 9.        EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ................... 40

    9.1    Rejection of Executory Contracts and Unexpired Leases. ................................ 40
    9.2    Claims Based on Rejection of Executory Contracts and Unexpired Leases........ 40
    9.3    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases........ 41
    9.4    Modifications, Amendments, Supplements, Restatements, or Other
        Agreements.................................................................................................... 41
    9.5    Reservation of Rights..................................................................................... 42

SECTION 10.        CONDITIONS PRECEDENT TO THE EFFECTIVE DATE..................... 42

    10.1    Conditions Precedent to the Effective Date. .................................................... 42
    10.2    Waiver of Conditions Precedent. .................................................................... 43
    10.3    Substantial Consummation. ............................................................................ 43
    10.4    Effect of Vacatur of Confirmation Order......................................................... 43

SECTION 11.        SETTLEMENT, RELEASES, INJUNCTIONS, AND RELATED
                PROVISIONS. ................................................................................... 44

    11.1    Release of Liens............................................................................................. 44
    11.2    Binding Effect................................................................................................ 44
    11.3    Term of Injunctions or Stays.......................................................................... 44
    11.4    Releases by the Debtors.................................................................................. 44
    11.5    Releases By Holders of Claims and Interests................................................... 45
    11.6    Exculpation.................................................................................................... 46
    11.7    Injunction. ..................................................................................................... 47

SECTION 12.        RETENTION OF JURISDICTION................................................................ 47

SECTION 13.        MISCELLANEOUS PROVISIONS. ............................................................ 49

    13.1    No Revesting of Assets. ................................................................................. 49
    13.2    Subordinated Claims. ..................................................................................... 49
    13.3    Payment of Statutory Fees. ............................................................................ 50
    13.4    Dissolution of Creditors' Committee............................................................... 50
    13.5    Amendments................................................................................................... 50
    13.6    Revocation or Withdrawal of the Plan............................................................. 50
    13.7    Severability of Plan Provisions Upon Confirmation......................................... 51
    13.8    Governing Law. ............................................................................................. 51
    13.9    Time............................................................................................................... 51
    13.10    Additional Documents.................................................................................... 51
    13.11    Immediate Binding Effect............................................................................... 52
    13.12    Successor and Assigns.................................................................................... 52
    13.13    Entire Agreement............................................................................................ 52
    13.14    Notices........................................................................................................... 52

Each of the Debtors proposes the following joint chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in <u>Section 1.A.</u>

## SECTION 1.    DEFINITIONS AND INTERPRETATION.

### A.    Definitions.

1.1.    ***2024 Convertible Senior Notes (2019 Issuance)*** means the 4.50% Convertible Senior Notes due 2024 in an aggregate principal amount of $85,782,000 issued under the 2024 Convertible Senior Notes (2019 Issuance) Indenture.

1.2.    ***2024 Convertible Senior Notes (2019 Issuance) Indenture*** means that certain Indenture, dated as of August 13, 2019, by and among Clovis Oncology, Inc. and The Bank of New York Mellon Trust Company, N.A., as trustee, as amended, supplemented or otherwise modified from time to time prior to the Petition Date.

1.3.    ***2024 Convertible Senior Notes (2020 Issuance***) means 4.50% Convertible Senior Notes due 2024 in an aggregate principal amount of $57,500,000 issued under the 2024 Convertible Senior Notes (2020 Issuance) Indenture.

1.4.    ***2024 Convertible Senior Notes (2020 Issuance) Indenture*** means that certain Indenture, dated as of November 17, 2020, by and among Clovis Oncology, Inc. and The Bank of New York Mellon Trust Company, N.A., as trustee, as amended, supplemented or otherwise modified from time to time prior to the Petition Date.

1.5.    ***2025 Convertible Senior Notes*** means the 1.25% Convertible Senior Notes due 2025 in aggregate principal amount of $300,000,000 issued under the 2025 Convertible Senior Notes Indenture.

1.6.    ***2025 Convertible Senior Notes Indenture*** means that certain Indenture, dated as of April 19, 2018, by and among Clovis Oncology, Inc. and The Bank of New York Mellon Trust Company, N.A., as trustee, and that First Supplemental Indenture thereto dated as of April 19, 2018, as amended, supplemented or otherwise modified from time to time prior to the Petition Date.

1.7.    ***3BP Agreement*** means that certain License and Collaboration Agreement, effective as of September 20, 2019, by and between 3B Pharmaceuticals GmbH and Clovis Oncology, Inc.

1.8.    ***503(b)(9) Claims*** means Claims that have been timely and properly filed prior to the Bar Date and that are granted administrative expense priority treatment pursuant to section 503(b)(9) of the Bankruptcy Code.

1.9.    ***Adequate Protection Claim*** has the meaning assigned to such term in the Final DIP Order.

1.10.    ***Administrative Expense Claim*** means any Claim for costs and expenses of administration during the Chapter 11 Cases pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including, (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (ii) Fee Claims; and (iii) U.S. Trustee Fees.

1.11.    ***Administrative Expense Claims Bar Date*** means the date that is thirty (30) days following service of notice of the occurrence of the Effective Date.

1.12.    ***Affiliate*** has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.13.    ***Allowed*** means, with reference to any Claim or Interest, a Claim or Interest (i) arising on or before the Effective Date as to which (A) no objection to allowance or priority, and no request for estimation or other challenge, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, or (B) any objection has been determined in favor of the holder of the Claim or Interest by a Final Order; (ii) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors or the Liquidation Trustee, as applicable; (iii) as to which the liability of the Debtors or the Liquidation Trust, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction; (iv) that is listed in the Schedules as liquidated, non-contingent, and undisputed, and is not superseded by a Proof of Claim; or (v) expressly allowed hereunder; provided, notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to, and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) the Liquidation Trustee shall retain all claims and defenses with respect to Allowed Claims that are Unimpaired pursuant to the Plan; provided, further, that any (i) Claim or Interest paid or required to be paid by a purchaser pursuant to a Bankruptcy Court-approved purchase agreement or order approving a sale of certain of the Debtors' assets during the course of these Chapter 11 Cases or (ii) Claim or Interest listed in the Schedules that has been paid by the Debtors (w) after the Petition Date pursuant to an order of the Bankruptcy Court, (x) before the Petition Date and was inadvertently listed in the Schedules, or (y) paid by the Debtors or a Bankruptcy Court-approved purchaser pursuant to a Bankruptcy Court-approved purchase agreement or order approving a sale of certain of the Debtors' assets during the course of these Chapter 11 Cases as an assumed liability, shall not be considered an Allowed Claim.

1.14.    ***Assumption Schedule*** means the schedule of Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtors pursuant to the Plan, section 365 of the Bankruptcy Code and Section 9 hereof, which will be included in the Plan Supplement, as may be amended, modified, or supplemented from time to time in accordance with the Confirmation Order.

1.15.    ***Asset Sale*** means a sale, conveyance, transfer, or other disposition to, or any exchange of property with, any Person, in one transaction or a series of transactions, of all or any part of the Debtors' or any of their respective Subsidiaries' businesses, assets or

2

properties of any kind, whether real, personal, or mixed and whether tangible or intangible, whether now owned or hereafter acquired.

1.16. ***Avoidance Action*** means any and all actual or potential claims and causes of action arising under chapter 5 of the Bankruptcy Code (including, but not limited to, sections 502(d), 510, 542 through 551, 553, and 724(a) of the Bankruptcy Code), including any claim or cause of action to avoid a transfer of property or an obligation incurred by the Debtors, equitable subordination or recovery actions or proceedings, or under similar or related state or federal statutes and common law of the United States or similar applicable foreign laws or regulations, including fraudulent transfer laws.

1.17. ***Ballot*** means the form distributed to each holder of an Impaired Claim that is entitled to vote to accept or reject this Plan, on which is to be indicated acceptance or rejection of this Plan.

1.18. ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.19. ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

1.20. ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases, and any local rules of the Bankruptcy Court.

1.21. ***Bar Date*** means the dates fixed by order(s) of the Bankruptcy Court (including the Bar Date Order, this Plan or the Confirmation Order) by which any Persons, asserting a Claim against any Debtor must have filed a Proof of Claim or application for allowance of such Claim (as applicable) with the Bankruptcy Court against any such Debtor or be forever barred from asserting such Claim.

1.22. ***Bar Date Order*** means that certain *Order (I) Establishing Certain Bar Dates for Filing Proofs of Claims Against the Debtors, and (II) Granting Related Relief, Including Notice and Filing Procedures* entered by the Bankruptcy Court in these Chapter 11 Cases on January 19, 2023 [D.I. 224].

1.23. ***Business Day*** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.24. ***Cash*** means legal tender of the United States of America and equivalents thereof.

1.25. ***Causes of Action*** means without limitation, any and all actions, causes of action, Avoidance Actions, controversies, liabilities, obligations, rights, suits, damages,

judgments, Claims, any right of setoff, counterclaim, or recoupment, any claim for breach of contract or for breach of duties imposed by law or in equity, any claim or defense including fraud, and any demands whatsoever owned by the Debtors, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, whether assertable directly, indirectly, derivatively or in any representative or other capacity, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act, failure to act, error, omission, transaction, occurrence or other event arising or occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

1.26.     ***Chapter 11 Cases*** means the jointly administered cases of the Debtors under chapter 11 of the Bankruptcy Code styled *In re Clovis Oncology, Inc., et al.*, Case No. 22-11292 (JKS).

1.27.     ***Claim*** means any "claim" (as defined in section 101(5) of the Bankruptcy Code) against the Debtors, including, without limitation, any Claim arising after the Petition Date.

1.28.     ***Claims Agent*** means Kroll Restructuring Administration LLC, or any other entity approved by the Bankruptcy Court to act as the Debtors' claims and noticing agent pursuant to 28 U.S.C. § 156(c).

1.29.     ***Claims Objection Bar Date*** means the date that is 180 days after the Effective Date, subject to extension by the Bankruptcy Court.

1.30.     ***Class*** means any group of Claims or Interests classified pursuant to Section 3 of the Plan.

1.31.     ***Confirmation*** means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

1.32.     ***Confirmation Date*** means the date on which the Bankruptcy Court enters the Confirmation Order.

1.33.     ***Confirmation Hearing*** means the combined hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code and the approval of the Disclosure Statement on a final basis in accordance with section 1125 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.34.     ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement on a final basis as having adequate information in accordance with section 1125 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Required DIP Lenders and the Debtors, in consultation with the Creditors' Committee.

1.35.     ***Consummation*** means the occurrence of the Effective Date of the Plan.

1.36.    ***Creditors' Committee*** means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code on December 22, 2022 [Docket No. 129], as the same may be reconstituted from time to time.

1.37.    ***Cure Obligation*** means all (a) amounts required to cure any monetary defaults, and (b) other obligations required to cure any non-monetary defaults, in each case under any Executory Contract or Unexpired Lease that is to be assumed or assumed and assigned by the Debtors pursuant to Section 9 hereof and sections 365 and 1123 of the Bankruptcy Code.

1.38.    ***CVR*** means the contingent value rights of holders of DIP Facility Claims to receive contingent Cash payments pursuant to this Plan and the CVR Agreement.

1.39.    ***CVR Agent*** means such Person as designated in the Plan Supplement by the Required DIP Lenders and acceptable to the Debtors.

1.40.    ***CVR Agreement*** means that certain Contingent Value Rights Agreement, dated as of the Effective Date, in form and substance acceptable to the DIP Lenders and the Debtors, in consultation with the Creditors' Committee, a form of which shall be filed as part of the Plan Supplement.

1.41.    ***D&O Policy*** means any insurance policy for, among others, directors, members, trustees, and officers liability (or any equivalents) maintained by the Debtors' Estates, and all agreements, documents or instruments relating thereto, including any runoff policies or tail coverage.

1.42.    ***Debtors*** means Clovis Oncology, Inc., Clovis Oncology UK Limited, and Clovis Oncology Ireland Limited.

1.43.    ***DIP Agent*** means TOP IV Talents, LLC as administrative agent for the DIP Lenders and collateral agent for the DIP Secured Parties.

1.44.    ***DIP Facility Claim*** means any DIP Obligations (as defined in the Final DIP Order) or other Claims of the DIP Agent and/or DIP Lenders arising under or related to the DIP Financing Agreement, Final DIP Order, or any other DIP Document (as defined in the Final DIP Order).

1.45.    ***DIP Financing Agreement*** means that certain Secured Superpriority Debtor-in-Possession Financing Agreement, by and among the Debtors, the DIP Agent and the DIP Lenders, as the same may be modified, amended or supplemented from time to time, in accordance with the terms thereof.

1.46.    ***DIP Financing Cash*** means funds borrowed under the DIP Financing Agreement in accordance with its terms remaining in the Estates on the Effective Date.

1.47.    ***DIP Lender*** means, collectively, and as of the relevant time, those lenders that are party to the DIP Financing Agreement.

1.48.    ***DIP Secured Parties*** means, collectively, the DIP Agent and the DIP Lenders.

1.49.    ***Disallowed*** means a Claim against a Debtor, or any portion thereof, (i) that has been disallowed by a Final Order of the Bankruptcy Court, a settlement, or the Plan, (ii) that is listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or applicable law, or (iii) that is not listed in the Debtors' Schedules and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or under applicable law.

1.50.    ***Disbursing Agent*** means an entity selected to make Distributions at the direction of the Liquidation Trustee, which may include the Claims Agent, the Liquidation Trustee, the Debtors, or the Wind-Down Estates.

1.51.    ***Disclosure Statement*** means the disclosure statement relating to this Plan, as such disclosure statement may be amended, modified, or supplemented from time to time (including, without limitation, all exhibits and schedules thereto), in form and substance reasonably acceptable to the Required DIP Lenders and the Debtors, in consultation with the Creditors' Committee.

1.52.    ***Disputed*** means, with respect to a Claim, a Claim against a Debtor (i) neither Allowed nor Disallowed, or (ii) held by a Person or Entity against whom or which any of the Debtors, the Liquidation Trust or the Liquidation Trustee has commenced a proceeding, including an objection to such Claim or an Avoidance Action.

1.53.    ***Disputed Claims Reserve*** means Liquidation Trust Assets allocable to Disputed Claims.

1.54.    ***Distribution*** means payment or distribution of consideration to holders of Allowed Claims pursuant to this Plan in respect of the holder's Allowed Claim.

1.55.    ***Distribution Date*** means a date or dates, including the Initial Distribution Date, as determined by the Debtors or the Liquidation Trustee, as applicable, in accordance with the terms of the Plan, on which the Debtors or the Liquidation Trustee makes a Distribution to holders of Allowed Claims.

1.56.    ***Distribution Record Date*** means the Effective Date of the Plan.

1.57.    ***Effective Date*** means the date on which all conditions to the effectiveness of the Plan set forth in Section 10 hereof have been satisfied or waived in accordance with the terms of the Plan.

1.58.    ***Entity*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.59.     ***Estate*** or ***Estates*** means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.60.     ***Exculpated Parties*** means collectively, and in each case in its capacity as such: (i) the Debtors; (ii) the Liquidation Trustee; (iii) the Creditors' Committee and the members of the Creditors' Committee, (iv) to the extent they are or are acting as Estate fiduciaries, the current and former directors, officers, agents, members of management and other employees of the Debtors, respectively; and (v) to the extent they are or are acting as Estate fiduciaries, the predecessors, successors and assigns, subsidiaries, affiliates, members, partners, officers, directors, agents, attorneys, advisors, accountants, financial advisors, investment bankers, consultants, and other professionals, to the extent such parties are or were acting in such capacity of or for any of the Persons identified in (i) through (iii) above on or after the Petition Date.

1.61.     ***Executory Contract*** means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.62.     ***Existing Securities Law Claims*** means any Claim, whether or not the subject of an existing lawsuit: (a) arising from rescission of a purchase or sale of any debt or equity securities of any Debtor or an affiliate of any Debtor; (b) for damages arising from the purchase or sale of any such security; (c) for violations of the securities laws, misrepresentations, or any similar Claims, including, to the extent related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, any attorneys' fees, other charges, or costs incurred on account of the foregoing Claims; or (d) reimbursement, contribution, or indemnification on account of any such Claim.

1.63.     ***FAP Assets*** means the FAP Product and all assets of the Debtors related thereto.

1.64.     ***FAP Liquidation Trust Assets*** means any Net FAP Proceeds received by the Liquidation Trust in connection with the FAP Sale Transaction after the Effective Date, solely to the extent the Remaining DIP Facility Claims have already been paid in full.

1.65.     ***FAP Lockbox Account*** has the meaning set forth in Section 6.4(c) hereof.

1.66.     ***FAP Product*** means (i) any product or product candidate being developed or commercialized under the 3BP Agreement (including but not limited to any product comprising FAP-2286, or any derivatives or analogs thereof), and (ii) any other product being developed or commercialized by the Debtors or any of their subsidiaries that binds to or modulates, directly or indirectly, whether through up-regulation, down-regulation, or otherwise, fibroblast activation protein.

1.67.     ***FAP Stalking Horse APA*** means that certain Asset Purchase Agreement entered into by and among Clovis Oncology, Inc. and Novartis Innovative Therapies AG, dated December 11, 2022.

1.68.    ***FAP Sale Transaction*** means mean the sale, disposition or other asset sale of all or any part of the FAP Assets.

1.69.    ***Fee Claim*** means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtors, the Creditors' Committee, or any other official committee appointed in these Chapter 11 Cases pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

1.70.    ***Final DIP Order*** means that certain *Final Order (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying Automatic Stay, and (VI) Granting Related Relief*, entered by the Bankruptcy Court in the Chapter 11 Cases on January 24, 2023 [D.I. 256].

1.71.    ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; <u>provided</u>, <u>however</u>, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

1.72.    ***General Unsecured Claim*** means any unsecured nonpriority Claim against the Debtors, including any Prepetition Financing Deficiency Claims, other than Intercompany Claims or Unsecured Note Claims. General Unsecured Claims shall not include Claims that are not Allowed or are released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of the Plan or otherwise.

1.73.    ***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.74.    ***Impaired*** means, with respect to a Claim, Interest or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.75.    ***Initial Distribution*** means the first Distribution that either the Debtors or the Liquidation Trustee, as applicable, makes to holders of Allowed Claims.

1.76.    ***Initial Distribution Date*** means the date selected by the Debtors or the Liquidation Trustee, as applicable, on or as soon as reasonably practicable after the Effective

Date, on which the Debtors or the Liquidation Trustee, as applicable, will make the Initial Distribution.

1.77. ***Insured Claim*** means any Claim or portion of a Claim that is, or may be, insured under any of the Debtors' insurance policies.

1.78. ***Intercompany Claim*** means a Claim against any Debtor by another Debtor.

1.79. ***Intercompany Interest*** means an Interest held by a Debtor or a non-Debtor direct or indirect subsidiary or affiliate of a Debtor in another Debtor or a non-Debtor direct or indirect subsidiary or affiliate of a Debtor.

1.80. ***Interest*** means any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in any Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, whether fully vested or vesting in the future, including, without limitation, equity or equity-based incentives, grants, or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtors, to acquire any such interests in the Debtors that existed immediately before the Effective Date.

1.81. ***Interim Compensation Order*** means that certain *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* entered by the Bankruptcy Court in the Chapter 11 Cases on January 18, 2023 [D.I. 214].

1.82. ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.83. ***Liquidation Trust*** means that certain trust established pursuant to Section 6.4 hereof and the Liquidation Trust Agreement to, among other things, hold the Liquidation Trust Assets, make Distributions to holders of Allowed Claims pursuant to this Plan and wind-down the Debtors' estates after the Effective Date.

1.84. ***Liquidation Trust Agreement*** means the trust agreement governing the Liquidation Trust, which shall be in form and substance reasonably acceptable to the Debtors, the Liquidation Trustee, the Required DIP Lenders, and the Creditors' Committee and shall be filed with the Plan Supplement.

1.85. ***Liquidation Trust Assets*** means (i) all remaining assets of each of the Debtors that have not been sold or abandoned prior to the Effective Date following payment of (or establishment of appropriate reserves for) all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims, Allowed Other Priority Claims, Allowed Other Secured Claims, U.S. Trustee Fees and the Wind-Down Budget, (ii) the FAP Liquidation Trust Assets, (iii) the Rubraca Liquidation Trust Assets, (iv) all assets recovered by the Liquidation Trustee on behalf of the Liquidation Trust on or after the Effective Date through enforcement, resolution, settlement, collection, return, or otherwise, (v) all Causes of Action, other than Released Causes of Action,

and (vi) any proceeds resulting from the Liquidation Trustee's investment of the Liquidating Trust Assets on or after the Effective Date owned by the Debtors on the Effective Date; provided, that Avoidance Actions shall be deemed Liquidation Trust Assets, but proceeds of such Avoidance Actions shall first be applied to pay DIP Facility Claims in full.

1.86.    ***Liquidation Trust Beneficial Interests*** means the beneficial interests in the Liquidation Trust that shall entitle the holders thereof to receive Distributions from the Liquidation Trust Assets in accordance with the Liquidation Trust Agreement and the Plan.

1.87.    ***Liquidation Trust Beneficiaries*** shall mean holders of (i) the CVRs, (ii) Allowed Unsecured Note Claims, (iii) Allowed General Unsecured Claims.

1.88.    ***Liquidation Trust Board*** means the board that shall oversee the Liquidation Trust in accordance with the Liquidation Trust Agreement and the Plan, the initial composition of which shall consist of three members designated as follows, in each case reasonably acceptable to the Debtors: (i) one person nominated by the Required DIP Lenders, (ii) one person nominated by the Creditors' Committee, and (iii) one person jointly nominated by the Creditors' Committee and the Required DIP Lenders. The identities of the initial members of the Liquidation Trust Board, to the extent known, shall be identified in the Plan Supplement. The members of the Liquidation Trust Board shall not be entitled to compensation for their services rendered on behalf of the Liquidation Trust.

1.89.    ***Liquidation Trust Expenses*** means any and all reasonable fees, costs and expenses incurred by the Liquidation Trust or the Liquidation Trustee (or any professional or other Person retained by the Liquidation Trustee) on or after the Effective Date in connection with any of their duties under the Plan and the Liquidation Trust Agreement, including any administrative fees, attorneys' fees and expenses, insurance fees, taxes and escrow expenses; *provided, however*, that such fees, costs and expenses are consistent with the Wind-Down Budget.

1.90.    ***Liquidation Trustee*** means such Person as designated in the Plan Supplement reasonably acceptable to the Debtors, the Required DIP Lenders, and the Creditors' Committee.

1.91.    ***Net FAP Proceeds***[2] means (a) with respect to any FAP Sale Transaction, an amount equal to: (i) all Cash payments and other proceeds received by the Debtors from such transaction, <u>minus</u> (ii) (A) any bona fide reasonable and documented costs or expenses (including customary (w) legal, accounting and investment banking fees and expenses, (x) filing fees, (y) finder's fees, (z) success fees and any other similar customary fees) incurred in connection with or directly as a result of such Asset Sale, (B) in the case of any Asset Sale of the FAP Product pursuant to a FAP Sale Transaction that constitutes an Alternative Transaction any portion of the proceeds thereof that is necessary to pay the FAP Break-Up Fee and/or the FAP Expense Reimbursement, in each case, in accordance with the FAP Approved Stalking Horse APA, and (C) the amount of taxes payable (after taking into account any available tax credits or deductions) (notwithstanding the commencement of the Chapter 11 Cases) in connection with or directly as a

---

[2]    Any terms used in the definition of "Net FAP Proceeds" but not defined shall have the meaning given to them in the DIP Financing Agreement.

result of such Asset Sale, if and to the extent that the failure to pay such taxes could give rise to a (1) Lien that would have priority over all Liens securing the Obligations and the Prepetition Obligations or (2) claim of a governmental unit of the kind entitled to priority of payment or administrative expense claim as specified in sections 502(i), 507(a)(8), 503(b) or 507(b) of the Bankruptcy Code, and (b) with respect to any insurance, condemnation, taking or other casualty proceeds with respect to the FAP Assets, an amount equal to: (i) any Cash payments and other proceeds received by the Debtors (A) under any casualty or business interruption insurance policies in respect of any covered loss thereunder, or (B) as a result of the condemnation or taking of any assets of the Debtors by any Person pursuant to the power of eminent domain, condemnation or otherwise, or pursuant to a sale of any such assets to a purchaser with such power under threat of such a taking, $\underline{\text{minus}}$ (ii) any actual reasonable and documented out-of-pocket costs or expenses incurred by the Debtors in connection with the adjustment or settlement of any claims of the Debtors in respect thereof to the extent paid to a Person that is not an Affiliate of the Debtors.

1.92.    ***Net Rubraca Proceeds***[3] means (a) with respect to any Rubraca Sale Transaction, an amount equal to:  (i) all Cash payments and other proceeds received by the Debtors from such Asset Sale, $\underline{\text{minus}}$ (ii) (A) any bona fide reasonable and documented costs or expenses (including customary (w) legal, accounting and investment banking fees and expenses, (x) filing fees, (y) finder's fees, (z) success fees and any other similar customary fees) incurred in connection with or directly as a result of such Asset Sale, and (B) the amount of taxes payable (after taking into account any available tax credits or deductions) (notwithstanding the commencement of the Case) in connection with or directly as a result of such Asset Sale, if and to the extent that the failure to pay such taxes could give rise to a (1) Lien that would have priority over all Liens securing the Obligations and the Prepetition Obligations or (2) claim of a governmental unit of the kind entitled to priority of payment or administrative expense claim as specified in sections 502(i), 507(a)(8), 503(b) or 507(b) of the Bankruptcy Code, and (b) with respect to any insurance, condemnation, taking or other casualty proceeds with respect to the Rubraca Assets, an amount equal to:  (i) any Cash payments and other proceeds received by the Debtors or any of their Subsidiaries (A) under any casualty or business interruption insurance policies in respect of any covered loss thereunder, or (B) as a result of the condemnation or taking of any assets of the Debtors by any Person pursuant to the power of eminent domain, condemnation or otherwise, or pursuant to a sale of any such assets to a purchaser with such power under threat of such a taking, $\underline{\text{minus}}$ (ii) any actual reasonable and documented out-of-pocket costs or expenses incurred by the Debtors in connection with the adjustment or settlement of any claims of the Debtors in respect thereof to the extent paid to a Person that is not an Affiliate of the Debtors.

1.93.    ***Notes Indentures*** means, collectively, the (a) 2024 Convertible Senior Notes (2019 Issuance) Indenture; (b) 2024 Convertible Senior Notes (2020 Issuance) Indenture; and (c) 2025 Convertible Senior Notes Indenture.

1.94.    ***Notes Trustee*** means The Bank of New York Mellon Trust Company, N.A., as trustee, under each of the Notes Indentures.

---

[3]    Any terms used in the definition of "Net Rubraca Proceeds" but not defined shall have the meaning given to them in the DIP Financing Agreement.

1.95.     ***Notes Trustee Charging Lien*** means any lien or priority of payment to which the Notes Trustee is entitled under the Notes Indentures against distributions to be made to holders of Unsecured Notes Claims for payment of any Notes Trustee Fees.

1.96.     ***Notes Trustee Fees*** means all reasonable compensation, fees, expenses, and disbursements, including, without limitation, attorneys' and agents' fees, expenses and disbursements, incurred by the Notes Trustee under the Notes Indentures whether after the Petition Date or before or after the Effective Date.

1.97.     ***Other Priority Claim*** means any Claim against any of the Debtors entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim, a Fee Claim or a Priority Tax Claim.

1.98.     ***Other Secured Claim*** means any Secured Claim against a Debtor other than a Prepetition Financing Claim or a DIP Facility Claim.

1.99.     ***Person*** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit or other entity.

1.100.     ***Petition Date*** means December 11, 2022.

1.101.     ***Plan*** means this joint chapter 11 plan, including the exhibits hereto, as the same may be amended or modified from time to time in accordance with Section 9.4 herein.

1.102.     ***Plan Supplement*** means the compilation of documents and forms of documents, schedules and exhibits to be filed no later than seven (7) calendar days prior to the deadline for voting on this Plan, containing draft forms, signed copies or summaries of material terms, as the case may be, of (i) the Liquidation Trust Agreement; (ii) the identity of the Liquidation Trustee; (iii) the identities of the Liquidation Trust Board; (iv) the CVR Agreement; (v) the identity of the CVR Agent; (vi) the Assumption Schedule; and (vii) any other document necessary or appropriate to implement the Plan, as each document may be amended from time to time in accordance with their terms; underlined, that unless consent rights are otherwise expressly set forth in this Plan, each of the documents in the Plan Supplement (whether or not set forth above), including any alternation, restatement, modification or replacement thereto, shall be in form and substance reasonably acceptable to the Debtors and the Required DIP Lenders, in consultation with the Creditors' Committee.

1.103.     ***Prepetition Financing Agent*** means TOP IV SPV GP, LLC, as administrative agent for the Prepetition Lenders and collateral agent for the Prepetition Secured Parties.

1.104.     ***Prepetition Financing Agreement*** means that certain financing agreement, dated as of May 1, 2019 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date), among, Clovis Oncology, Inc. as borrower and certain of its subsidiaries as guarantors, the Prepetition Financing Agent, and the lenders from time to time party thereto.

1.105. ***Prepetition Financing Claim*** means any Claim arising in connection with the Prepetition Financing Agreement, including any Prepetition Financing Obligations (as defined in the Final DIP Order).

1.106. ***Prepetition Financing Deficiency Claims*** means any Prepetition Financing Claim to the extent such Claim is not paid in full in Cash on or after the Effective Date on account of the Net Rubraca Proceeds and Rubraca Cash.

1.107. ***Prepetition Lenders*** means the lenders, in their capacities as such, from time to time, party to the Prepetition Financing Agreement.

1.108. ***Prepetition Secured Parties*** means collectively, (a) the Prepetition Financing Agent and (b) the Prepetition Lenders.

1.109. ***Priority Tax Claim*** means any Secured Claim or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.110. ***Pro Rata Share*** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims within such Class.

1.111. ***Product NDA*** means any Regulatory Approval for any Product in any country of the world (including but not limited to the FDA-approved NDA for the Rubraca Product in the United States, identified as NDA 209115), together with all amendments and supplemental applications to such NDA.

1.112. ***Professional*** means a Person retained in the Chapter 11 Cases pursuant to and in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

1.113. ***Professional Fees Account*** shall have the meaning ascribed to such term in the Final DIP Order.

1.114. ***Proof of Claim*** means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

1.115. ***Related Parties*** has the meaning set forth in the definition of "Released Party".

1.116. ***Released Parties*** means collectively, and in each case, solely in their respective capacities as such: (i) the Debtors; (ii) the current and former directors, officers, agents, members of management and other employees of the Debtors; (iii) the Wind-Down Estates; (iv) the Creditors' Committee and the members of the Creditors' Committee; (v) the DIP Lender; (vi) the DIP Agent; (vii) the Prepetition Secured Parties; (viii) with respect to any Person or Entity in the foregoing clauses (i) through (vii), the predecessors, successors and assigns, subsidiaries, affiliates, members, partners, officers, directors, agents, attorneys, advisors, accountants, financial

advisors, investment bankers, consultants, and other professionals (collectively, the "Related Parties") solely in their capacity as such.

1.117.    ***Releasing Parties*** means collectively, and in each case, solely in their respective capacities as such: (i) the Released Parties; (ii) all holders of Claims and Interests that are deemed to accept this Plan; (iii) all holders of Claims who (a) vote to accept or reject the Plan or (b) abstains from voting and, in the case of either (a) or (b), does not opt out of the voluntary release contained in Section 11.5 of the Plan by checking the "opt out" box on the ballot, and returning it in accordance with the instructions set forth thereon, indicating that they opt not to grant the releases provided in the Plan; (iv) holders of Claims or Interests that are deemed to reject this Plan and do not timely file with the Bankruptcy Court an objection to the releases set forth in Section 11.5 of this Plan by the deadline established to file objections to this Plan; and (v) with respect to any Person or entity in the foregoing clauses (i) through (iv), the Related Party of such Person or Entity solely in their capacity as such.

1.118.    ***Remaining DIP Facility Claims*** means any outstanding Allowed DIP Facility Claims that may exist after payment of the Upfront FAP Payment or the DIP Financing Cash.

1.119.    ***Required DIP Lenders*** means, at any time, the DIP Lenders holding, in the aggregate, not less than 50.1% of the aggregate outstanding principal amount of the DIP Loans (as defined in the Final DIP Order).

1.120.    ***Rubraca Assets*** means the Rubraca Product and all other assets of the Debtors related thereto.

1.121.    ***Rubraca Cash*** means cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code, of the Prepetition Secured Parties.

1.122.    ***Rubraca Liquidation Trust Assets*** means any Net Rubraca Proceeds received by the Liquidation Trust in connection with the Rubraca Sale Transaction, solely to the extent all Prepetition Financing Claims have already been paid in full.

1.123.    ***Rubraca Lockbox Account*** has the meaning set forth in Section 6.4(c) hereof.

1.124.    ***Rubraca Product*** means any product containing rucaparib, whether as its sole active ingredient or in combination with one or more other active ingredients, including the rucaparib camsylate product Commercialized in the United States as of the Effective Date under the brand name "Rubraca®", as identified in the Product NDA in the United States, and all polymorphs, isomers, prodrugs, metabolites, esters, salts and any other forms, formulations or methods of delivery thereof Commercialized in any country of the world under any brand name or as a generic product by or on behalf of the Debtors, any of its subsidiaries or any of its or their respective licensees.

1.125.    ***Rubraca Sale Transaction*** means the sale, disposition, or other asset sale of all or any part of the Rubraca Assets.

1.126. ***Sale Order*** means any order of the Bankruptcy Court approving any Sale Transaction.

1.127. ***Sale Transactions*** means, collectively, the Rubraca Sale Transaction and the FAP Sale Transaction.

1.128. ***Schedules*** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.129. ***Secured Claim*** means a Claim to the extent, under applicable non-bankruptcy law, it is (i) secured by property of the Estate, the amount of which is equal to or less than the value of such property (A) as agreed to by the holder of such Claim and the Debtors, upon notice or opportunity to object, or (B) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.130. ***Segregated Cure Costs*** has the meaning set forth in Section 6.4(c) hereof.

1.131. ***Tax Code*** means the Internal Revenue Code of 1986, as amended from time to time.

1.132. ***Unsecured Notes*** means, collectively, the (a) 2024 Convertible Senior Notes (2019 Issuance); (b) 2024 Convertible Senior Notes (2020 Issuance); and (c) 2025 Convertible Senior Notes.

1.133. ***Unsecured Notes Claim*** means any Claim arising in connection with the Notes Indentures. For the avoidance of doubt, each Unsecured Notes Claim shall be deemed Allowed as of the Effective Date in an amount equal to (i) the principal amount outstanding under the applicable Unsecured Notes on the Petition Date, including without limitation any accrued interest and fees paid (or payable) in kind through such date, and (ii) all interest accrued and unpaid as of the Petition Date.

1.134. ***Upfront FAP Payment*** means the Distributions made to holders of Allowed DIP Facility Claims on account of the Net FAP Proceeds received by the Debtors on or prior to the Effective Date.

1.135. ***U.S. Trustee*** means the United States Trustee for Region 3.

1.136. ***U.S. Trustee Fees*** means fees arising under 28 U.S.C. § 1930(a)(6), and accrued interest thereon arising under 31 U.S.C. § 3717, if any.

1.137. ***Unexpired Lease*** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.138.    ***Unimpaired*** means, with respect to a Claim, Interest or Class of Claims or Interests, not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

1.139.    ***Wind-Down Budget*** means the budget attached to the Liquidation Trust Agreement, which shall be reasonably acceptable to the Debtors and the Required DIP Lenders, in consultation with the Creditors' Committee, and which shall provide for the distributions required to be made under the Plan and to pay expenses and costs of administering the Wind-Down Estates.

1.140.    ***Wind-Down Estate*** means the Estate of each Debtor after the Effective Date.

1.141.    ***Wind-Down Reserve*** means a cash reserve sufficient to fund the Liquidation Trust's activities pursuant to the Wind-Down Budget.

### B.    Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (iv) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (v) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### C.    Controlling Document.

In the event of an inconsistency between the Plan and any other document, the terms of the Plan shall control (unless stated otherwise in such other document). The provisions of the Plan and the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; underline provided that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

**SECTION 2.    ADMINISTRATIVE EXPENSE, FEE CLAIMS, DIP FACILITY CLAIMS, PRIORITY TAX CLAIMS, U.S. TRUSTEE FEES, AND ADEQUATE PROTECTION CLAIMS.**

2.1    *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtors or the Liquidation Trustee agree to different treatment, and subject to Section 2.3 hereof, the Debtors (or the Liquidation Trustee, as the case may be) shall pay to each holder of an Allowed Administrative Expense Claim Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of (i) forty five (45) calendar days after the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim is Allowed.

Holders of Administrative Expense Claims that were required to file and serve a request for payment of such Administrative Expense Claims and that did not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors or their property, or the Liquidation Trust or the Liquidation Trust Assets. The Debtors or the Liquidation Trustee, as applicable, may file and serve objections to Administrative Expense Claims on or before the Claims Objection Bar Date.

2.2    *Time for Filing Administrative Expense Claims.*

The Holder of an Administrative Expense Claim, other than:

        (i)    a Fee Claim;

        (ii)    an Administrative Expense Claim that has been allowed on or before the Effective Date;

        (iii)    a 503(b)(9) Claim;

        (iv)    any Claim, to the extent not previously paid, for the reasonable and documented out-of-pocket fees, expenses, costs and other charges incurred by the DIP Lenders or Prepetition Lenders, the Debtors' payment of which is provided for in the Final DIP Order and this Plan, which Claim shall be Allowed on the Effective Date;

        (v)    an Administrative Expense Claim for an expense or liability incurred prior to the Effective Date in the ordinary course of business;

        (vi)    an Administrative Expense Claim on account of fees and expenses incurred on or after the Petition Date but before the Effective Date by ordinary course professionals retained by the Debtors pursuant to an order of the Bankruptcy Court;

        (vii)    an Administrative Expense Claim arising, in the ordinary course of business, out of the employment by one or more Debtors of an individual from and after the Petition Date but before the Effective Date, but only to the extent that such Administrative Expense

17

Claim is solely for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses;

(viii)    U.S. Trustee Fees; or

(ix)    an Intercompany Claim,

must file with the Bankruptcy Court and on the Debtors, the Liquidation Trustee, the Claims Agent, and the United States Trustee, **proof of such Administrative Expense Claim so as to be received by 5:00 p.m. prevailing Eastern time on the Administrative Expense Claim Bar Date**. Such proof of Administrative Expense Claim must include at a minimum: (i) the name of the applicable Debtor that is purported to be liable for the Administrative Expenses Claim; (ii) the name of the holder of the Administrative Expense Claim; (iii) the amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim. **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED AND RELEASED.**

2.3    *Fee Claims.*

(a)    *Professional Fees Account.* No later than five (5) days after the Effective Date, the Debtors shall be authorized to transfer custody of the Professional Fees Account to the Liquidation Trust, and the Debtors or the Liquidation Trustee shall fund the Professional Fees Account. Fee Claims shall be paid in Cash from funds held in the Professional Fees Account when such Claims are Allowed by a Final Order of the Bankruptcy Court. Neither the Debtors' nor the Liquidation Trust's obligations to pay Fee Claims shall be limited nor be deemed limited to funds held in the Professional Fees Account. Notwithstanding anything to the contrary herein, the payment of Fee Claims of Professionals retained by the Creditors' Committee shall not exceed the amounts provided for such Fee Claims in the DIP Budget (as such term is defined in the Final DIP Order).

(b)    *Estimation of Fee Claims.* No later than five (5) days before the anticipated Effective Date, Professionals shall provide a good faith estimate of their Fee Claims projected to be outstanding as of the Effective Date and shall deliver such estimate to the Debtors. Such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may, after consulting with the Creditors' Committee, estimate the unbilled fees and expenses of such Professional. The total amount so estimated shall be utilized by the Debtors to determine the amount to be funded to the Professional Fees Account. The Debtors or the Liquidation Trustee shall use Cash on hand to increase the amount of the Professional Fees Account to the extent fee applications are filed after the Effective Date in excess of the amount held in the Professional Fees Account based on such estimates.

(c)    *Payment of Fee Claims.* All entities seeking an award by the Bankruptcy Court of Fee Claims (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45)

days after the Effective Date, and (ii) shall be paid in full from the Professional Fees Account in such amounts as are Allowed by the Bankruptcy Court (A) in accordance with the Interim Compensation Order, (B) upon the later of the Effective Date and the date upon which the order relating to any such Allowed Fee Claim is entered or (C) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors or the Liquidation Trustee, as applicable. Notwithstanding anything to the contrary in the Interim Compensation Order, Professionals shall only be required to file a final fee application and do not need to file an interim fee application. Objections to such Fee Claims, if any, must be filed and served no later than twenty (20) calendar days after the filing of such fee application or such other date as established by the Bankruptcy Court.

The Liquidation Trustee is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval in accordance with the Wind-Down Budget. When all Allowed Fee Claims have been paid in full, any remaining amount in the Professional Fees Account shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the Liquidation Trust without any further action or order of the Bankruptcy Court.

(d)    *Professional Fees Account Not Property of the Liquidation Trust*. Until payment in full of all Allowed Fee Claims, funds held in the Professional Fees Account shall not be considered Liquidation Trust Assets or otherwise property of the Liquidation Trust, the Debtors, or their Estates. The Professional Fees Account shall be treated as a trust account for the benefit of holders of Fee Claims and for no other parties until all Allowed Fee Claims have been paid in full in Cash. No other Liens, claims, or interests shall encumber the Professional Fees Account or Cash held in the Professional Fees Account in any way.

2.4    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtors or the Liquidation Trustee, as applicable, (i) Cash in an amount equal to such Allowed Priority Tax Claim on the later of (a) forty five (45) calendar days after the Effective Date (or as soon as reasonably practicable thereafter), (b) the first Business Day after the date that is thirty (30) days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course, or as soon thereafter as is reasonably practicable, or (b) equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate under section 511 of the Bankruptcy Code, over a period not exceeding five (5) years from and after the Petition Date. The holders of Allowed Priority Tax Claims shall retain their tax liens on their collateral to the same validity, extent and priority as existed on the Petition Date until all validly determined taxes and related interest, penalties, and fees (if any) have been paid in full. To the extent a holder of an Allowed Priority Tax Claim is not paid in the ordinary course of business, payment of the Allowed Priority Tax Claim shall include interest through the date of payment at the applicable state statutory rate, as set forth in sections 506(b), 511, and 1129 of the Bankruptcy Code.

2.5    *DIP Facility Claims*

On the Effective Date, each holder of an Allowed DIP Facility Claim shall receive its Pro Rata Share of the Upfront FAP Payment and DIP Financing Cash in accordance with Section 6.4(c) hereof. To the extent the Upfront FAP Payment and DIP Financing Cash are is insufficient to satisfy in full all Allowed DIP Facility Claims on the Effective Date, any Remaining DIP Facility Claims shall, in full and final satisfaction of such Remaining DIP Facility Claims, be converted on a dollar-for-dollar basis into CVRs in accordance with this Plan and the CVR Agreement. In accordance with the Final DIP Order, the CVR Agreement and this Plan, the CVRs shall not accrue any interest or be entitled to any premium, and shall be entitled to, on a first priority basis over any other rights that may exist, the Net FAP Proceeds until repaid in full in Cash. For the avoidance of doubt, the Net FAP Proceeds shall first be paid to the CVRs until the DIP Facility Claims are paid in full and, following satisfaction in full of the DIP Facility Claims, all Net FAP Proceeds realized and received by the Debtors or the Liquidation Trustee after the Effective Date shall be transferred to the Liquidation Trust for the benefit of the Liquidation Trust Beneficiaries.

2.6    *U.S. Trustee Fees*

The Debtors or the Liquidation Trustee, as the case may be, shall pay all outstanding U.S. Trustee Fees of the Debtors, together with interest pursuant to 31 U.S.C. § 3717, if any, on an ongoing basis on the later of: (i) the Effective Date; and (ii) the date such U.S. Trustee Fees become due, until such time as a final decree is entered closing the Chapter 11 Cases or the Chapter 11 Cases are converted or dismissed.

2.7    *Adequate Protection Claims*

Allowed Adequate Protection Claims are entitled to administrative expense priority status senior to all Administrative Expense Claims, in accordance with the Final DIP Order, subject and subordinate to (i) the Carve-Out (as such term is defined in the Final DIP Order) and (ii) the DIP Superpriority Claims (as such term is defined in the Final DIP Order). Allowed Adequate Protection Claims shall be indefeasibly paid in full in Cash on the Effective Date or as otherwise may be agreed to by the Debtors and the DIP Agent.

**SECTION 3.    CLASSIFICATION OF CLAIMS AND INTERESTS.**

3.1    *Classification in General.*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; <u>provided</u> that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

3.2    *Formation of Debtor Groups for Convenience Only.*

This Plan (including, but not limited to, Section 2 and Section 3 of the Plan) groups the Debtors together solely for the purpose of describing treatment under this Plan, confirmation of

this Plan, and Distributions to be made in respect of Claims against and Interests in the Debtors under this Plan. Except as provided in Section 6 of the Plan, such groupings shall not affect each Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets.

      3.3    *Summary of Classification.*

The following table designates the Classes of Claims against and Interests in each of the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (iii) deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Section 3.5.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Prepetition Financing Claims | Impaired | Yes |
| 2 | Other Priority Claims | Unimpaired | No (Presumed to accept) |
| 3 | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| 4 | Unsecured Note Claims | Impaired | Yes |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6 | Existing Securities Law Claims | Impaired | No (Deemed to reject) |
| 7 | Interest | Impaired | No (Deemed to reject) |
| 8A | Intercompany Claims | Impaired | No (Deemed to reject) |
| 8B | Intercompany Interests | Impaired | No (Deemed to reject) |

      3.4    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Liquidation Trustee, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

**SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS.**

      4.1    *Prepetition Financing Claims (Class 1).*

      (a)    *Classification*: Class 1 consists of Allowed Prepetition Financing Claims against the Debtors.

(b) *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, each holder of an Allowed Prepetition Financing Claim shall receive its Pro Rata Share of the Net Rubraca Proceeds and Rubraca Cash in accordance with the Final DIP Order and Section 6.4(c) hereof.

(c) *Prepetition Financing Deficiency Claims*. To the extent any Allowed Prepetition Financing Claim is not paid in full in Cash on or after the Effective Date on account of the Net Rubraca Proceeds and Rubraca Cash, the remaining portion of such Allowed Prepetition Financing Claim shall be treated for all purposes under this Plan as Allowed Prepetition Financing Deficiency Claims.

(d) *Voting*: Class 1 is Impaired, and each holder of a Prepetition Financing Claim is entitled to vote to accept or reject the Plan.

4.2 *Other Priority Claims (Class 2)*.

(a) *Classification*: Class 2 consists of Allowed Other Priority Claims against the Debtors.

(b) *Treatment*: Except to the extent that a holder of an Allowed Other Priority Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Claim, payable on the later of (i) forty five (45) calendar days after the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the first Business Day after thirty (30) days from the date on which such Other Priority Claim becomes an Allowed Priority Claim, or as soon as reasonably practical thereafter.

(c) *Voting*: Class 2 is Unimpaired, and the holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Other Priority Claims.

4.3 *Other Secured Claims (Class 3)*.

(a) *Classification*: Class 3 consists of the Other Secured Claims.

(b) *Treatment*: Except to the extent that a holder of an Allowed Other Secured Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each such holder shall receive, at the option of the Debtors or the Liquidation Trustee, (i) payment in full in Cash in full and final satisfaction of such Claim, payable on the later of (A) forty five (45) calendar days after the Effective Date (or as soon as reasonably practicable thereafter) and (B) the first Business Day after thirty (30) days from the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon as reasonably practical thereafter, (ii) delivery of the collateral securing such Allowed Other Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code, or (iii) such other treatment necessary to satisfy section 1129 of the Bankruptcy Code.

(c)    *Voting*: Class 3 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Other Secured Claims.

4.4    *Unsecured Note Claims (Class 4).*

(a)    *Classification*: Class 4 consists of Unsecured Note Claims against the Debtors.

(b)    *Treatment*: Each holder of an Allowed Unsecured Note Claims shall receive in full satisfaction, settlement, and release of, and in exchange for such Allowed Unsecured Note Claims its Pro Rata Share (measured by reference to the aggregate amount of Allowed Claims in Classes 4 and 5) of the Liquidation Trust Beneficial Interests.

(c)    *Voting*: Class 4 is Impaired, and the holders of Unsecured Note Claims are entitled to vote to accept or reject the Plan.

4.5    *General Unsecured Claims (Class 5).*

(a)    *Classification*: Class 5 consists of General Unsecured Claims against the Debtors.

(b)    *Treatment*: Each holder of an Allowed General Unsecured Claim shall receive in full satisfaction, settlement, and release of, and in exchange for such Allowed General Unsecured Claim the Pro Rata Share (measured by reference to the aggregate amount of Allowed Claims in Classes 4 and 5) of the Liquidation Trust Beneficial Interests such holder is entitled to receive under the Liquidation Trust Agreement.

(c)    *Voting*: Class 5 is Impaired, and the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.6    *Existing Securities Law Claims (Class 6).*

(a)    *Classification*: Class 6 consists of Existing Securities Law Claims against the Debtors.

(b)    *Treatment*: Holders of Existing Securities Law Claims shall not receive or retain any distribution under the Plan on account of such Existing Securities Law Claims.

(c)    *Voting*: Class 6 is Impaired, and the holders of Existing Securities Law Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the holders of Existing Securities Law Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Claims.

4.7 *Interests (Class 7)*.

(a) *Classification*: Class 7 consists of Interests in the Debtors.

(b) *Treatment*: Interests shall be extinguished, cancelled and released on the Effective Date, and holders thereof shall not receive any Distribution on account of such Interests.

(c) *Voting*: Class 7 is Impaired, and the holders of Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the holders of Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Interests.

4.8 *Intercompany Claims and Intercompany Interests (Class 8A and Class 8B)*.

(a) *Classification*: Classes 8A and 8B consist of Intercompany Claims against and Intercompany Interests in the Debtors.

(b) *Treatment*: On or after the Effective Date, all Allowed Intercompany Claims and Intercompany Interests shall be adjusted, continued, settled, reinstated, discharged, or eliminated, in each case to the extent determined to be appropriate by the Debtors or the Liquidation Trustee (as applicable), with the prior consent of the Prepetition Financing Agent.

(c) *Voting*: Classes 8A and 8B are Impaired, and the holders of Intercompany Claims and Intercompany Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the holders of Intercompany Claims and Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Claims or Interests.

**SECTION 5. ACCEPTANCE OR REJECTION OF THE PLAN.**

5.1 *Class Acceptance Requirement*.

A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in dollar amount of the Allowed Claims in such Class and more than one-half (1/2) in number of holders of such Claims, in each case, that have voted on the Plan.

5.2 *Tabulation of Votes on a Non-Consolidated Basis*.

All votes on the Plan shall be tabulated on a non-consolidated basis by Class and by Debtor for the purpose of determining whether the Plan satisfied sections 1129(a)(8) and/or 1129(a)(10).

5.3 *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown"*.

Because certain classes are deemed to have rejected the Plan, the Debtors will request confirmation of the Plan, as it may be modified and amended from time to time, under section 1129(b) of the Bankruptcy Code with respect to such Classes. Subject to Sections 13.5 and 13.6

of this Plan, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

>  5.4    *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class

>  5.5    *Voting Classes; Deemed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the holders of such Claims or Interests in such Class.

## SECTION 6.    MEANS FOR IMPLEMENTATION.

>  6.1    *Joint Chapter 11 Plan.*

The Plan is a joint chapter 11 plan for each of the Debtors, with the Plan for each Debtor being non-severable and mutually dependent on the Plan for each other Debtor.

>  6.2    *No Substantive Consolidation.*

The Plan is a joint plan that does not provide for substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for purposes hereof.  Except as specifically set forth herein, nothing in this Plan shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any claim against any other Debtor.  Notwithstanding the foregoing, solely for Distribution purposes, holders of Allowed Prepetition Financing Claims, Allowed Unsecured Note Claims and Allowed General Unsecured Claims shall be entitled to a single Claim with respect to any particular debt owed.

>  6.3    *Plan Funding.*

Distributions under the Plan shall be funded from Cash on hand and the proceeds of the Sales Transactions that are received before, on, or after the Effective Date.

>  6.4    *Liquidation Trust.*

>  (a)    *Execution of the Liquidation Trust Agreement.* On or before to the Effective Date, the Liquidation Trust Agreement shall be executed, and all other necessary steps shall be taken to establish the Liquidation Trust to hold the Liquidation Trust Assets, which shall be for the benefit of the Liquidation Trust Beneficiaries. Section 6.4 of the Plan sets forth certain of the rights, duties, and obligations of the Liquidation Trustee.  In the event of any conflict between the terms of Section 6.4 of the Plan and the terms of the Liquidation Trust Agreement,

unless otherwise specified in the Plan, the terms of the Liquidation Trust Agreement shall govern. The Liquidation Trust Agreement shall provide for the appointment of a Liquidation Trust Board as of the Effective Date to oversee the administration of the Liquidation Trust and the actions of the Liquidation Trustee, among other things; provided, that, the members of the Liquidation Trust Board shall not be entitled to receive compensation for the services rendered on behalf of the Liquidation Trust.

(b)     *Purpose of the Liquidation Trust*. The Liquidation Trust shall be established in accordance with the Liquidation Trust Agreement to administer post-Effective Date responsibilities of the Debtors and wind-down under the Plan, including, but not limited to, (i) being vested with, and liquidating the Liquidation Trust Assets, (ii) making Distributions to holders of Allowed Claims in accordance with the terms of this Plan and the Liquidation Trust Agreement, (iii) resolving all Disputed Claims and effectuating the Claims reconciliation process pursuant to the procedures prescribed in this Plan, (iv) prosecuting, settling, and resolving Causes of Action, (v) recovering, through enforcement, resolution, settlement, collection, or otherwise, assets on behalf of the Liquidation Trust (which assets shall become part of the Liquidation Trust Assets), (vi) winding down the affairs of the Debtors, if and to the extent necessary, including taking any steps to dissolve, liquidate, bankrupt or take other similar action with respect to each Debtor, including by terminating the corporate or organizational existence of each such Debtor, and (vii) performing all actions and executing all agreements, instruments and other documents necessary to effectuate the purpose of the Liquidation Trust.

Notwithstanding anything to the contrary in this <u>Section 6.4</u>, the Liquidation Trust's primary purpose is liquidating the Liquidation Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Liquidation Trust's liquidating purpose and reasonably necessary to conserve and protect the Liquidation Trust Assets and provide for the orderly liquidation thereof.

(c)     *Liquidation Trust Assets; Proceeds of Sale Transactions*. The Liquidation Trust shall consist of the Liquidation Trust Assets. Except as otherwise provided in this Plan or the Confirmation Order, on the Effective Date, the Debtors shall transfer all of the Liquidation Trust Assets held by the Debtors to the Liquidation Trust, and all such assets shall vest in the Liquidation Trust on such date, to be administered by the Liquidation Trustee, in accordance with this Plan and the Liquidation Trust Agreement. The Debtors may take all actions as may be necessary or appropriate to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan.

Proceeds from the FAP Sale Transaction shall be distributed as follows:

- Until payment in full of the CVRs, the Debtors or the Liquidation Trustee, as applicable, shall deposit any Net FAP Proceeds realized in connection with the FAP Sale Transaction into a segregated account under the control of the DIP Agent (the "***FAP Lockbox Account***") and cause any amounts on deposit in the FAP Lockbox Account to immediately be used to mandatorily prepay the CVRs.

- Concurrently with the closing of the FAP Sale Transaction, the Debtors or the Liquidation Trustee shall cause proceeds from the FAP Sale Transaction representing estimated Cure

Obligations for Executory Contracts or Unexpired Leases that may be assigned in the FAP Sale Transaction, for which Cure Obligations have not been fixed prior to the closing date of the FAP Sale Transaction (such proceeds, the "***Segregated Cure Costs***"), to be placed in an escrow account (with the DIP Agent having a perfected security interest in the Debtors' interests in such escrow account); provided, that the aggregate amount of Segregated Cure Costs may not exceed $6,000,000 without the prior written consent of the Required DIP Lenders unless reimbursed in accordance with the FAP Stalking Horse APA pursuant to an increase in the Upfront FAP Payment.  Following the resolution or determination of such Cure Obligations, and payment thereof from the Segregated Cure Costs (which the Debtors shall promptly make as part of closing on the FAP Sale Transaction, or those costs that have not been fixed prior to closing, promptly after resolution or determination of such Cure Obligations), any such remaining Segregated Cure Costs (and other amounts in the escrow account) shall immediately be deposited into the FAP Lockbox Account and applied to immediately prepay the CVRs in accordance with Sections 2.5 and 6.4(c) hereof.

- Following satisfaction in full of the CVRs in accordance with Sections 2.5 and 6.4(c) hereof, all Net FAP Proceeds realized and received by the Debtors or the Liquidation Trustee after the Effective Date shall be transferred to the Liquidation Trust (to a bank account designated by the Liquidation Trustee) for the benefit of the Liquidation Trust Beneficiaries.

Proceeds from the Rubraca Sale Transaction shall be distributed as follows:

- In accordance with Section 5.8 of the DIP Financing Agreement, the Debtors or the Liquidation Trustee, as applicable, upon two business days' notice to the Committee if prior to the Effective Date, shall deposit any Net Rubraca Proceeds realized in connection with the Rubraca Sale Transaction into a segregated account under the control of the DIP Agent and the Prepetition Financing Agent (the "***Rubraca Lockbox Account***") and cause any amounts on deposit in the Rubraca Lockbox Account to immediately be used to mandatorily prepay the Prepetition Financing Claims in accordance with Section 2.10(a) of the DIP Financing Agreement, Paragraph 20 of the Final DIP Order and Section 4.1(b) hereof.

- Following satisfaction in full of the Prepetition Financing Claims, all Net Rubraca Proceeds realized and received by the Debtors or the Liquidation Trustee after the Effective Date shall be transferred to the Liquidation Trust (to a bank account designated by the Liquidation Trustee) for the benefit of the Liquidation Trust Beneficiaries.

All of the Debtors' Cash, other than as set forth herein with respect to the Net FAP Proceeds or the Net Rubraca Proceeds, shall be distributed as follows:

- Any Cash of the Debtors remaining on the Effective Date, constituting Rubraca Cash, shall be used to pay the Prepetition Financing Claims in accordance with Section 4.1(b) hereof.

- Any Cash of the Debtors remaining on the Effective Date constituting DIP Financing Cash, shall be used to repay the DIP Facility Claims in accordance with Section 2.5 hereof.

- If the Prepetition Financing Claims or DIP Facility Claims are repaid in full as of the Effective Date, any remaining Rubraca Cash or DIP Facility Cash, respectively, shall be transferred to the Liquidation Trust, and shall vest in the Liquidation Trust on such date, to be administered by the Liquidation Trustee in accordance with this Plan and the Liquidation Trust Agreement.

(d)     *Liquidation Trustee*. The Liquidation Trustee shall serve as the initial trustee of the Liquidation Trust. The Liquidation Trustee shall have no duties until the occurrence of the Effective Date, and on and after the Effective Date shall be a fiduciary of each of the Wind-Down Estates. The powers, rights and responsibilities of the Liquidation Trustee shall be as specified in the Liquidation Trust Agreement and Plan and shall include the authority and responsibility to fulfill the items identified in this Section 6.4 of the Plan. Other rights and duties of the Liquidation Trustee and the Liquidation Trust Beneficiaries shall be as set forth in the Liquidation Trust Agreement.

(e)     *Functions of the Liquidation Trustee*. On and after the Effective Date, and subject to the Wind-Down Budget, the Liquidation Trustee shall carry out the functions set forth in this Section 6.4 and may take such actions without further approval by the Bankruptcy Court, in accordance with the Liquidation Trust Agreement. Such functions may include any and all powers and authority to:

(i)     take all steps and execute all instruments and documents necessary to make Distributions to holders of Allowed Claims and to perform the duties assigned to the Liquidation Trustee under the Plan or the Liquidation Trust Agreement;

(ii)     comply with and effectuate the Plan and the obligations hereunder;

(iii)     employ, retain or replace professionals to represent him or her with respect to his or her responsibilities, subject to the Wind Down Budget;

(iv)     wind up the affairs of the Debtors, if and to the extent necessary, including taking any steps to dissolve, liquidate, bankrupt, or take other similar action with respect to each Debtor, including by terminating the corporate or organizational existence of each such Debtor;

(v)     take any actions necessary to (A) resolve all matters related to the Liquidation Trust Assets and (B) vest such assets in the Liquidation Trust;

(vi)     make Distributions of the Liquidation Trust Assets and any proceeds thereof, in excess of any amounts necessary to pay Liquidation Trust Expenses, in accordance with the terms of this Plan

(vii)     prepare and file appropriate tax returns and other reports on behalf of the Debtors and pay taxes or other obligations owed by the Debtors (including, without limitation, any Allowed Administrative Expense Claims and Allowed Priority Tax Claims asserted by taxing authorities);

          (viii)    file, prosecute, settle or dispose of any and all objections to asserted Claims;

          (ix)    enter into and consummate any transactions for the purpose of dissolving the Debtors;

          (x)    take such actions as are necessary or appropriate to close any of the Debtors' Chapter 11 Cases;

          (xi)    maintain the books and records and accounts of the Debtors; and

          (xii)    take any other actions not inconsistent with the provisions hereof that the Liquidation Trustee deems reasonably necessary or desirable in connection with the foregoing functions.

          (f)    *Fees and Expenses of the Liquidation Trust*. From and after the Effective Date, Liquidation Trust Expenses shall be paid from the Liquidation Trust Assets in the ordinary course of business, in accordance with the Plan, the Wind-Down Budget and the Liquidation Trust Agreement. Without any further notice to any party or action, order or approval of the Bankruptcy Court, the Liquidation Trustee, on behalf of the Liquidation Trust, may employ and pay in the ordinary course of business, the reasonable fees of any professional (including professionals previously employed by the Debtors, the Creditors' Committee, or members of the Creditors' Committee, but excluding any Affiliates, relatives, or Related Parties to the Liquidation Trustee) for services rendered or expenses incurred on and after the Effective Date that, in the discretion of the Liquidation Trustee, are necessary to assist the Liquidation Trustee in the performance of the Liquidation Trustee's duties under the Plan and the Liquidation Trust Agreement, subject to (i) the Wind-Down Budget and (ii) any limitations and procedures established by the Liquidation Trust Agreement.

          (g)    *Creation and Maintenance of Trust Accounts*. On or prior to the Effective Date, appropriate trust accounts will be established and maintained in one or more federally insured domestic banks in the name of the Liquidation Trust. Cash deposited in the trust accounts will be invested, held and used solely as provided in the Liquidation Trust Agreement. The Liquidation Trustee is authorized to establish additional trust accounts after the Effective Date, consistent with the terms of the Liquidation Trust Agreement, as applicable. After the funding of the trust accounts on the Effective Date, the trust accounts will be funded, as applicable, by Cash proceeds obtained through litigation or the disposition of Liquidation Trust Assets. Upon obtaining an order of the Bankruptcy Court authorizing final Distribution or closure of the Debtors' Chapter 11 Cases, any funds remaining in the trust accounts shall be distributed in accordance with this Plan and the Liquidation Trust Agreement, and the trust accounts may be closed.

          (h)    *Indemnification of Liquidation Trustee*. The Liquidation Trustee (and its agents and professionals) shall not be liable for actions taken or omitted in its or their capacity as, or on behalf of, the Liquidation Trustee or the Liquidation Trust, except those acts arising out of its or their gross negligence, actual fraud or willful misconduct, each as determined by a final order from a court of competent jurisdiction. The Liquidation Trustee (and its agents and professionals) shall be entitled to indemnification and reimbursement for fees and expenses in

defending any and all of its or their actions or inactions in its or their capacity as, or on behalf of, the Liquidation Trustee or the Liquidation Trust, except for any actions or inactions involving gross negligence, actual fraud or willful misconduct, each as determined by a final order from a court of competent jurisdiction. Any indemnification claim of the Liquidation Trustee and the other parties entitled to indemnification under this subsection shall be satisfied from the Liquidation Trust Assets, as provided in the Liquidation Trust Agreement, in accordance with the Wind-Down Budget. The Liquidation Trustee shall be entitled to rely, in good faith, on the advice of its professionals.

(i)     *Insurance*. The Liquidation Trustee shall be authorized, but not required, to obtain any reasonably necessary insurance coverage, at the Liquidation Trust's sole expense, for itself and its respective agents, including coverage with respect to the liabilities, duties and obligations of the Liquidation Trustee, which insurance coverage may, at the sole option of the Liquidation Trustee, be extended for a reasonable period after the termination of the Liquidation Trust Agreement; *provided, however*, that the cost of such coverage is provided for in, and consistent with, the Wind-Down Budget.

(j)     *Records*. The Liquidation Trustee shall be provided with originals or copies of or access to all documents and business records of the Debtors necessary for the disposition of Liquidation Trust Assets and objections to Disputed Claims.

(k)     *Non-Transferability of Liquidation Trust Interests*. The Liquidation Trust Beneficial Interests shall be non-transferable other than if transferred by will, intestate succession or otherwise by operation of law.

6.5     *Liquidation Trust Tax Matters*.

(a)     *Tax Treatment; No Successor in Interest*. The Liquidation Trust is intended to be treated for U.S. federal income tax purposes as a liquidating trust described in Treasury Regulation section 301.7701-4(d) and, to the extent applicable, as one or more Disputed Claims Reserves treated as disputed ownership funds described in Treasury Regulation section 1.468B-9. For U.S. federal income tax purposes, the transfer of assets by the Debtors to the Liquidation Trust will be treated (i) as the transfer of assets by the Debtors to the holders of Allowed Claims entitled to distributions from the Liquidation Trust Assets, subject to any liabilities of the Debtors or the Liquidation Trust payable from the proceeds of such assets, followed by the transfer of such assets (subject to such liabilities) by such holders to the Liquidation Trust in exchange for the beneficial interests in the Liquidation Trust, and (ii) to the extent applicable, as a transfer of assets by the Debtors to one or more Disputed Claims Reserves.

(b)     *Liquidation Purpose of the Liquidation Trust*. The Liquidation Trust shall be established for the primary purpose of liquidating and distributing the assets transferred to it, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust. Accordingly, the Liquidation Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets, make timely distributions to the Liquidation Trust Beneficiaries, and not unduly prolong their duration. The Liquidation Trust shall not be deemed a successor-in-interest of the

Debtors for any purpose other than as specifically set forth in this Plan or the Liquidation Trust Agreement. The record holders of beneficial interests shall be recorded and set forth in a register maintained by the Liquidation Trustee expressly for such purpose.

(c)    *Cash Investments*. The right and power of the Liquidation Trustee to invest the Liquidation Trust Assets, the proceeds thereof or any income earned by the Liquidation Trust, shall be limited to the right and power that a liquidating trust, within the meaning of section 301.7701-4(d) of the Treasury Regulations, is permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, including Revenue Procedure 94-45, whether set forth in IRS rulings or other IRS pronouncements, and to the investment guidelines of section 345 of the Bankruptcy Code. The Liquidation Trustee may expend the Cash of the Liquidation Trusts (i) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective assets of the Liquidation Trust during liquidation, (ii) to pay the respective reasonable administrative expenses of the Liquidation Trust (including, but not limited to, any taxes imposed on the Liquidation Trust) and (iii) to satisfy other respective liabilities incurred by the Liquidation Trust in accordance with this Plan and the Liquidation Trust Agreement (including, without limitation, the payment of any taxes).

(d)    *Liquidation Trust as Grantor Trust*. The Liquidation Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes with the Liquidation Trust Beneficiaries treated as grantors and owners of the Liquidation Trust. For all U.S. federal income tax purposes, all parties (including the Debtors, the Liquidation Trustee and the Liquidation Trust Beneficiaries) shall treat the transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust, as set forth in the Liquidation Trust Agreement, as a transfer of such assets by the Debtors to the holders of Allowed Claims entitled to distributions from the Liquidation Trust Assets, followed by a transfer by such holders to the Liquidation Trust. Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for U.S. federal income tax purposes.

(e)    *Tax Reporting and Tax Payments*.

(i)    The Liquidation Trustee shall file tax returns for the Liquidation Trust treating the Liquidation Trust as a grantor trusts pursuant to Section 1.671-4(a) of the Treasury Regulations and in accordance and in accordance with this <u>Section 6.5(e)</u>. The Liquidation Trustee also shall annually send to each holder of a Liquidation Trust Beneficial Interest a separate statement regarding the receipts and expenditures of the Liquidation Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holders' underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

(ii)    As soon as practicable after the Effective Date, the Liquidation Trustee shall make a good faith determination of the fair market value of the Liquidation Trust Assets as of the Effective Date. This valuation shall be used consistently by all parties for all U.S. federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the assets of the Liquidation Trust.

(iii)    The Liquidation Trustee may elect to treat any Disputed Claims Reserves as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections consistent with such tax treatment). The Liquidation Trustee shall be the administrators of any such applicable Disputed Claims Reserves within the meaning of Treasury Regulation section 1.468B-9(b)(2) and shall be responsible for all tax reporting and withholding required by any such Disputed Claims Reserves.

(iv)    The Liquidation Trust shall be responsible for payment, out of Liquidation Trust Assets, of any taxes imposed on the Liquidation Trust (including any Disputed Claims Reserves) or the Liquidation Trust Assets. More particularly, any taxes imposed on any Disputed Claims Reserves or its assets will be paid out of the assets of the Disputed Claims Reserves, and netted against any subsequent distributions in respect of the allowance or disallowance of such Claims. In the event, and to the extent, any Cash in any Disputed Claims Reserves is insufficient to pay the portion of any taxes attributable to taxable income arising from assets of the Disputed Claims Reserves (including any income that may arise upon an actual or constructive distribution of the assets of the reserve in respect of the resolution of Disputed Claims), assets of the Disputed Claims Reserves (including those otherwise distributable) may be sold to pay such taxes.

(v)    The Liquidation Trustee may request an expedited determination of taxes of the Liquidation Trust, including any Disputed Claims Reserves, and, in the case of the Liquidation Trustee, of the Debtors, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Liquidation Trust or the Debtors for all taxable periods through the dissolution of the Liquidation Trust.

6.6    *Elimination of Duplicate Claims.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the claims register by the Debtors or the Liquidation Trustee, as applicable, upon stipulation between the parties in interest without a Claims objection having to be filed and without any further notice or action, order, or approval of the Bankruptcy Court, provided, if any such modification results in a claim in excess of $1,000,000, such modification shall become effective only after notice and an opportunity for parties-in-interest to object. If a Claim has been satisfied, the Debtors or the Liquidation Trustee, or the applicable claimant, as applicable, may amend the Claims register indicating that such Claim has been satisfied.

6.7    *Corporate Action.*

Upon the Effective Date, all actions contemplated by the Plan (including any action to be undertaken by the Liquidation Trustee or the Debtors) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, the Liquidation Trustee or any other Entity or Person. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

6.8     *Directors, Officers, Managers, Members and Authorized Persons of the Debtors.*

On the Effective Date, each of the Debtors' directors and officers shall be discharged from their duties and terminated automatically without the need for any corporate action or approval and without the need for any corporate filings, and, unless subject to a separate agreement with the Liquidation Trustee, shall have no continuing obligations to the Debtors following the occurrence of the Effective Date.

6.9     *D&O Policy.*

As of the Effective Date, the Debtors shall be deemed to have assumed all of the D&O Policies pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, and coverage for defense and indemnity under any of the D&O Policies shall remain in full force and effect subject to the terms and conditions of the D&O Policies. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each D&O Policy. Notwithstanding anything to the contrary contained in the Plan, and except as otherwise may be provided in an order of the Bankruptcy Court, confirmation of the Plan shall not impair or otherwise modify any obligations assumed by the foregoing assumption of the D&O Policies, and each such obligation will be deemed and treated as an executory contract that has been assumed by the Debtors under the Plan as to which no proof of Claim need be filed. For the avoidance of doubt, the D&O Policies provide coverage for those insureds currently covered by such policies for the remaining term of such policies and runoff or tail coverage after the Effective Date to the fullest extent permitted by such policies. On and after the Effective Date, the Debtors, the Wind-Down Estates, or the Liquidation Trustee shall not terminate or otherwise reduce the coverage under any of the D&O Policies in effect or purchased as of the Petition Date.

6.10    *Indemnification of Directors, Officers and Employees.*

For purposes of the Plan, the obligation of the Debtors to indemnify and reimburse any Person or entity serving at any time on or after the Petition Date as one of its directors, officers or employees by reason of such Person's or entity's service in such capacity, or as a director, officer or employee of any of the Debtors or any other corporation or legal entity, to the extent provided in such Debtor's constituent documents, a written agreement with the Debtor(s), in accordance with any applicable law, or any combination of the foregoing, shall survive confirmation of the Plan and the Effective Date solely to the extent of available insurance. For the avoidance of doubt, nothing herein shall be construed as the Debtors assuming any obligation with respect to any self-insured retention for which the applicable insurer has the ability to assert a prepetition Claim against the applicable Debtor in accordance with the order setting the Bar Date or other order of the Court. On and after the Effective Date, the coverage under any of the D&O Policies in effect on the Petition Date shall not be terminated or otherwise reduced by or on behalf of the Debtors, and all directors and officers of the Debtors at any time shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and/or officers remain in such positions after the Effective Date.

6.11    *Withholding and Reporting Requirements.*

(a)    *Withholding Rights.* In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, provincial or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall be liable for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)    *Forms.* Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Liquidation Trustee or such other Person designated by the Liquidation Trustee (which entity shall subsequently deliver to the Liquidation Trustee any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8 or any other form or document as reasonably requested by the Liquidation Trustee or such other Person designated by it to eliminate or reduce any tax (including withholding tax), unless the Liquidation Trustee or such other Person designated by it determines it is not required to eliminate or reduce any tax (including withholding tax). If such request is made by the Liquidation Trustee or such other Person designated by the Liquidation Trustee and the holder fails to comply before the date that is 150 days after the request is made, the amount of such distribution shall irrevocably revert to the Liquidation Trust, and any Claim in respect of such Distribution shall be forever barred from assertion against any Debtor and its respective property.

6.12    *Exemption From Certain Transfer Taxes.*

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by any Debtor, or any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (ii) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code or similar filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate federal, state, provincial or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.13   *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Liquidation Trustee and the Debtors are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

6.14   *Preservation of Rights of Action.*

Other than Causes of Action against an Entity that are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtors reserve any and all Causes of Action. On and after the Effective Date, the Liquidation Trustee shall have sole and exclusive discretion to pursue and dispose of any Causes of Action that are or become Liquidation Trust Assets, and the Liquidation Trustee shall have sole and exclusive discretion to pursue or dispose of any and all other Causes of Action. All Causes of Action that are or become Liquidation Trust Assets shall vest in the Liquidation Trust as provided for herein and the Liquidation Trustee may pursue any Causes of Action that are or become Liquidation Trust Assets in its sole discretion. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, and on and after the Effective Date, the Liquidation Trustee, will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Prior to the Effective Date, the Debtors (and on and after the Effective Date, the Liquidation Trustee) shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party (except for, on and after the Effective Date, the Liquidation Trustee) or further notice to or action, order, or approval of the Bankruptcy Court.

6.15   *Stock Restrictions.*

The restrictions imposed by the *Order Establishing Notice and Hearing Procedures for Trading In, or Certain Claims of Worthlessness with Respect to, Equity Securities in Debtors Clovis Oncology, Inc., et al,* entered on January 24, 2023 [D.I. 260], as the same may be amended from time to time, shall remain effective and binding through the closing of all of the Chapter 11 Cases.

6.16     *Closing of the Chapter 11 Cases.*

The Liquidation Trustee shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules

6.17     *Cancellation of Existing Securities and Agreements; Release and Discharge of Notes Trustee.*

On the Effective Date, notwithstanding anything to the contrary in the Plan, all of the Unsecured Notes, the Notes Indentures, and any other document, agreement, or instrument evidencing any Claim or Interest, shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtors under the Unsecured Notes, the Notes Indentures, or other such documents, agreements, or instruments evidencing such Claims and Interests, as the case may be, shall be deemed extinguished, and the Notes Trustees, and their respective agents, successors and assigns shall each be automatically and fully released and discharged of and from all duties to the holders of Unsecured Notes and Unsecured Notes Claims under the relevant Notes Indentures; provided, that, the provisions of each Notes Indenture or agreement that governs the rights of the Holder of a Claim or Interest shall continue in full force and effect solely to the extent necessary to (i) allow holders of Unsecured Notes Claims or other such Claims or Interests to receive distributions under the Plan (and all distribution provisions in any such agreement shall terminate completely upon completion of all such distributions); (ii) allow holders of Unsecured Notes Claims to retain their respective rights and obligations vis-à-vis other holders of Unsecured Notes Claims; (iii) preserve all rights, protections, and powers of the Notes Trustee as against the holders of Unsecured Notes Claims under the Notes Indentures; (iv) allow the Notes Trustee to enforce any obligations owed to it individually under the Plan; (v) preserve the Notes Trustee's rights to compensation and indemnification under the Notes Indentures, as against any money or property distributable to holders of Unsecured Notes Claims, including permitting the Notes Trustee to maintain, enforce, and exercise a Notes Trustee Charging Lien against such distributions; and (vi) preserve all rights of the Notes Trustee against holders of Unsecured Notes Claims pursuant and subject to the relevant Notes Indentures.  For the avoidance of doubt, (a) the applicable Notes Trustee Charging Lien shall attach to distributions made by the Debtors or the Liquidation Trustee to holders of Unsecured Notes pursuant to the Plan or Liquidation Trust Agreement, as applicable, in the same manner as if such distributions were made through the Notes Trustee, and (b) the Notes Trustee shall have no obligation to make distributions, allocations, and/or issuances required under the Plan to holders of Unsecured Notes or Unsecured Notes Claims or otherwise.

## SECTION 7.     DISTRIBUTIONS.

7.1     *Distribution Record Date.*

The Debtors and the Liquidation Trustee shall have no obligation to recognize any transfer of the Claims or Interests (i) occurring on or after the Effective Date, or (ii) that does not comply with Bankruptcy Rule 3001(e) or otherwise does not comply with the Bankruptcy Code or Bankruptcy Rules.

7.2   *Date of Distributions.*

Except as otherwise provided herein, the Debtors or the Liquidation Trustee, as applicable, shall direct the Initial Distribution to holders of Allowed Claims no later than the Initial Distribution Date. After the Initial Distribution Date, the Liquidation Trustee shall, from time to time, determine the subsequent Distribution Dates.

7.3   *Delivery of Distributions.*

The Disbursing Agent shall make all distributions, allocations, and/or issuances required under the Plan.  In the event that any Distribution to any holder is returned as undeliverable, no Distribution to such holder shall be made unless and until the Debtors or the Liquidation Trustee, as applicable, has determined the then current address of such holder, at which time such Distribution shall be made to such holder without interest; provided, however, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date such Distribution was made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidation Trust automatically and without need for a further order by the Bankruptcy Court for Distribution in accordance with the Plan and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred.

7.4   *Manner of Payment Under Plan.*

At the option of the Debtors or the Liquidation Trustee, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer. Any wire transfer fees incurred by the Debtors or the Liquidation Trust (as applicable) in connection with the transmission of a wire transfer shall be deducted from the amount of the recipient holder's Allowed Claim. The wire transfer fee will be deducted from the amount of the Distribution a holder of an Allowed Claim would otherwise receive. The Debtors or the Liquidation Trustee, as applicable, will, to the extent practicable, make aggregate Distributions on account of all the Allowed Claims held by a particular holder.

7.5   *Minimum Cash Distributions.*

The Debtors and the Liquidation Trust shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash less than $100; provided, however, that if any Distribution is not made pursuant to this Section 7.5, such Distribution shall be added to any subsequent Distribution to be made on behalf of the holder's Allowed Claim. The Debtors and the Liquidation Trust shall not be required to make any final Distributions of Cash less than $50 to any holder of an Allowed Claim.

7.6   *Setoffs.*

The Debtors or the Liquidation Trustee may, but shall not be required to, set off against any Claim, any Claims of any nature whatsoever that the Debtors or the Liquidation Trustee have against the holder of such Claim; provided that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Liquidation Trustee

of any such Claim the Debtors or the Liquidation Trustee may have against the holder of such Claim.

### 7.7 *Distributions After Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

### 7.8 *Allocation of Distributions Between Principal and Interest.*

Except as otherwise provided in this Plan, to the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

### 7.9 *No Postpetition Interest on Claims.*

Except as otherwise provided in the Plan, the Confirmation Order, or another order of the Bankruptcy Court, or required by the Bankruptcy Code, postpetition interest shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date.

### 7.10 *No Distribution in Excess of Amount of Allowed Claim.*

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim.

### 7.11 *Securities Registration Exemption.*

The Debtors intend that the Liquidation Trust Beneficial Interests shall not be "securities" under applicable laws and believe the Liquidation Trust Beneficial Interests should not be deemed to be "securities," but to the extent such units are deemed to be "securities," the Debtors believe the issuance of such units under the Plan is exempt, pursuant to section 1145 of the Bankruptcy Code (except with respect to an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

### 7.12 *Distributions to Holders of Allowed Unsecured Notes Claims.*

All distributions to the holders of Allowed Unsecured Notes Claims shall be made by the Disbursing Agent directly to the holders of such Allowed Unsecured Notes Claims; provided, that, to the extent there are any outstanding Notes Trustee Fees on the date of any such distribution, any amounts that would otherwise have been distributed to holders of Allowed Unsecured Notes Claims shall be paid to the Notes Trustee to satisfy the outstanding Notes Trustee Fees and, after all outstanding Notes Trustee Fees are satisfied, any remaining amounts shall be distributed to the holders of such Allowed Unsecured Notes Claims on a ratable basis.

**SECTION 8.        PROCEDURES FOR DISPUTED CLAIMS.**

8.1     *Objections to Claims.*

As of the Effective Date, objections to, and requests for estimation of Claims against the Debtors may only be interposed and prosecuted by the Liquidation Trustee. Such objections and requests for estimation shall be served and filed on or before the Claims Objection Bar Date.

8.2     *Allowance of Claims.*

After the Effective Date, the Liquidation Trust shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim against a Debtor, except with respect to any Claim deemed Allowed under this Plan. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

8.3     *Estimation of Claims.*

The Debtors (after consulting with the Creditors' Committee and the Required DIP Lenders if prior to the Effective Date) or the Liquidation Trustee, as applicable, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim, pursuant to section 502(c) of the Bankruptcy Code regardless of whether any party in interest previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or the maximum limit of such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidation Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

8.4     *No Distributions Pending Allowance.*

No payment or Distribution provided under the Plan shall be made on account of a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.5     *Resolution of Claims.*

Except as otherwise provided herein (including the release provisions hereof) or in the Confirmation Order, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, on and after the Effective Date, the Liquidation Trustee may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the

Liquidation Trust may hold against any Person, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. From and after the Effective Date, the Liquidation Trustee may settle or compromise any Disputed Claim without the prior consent of the Required DIP Lenders and without approval of the Bankruptcy Court; provided that any settlement of a Disputed Claim that results in an Allowed Claim in excess of $1,000,000 must be made after notice and an opportunity for parties-in-interest to object.

8.6     *Amendments to Claims and Late Filed Claims.*

Following the Effective Date, except as otherwise provided in this Plan, the Confirmation Order, or the Liquidation Trust Agreement, no Claim may be filed, amended, or supplemented without the approval of the Bankruptcy Court or without the prior written authorization of the Liquidation Trustee.

8.7     *Insured Claims.*

If any portion of an Allowed Claim is an Insured Claim, no distributions under the Plan shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies. To the extent that the Debtors' insurers agree to satisfy a Claim in whole or in part, then immediately upon such agreement, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order or approval of the Court.

## SECTION 9.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

9.1     *Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned (including any Executory Contract or Unexpired Lease assumed and assigned in connection with an Asset Sale) shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) as of the Effective Date is subject to a pending motion to assume such Unexpired Lease or Executory Contract; (ii) is a contract, release, or other agreement or document entered into in connection with the Plan; (iii) is a D&O Policy or an insurance policy; or (iv) is identified for assumption on the Assumption Schedule included in the Plan Supplement.

9.2     *Claims Based on Rejection of Executory Contracts and Unexpired Leases.*

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be filed with Bankruptcy Court and served on the Liquidation Trustee no later than thirty (30) days after the earlier of (i) notice of entry of an order approving the rejection of such Executory Contract or Unexpired Lease; and (ii) notice of occurrence of the Effective Date.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be forever barred from assertion, and shall not be enforceable against the Debtors, the Liquidation Trust, the**

**Debtors' Estates, or the property for any of the foregoing, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

  9.3  *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

  Any Cure Obligation due under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in Cash on the Effective Date (or as soon as reasonably practicable thereafter), subject to the limitation described below, by the Debtors or the Liquidation Trust, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

  In the event of a dispute regarding (i) the amount of the Cure Obligation, (ii) the ability of the Liquidation Trust or any other applicable assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease, or (iii) any other matter pertaining to assumption or assumption and assignment (as applicable), the obligations of section 365 of the Bankruptcy Code shall be deemed satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption or assumption and assignment (as applicable); <u>provided</u>, that the Debtors or the Liquidation Trust (as applicable) may settle any dispute regarding the amount of any Cure Obligation without any further notice to any party or any action, order, or approval of the Bankruptcy Court (provided that any settlement that results in Cure Obligation in excess of $1,000,000 must made be after notice and an opportunity for parties-in-interest to object); <u>provided further</u> that, prior to the Effective Date, the Debtors shall provide notice to the Creditors' Committee and the DIP Lenders (until DIP Facility Claims are paid in full) of the settlement of any dispute regarding the amount of any Cure Obligation and an opportunity to object.

  Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any defaults, subject to satisfaction of the Cure Obligations, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the Effective Date of assumption and/or assignment. Any prepetition default amount set forth in the Schedules and/or any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

  9.4  *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

  Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other

agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

9.5    *Reservation of Rights.*

Neither the exclusion nor inclusion of any contract or lease in the Assumption Schedule or the Sale Order, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors' Estates have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Liquidation Trustee, as applicable, shall have sixty 60 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

## SECTION 10.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.

10.1    *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall not be subject to any stay, modification, vacation on appeal, and shall have become a Final Order;

(b)    all funding, actions, documents and agreements necessary to implement and consummate the Plan and the transactions and other matters contemplated thereby, shall have been effected or executed, including the funding of the Wind-Down Reserve; and

(c)    the FAP Sale Transaction shall have been consummated in accordance with the relevant acquisition agreement and Sale Order;

(d)    the Liquidation Trust shall be established and validly existing and the Liquidation Trust Agreement shall have been executed;

(e)    all professional fees and expenses of the Debtors, the Creditors' Committee, and the DIP Lenders that, as of the Effective Date, were due and payable under an order of the Bankruptcy Court shall have been paid in full, other than any Fee Claims subject to approval by the Bankruptcy Court; *provided, however*, that any Fee Claims of the professionals

retained by the Creditors' Committee shall be paid in accordance with the DIP Budget (as defined in the Final DIP Order);

(f)     the Debtors shall have funded the Professional Fees Account in accordance with Section 2.2 herein;

(g)     the Debtors shall have sufficient Cash on hand to pay in full, or reserve for, the projected Allowed Administrative Expense Claims, Allowed Fee Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims and U.S. Trustee Fees;

(h)     no governmental entity or federal or state court of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any law or order (whether temporary, preliminary or permanent), in any case which is in effect and which prevents or prohibits consummation of the Plan or any of the other transactions contemplated hereby and no governmental entity shall have instituted any action or proceeding (which remains pending at what would otherwise be the Effective Date) seeking to enjoin, restrain or otherwise prohibit consummation of the transactions contemplated by the Plan;

(i)     all authorizations, consents, regulatory approvals, rulings or documents that are necessary to implement and effectuate the Plan as of the Effective Date shall have been received, waived or otherwise resolved; and

(j)     all documents and agreements necessary to implement the Plan, including those set forth in the Plan Supplement, shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

10.2    *Waiver of Conditions Precedent.*

Each of the conditions precedent in <u>Section 10.1</u> other than the condition set forth in <u>Section 10.1(a)</u> may be waived in writing by the Debtors with the consent of the Creditors' Committee and the Required DIP Lenders, which shall not be unreasonably withheld. Any such waivers may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

10.3    *Substantial Consummation.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

10.4    *Effect of Vacatur of Confirmation Order.*

If the Confirmation Order is vacated, (i) no distributions under the Plan shall be made, (ii) the Debtors and all holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) all the Debtors' obligations with respect to the Claims and the Interests shall

remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors or otherwise.

## SECTION 11.   SETTLEMENT, RELEASES, INJUNCTIONS, AND RELATED PROVISIONS.

### 11.1   *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Debtors.

### 11.2   *Binding Effect.*

(a)   Confirmation of the Plan does not provide the Debtors with a discharge under section 1141 of the Bankruptcy Code because the Plan is a liquidating chapter 11 plan. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtors, and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

(b)   By participating in the Plan by voting (as contemplated in <u>Section 4</u> above) or by accepting Distributions pursuant to the Plan (in whatever sum), each holder of an Allowed Claim or Interest extinguished, or released pursuant to the Plan shall be deemed to have affirmatively and specifically consented to and accepted the terms of the Plan, and each such holder acknowledges and accepts that the Plan is a binding compromise of an Allowed Claim or an Interest extinguished and releases all rights in respect of such Allowed Claim or Interest extinguished such that such holders of Claims agree to waive any right (if any) to object to or otherwise challenge the Plan and its effect on Claims or any other matter whatsoever.

### 11.3   *Term of Injunctions or Stays.*

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### 11.4   *Releases by the Debtors.*

**As of the Effective Date, except (i) for the rights that remain in effect from and after the Effective Date to enforce the Plan or the Sale Transaction; and (ii) as otherwise provided in the Plan or in the Confirmation Order, for good and valuable consideration, including their cooperation and contributions to the Chapter 11 Cases, the Released Parties**

will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Debtors and the Estates (including the Wind-Down Estates), in each case, on behalf of themselves and their respective successors (including the Liquidation Trust), assigns, and representatives, and any and all other persons that may purport to assert any Cause of Action derivatively, by, through or on behalf of the foregoing Persons and Entities, from any and all Claims and Causes of Action, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, in whole or in part, the Debtors, the Chapter 11 Cases, the pre- and post-petition marketing and sale process, the Sale Transactions, the DIP Financing Agreement or any related agreements, instruments, and other documents relating thereto, the Prepetition Financing Agreement or any related agreements, instruments, and other documents relating thereto, the Unsecured Notes or any related agreements, instruments, and other documents relating thereto, the purchase, sale, or rescission of the purchase or sale of any securities issued by the Debtors, the ownership of any securities issued by the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the administration or implementation of the Plan, including the issuance or distribution of the Liquidation Trust Assets pursuant to the Plan, the creation of the Liquidation Trust, the business or contractual arrangements between any Debtor and any Released Party, the Disclosure Statement, the Plan (including the Plan Supplement), or the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary to the foregoing, the release set forth above does not release any post-Effective Date obligations of any Person under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Sale Transactions. Moreover, the foregoing release shall have no effect on the liability of, or any Causes of Action against, any Entity that results from any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, criminal acts, or gross negligence.

11.5     *Releases By Holders of Claims and Interests.*

As of the Effective Date, except (i) for the right to enforce the Plan and the Sale Transactions, and (ii) as otherwise expressly provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably and forever released by the Releasing Parties in each case, from any and all Claims and Causes of Action, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, in law or equity, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right,

duty, requirement or otherwise, that such entity would have been legally entitled to assert in their own right (whether individually, derivatively, or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising prior to the Effective Date, from, in whole or in part, the Debtors, the Chapter 11 Cases, the pre-and post-petition marketing and sale process, the Sale Transactions, the DIP Financing Agreement or any related agreements, instruments, and other documents relating thereto, the Prepetition Financing Agreement or any related agreements, instruments, and other documents relating thereto, the Unsecured Notes or any related agreements, instruments, and other documents relating thereto, the purchase, sale, or rescission of the purchase or sale of any securities issued by the Debtors, the ownership of any securities issued by the Debtors, the subject matter of, or the transactions or events giving rise to,  any Claim or Interest that is treated in the Plan, the administration or implementation of the Plan, including the issuance or distribution of the Liquidation Trust Assets pursuant to the Plan, the creation of the Liquidation Trust, the business or contractual arrangements between any Debtor and any Released Party, the Disclosure Statement, the Plan (including any Plan Supplement), or the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary to the foregoing, the release set forth above does not release any post-Effective Date obligations of any Person under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Moreover, the foregoing release shall have no effect on the liability of, or any Causes of Action against, any Entity that results from any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, criminal acts, or gross negligence.

11.6    *Exculpation.*

To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each of the Exculpated Parties are hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim arising on or after the Petition Date in connection with or arising out of the filing or administration of the Chapter 11 Cases, the postpetition marketing and sale process, the postpetition purchase, sale, or rescission of the purchase or sale of any security or asset of the Debtors; the negotiation and pursuit of the Disclosure Statement, the Sale Transactions, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the DIP Financing Agreement; the post-Effective Date administration of the Plan or the property to be distributed under the Plan (including Liquidation Trust Assets); the creation of the Liquidation Trust; or the transactions in furtherance of any of the foregoing; except for actual fraud, gross negligence, criminal acts or willful misconduct, as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth herein does not release any post-Effective Date obligation or liability of any Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

11.7    *Injunction.*

(a)    **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan in relation to any Claim extinguished, or released pursuant to the Plan.**

(b)    **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether or not proof of such Claims or Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Liquidation Trust, or the property of any of the Debtors or the Liquidation Trust; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, and the Liquidation Trust; or the property of any of the Debtors or the Liquidation Trust; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or the Liquidation Trust, or the property of any of the Debtors or the Liquidation Trust; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors or the Liquidation Trust, or against property or interests in property of any of the Debtors or the Liquidation Trust except as contemplated or allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

(c)    **By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, or released pursuant to the Plan shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this <u>Section 11.7</u>.**

(d)    **The injunctions in this <u>Section 11.7</u> shall extend to any successors of the Debtors, the Liquidation Trust, and their respective property and interests in property.**

**SECTION 12.    RETENTION OF JURISDICTION.**

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)    to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation or payment of Claims resulting therefrom;

(b)    to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date, including any such motions, adversary proceeding, application, contested matter or other litigated matter brought by the Liquidation Trustee;

(c)    to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)    to consider Claims or the allowance, classification, priority, compromise, estimation or payment of or objection to any Claim;

(e)    to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(f)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the Consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)    to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)    to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date;

(i)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the Sale Orders, the Liquidation Trust Agreement, the CVR Agreement or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)    to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following Consummation;

(k)    to hear any disputes arising out of, and to enforce, any order approving alternative dispute resolution procedures to resolve personal injury, employment litigation and similar Claims pursuant to section 105(a) of the Bankruptcy Code;

(l)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)      to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(o)      to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)      to enter one or more final decrees closing the Chapter 11 Cases;

(q)      to enforce all orders previously entered by the Bankruptcy Court;

(r)      to recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(s)      to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory; and

(t)      any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, the Sale Orders or any contract, instrument, release, indenture, or other agreement or document created in connection therewith.

## SECTION 13.      MISCELLANEOUS PROVISIONS.

13.1    *No Revesting of Assets.*

To the extent not otherwise distributed in accordance with this Plan, the property of the Debtors' Estates shall not revest in the Debtors on or after the Effective Date but shall instead vest in the Liquidation Trust, to be administered by the Liquidation Trustee in accordance with this Plan and the Liquidation Trust Agreement.

13.2    *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right for the Liquidation Trustee to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

13.3    *Payment of Statutory Fees.*

All fees due and payable pursuant to 28 U.S.C. § 1930(a) prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date or as soon as is reasonably practicable thereafter. On and after the Effective Date, the Debtors (or the Liquidation Trustee) shall pay any and all such fees in full in Cash when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor (or the Liquidation Trustee) shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

13.4    *Dissolution of Creditors' Committee.*

On the Effective Date, the Creditors' Committee shall dissolve, and the members thereof and the professionals retained by the Creditors' Committee or the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; provided, however, that after the Effective Date, the Creditors' Committee shall continue to exist and have standing and a right to be heard for the following limited purposes: (a) applications, and any relief related thereto, for payment of Fee Claims and requests for allowance of Administrative Expense Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; and (b) any appeals of the Confirmation Order or other appeal to which the Creditors' Committee is a party.

13.5    *Amendments.*

(a)    *Plan Modifications*. The Plan may be amended, modified or supplemented by the Debtors, with the consent of the Required DIP Lenders and the Creditors' Committee (not to be unreasonably withheld) prior to the Effective Date, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, the Debtors may, after consulting with the Required DIP Lenders and the Creditors' Committee, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b)    O*ther Amendments*. Before the Effective Date, the Debtors may, with the consent of the Required DIP Lenders and the Creditors' Committee (not to be unreasonably withheld), make appropriate technical adjustments and modifications to the Plan and any of the documents prepared in connection herewith without further order or approval of the Bankruptcy Court.

13.6    *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right, with the consent of the Required DIP Lenders (not to be unreasonably withheld) and after consulting with the Creditors' Committee, to revoke or withdraw the Plan, including the right to revoke or withdraw the Plan for any Debtor or all Debtors, prior to the Confirmation Date. If the Debtors, with the consent of the Required DIP Lenders and after consulting with the Creditors' Committee, revoke or withdraw the Plan, or if Confirmation or

Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (ii) nothing contained in the Plan shall: (A) constitute a waiver or release of any Claims or Interests; (B) prejudice in any manner the rights of the Debtors, the Debtors' Estates, or any other Entity; or (C) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.

### 13.7    *Severability of Plan Provisions Upon Confirmation.*

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, with the consent of the Required DIP Lenders (not to be unreasonably withheld) and after consulting with the Creditors' Committee, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Liquidation Trustee (as the case may be); and (iii) nonseverable and mutually dependent.

### 13.8    *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

### 13.9    *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 13.10   *Additional Documents.*

On or before the Effective Date, the Debtors may, after consulting with the Required DIP Lenders and the Creditors' Committee, file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver

any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.11   *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Releasing Parties, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns, including, without limitation, the Liquidation Trustee.

13.12   *Successor and Assigns.*

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

13.13   *Entire Agreement.*

On the Effective Date, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

13.14   *Notices.*

All notices, requests and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(a)      <u>if to the Debtors</u>:

**Clovis Oncology, Inc.**
c/o Kroll Restructuring Administration LLC
850 Third Avenue
Suite 412
Brooklyn, NY 11232
Telephone:  (877) 635-8928 (domestic) or (929) 203-3305 (international)

-and-

**Willkie Farr & Gallagher LLP**
767 Seventh Avenue
New York, NY 10023
Attention:      Rachel C. Strickland
Andrew S. Mordkoff

Erin C. Ryan
Telephone:   212-728-8000
Facsimile:   212-212-8100

-and-

**Morris Nichols Arsht & Tunnell LLP**
1201 North Market Street
Wilmington, DE 19899-1347
Attention:   Robert J. Dehney
Andrew R. Remming
Matthew O. Talmo
Telephone:   302-658-9200
Facsimile:   302-658-3989

(b)   if to the Creditors' Committee:

**Morrison & Foerster LLP**
250 West 55th Street
New York, NY 10019
Attention:   Lorenzo Marinuzzi
Theresa Foudy
Benjamin Butterfield
Telephone:   212-468-8000
Facsimile:   212-468-7900

-and-

**Potter Anderson & Carroon LLP**
1313 North Market Street, 6th Floor
Wilmington, DE 19801
Attention:   Christopher M. Samis
L. Katherine Good
Aaron H. Stulman
Elizabeth R. Schlecker
Telephone:   302-984-6000
Facsimile:   302-658-1192

(c)   if to the DIP Lenders:

**Weil, Gotshal & Manges LLP**
767 5th Avenue
New York, NY 10153
Attention:   Jeffrey D. Saferstein
Lauren Tauro
Telephone:   212-310-8000
Facsimile:   212-310-8007

After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidation Trust is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

Dated: March 14, 2023
　　　　Boulder, Colorado

　　　　　　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　By: */s/ Paul E. Gross*　　　　　　　　　　
　　　　　　　　　　　　　　　　　　Name: Paul E. Gross
　　　　　　　　　　　　　　　　　　Title: Executive Vice President and General
　　　　　　　　　　　　　　　　　　　　　Counsel