# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CLOVIS ONCOLOGY, INC., *et al.*,[1]<br><br>              Debtors. | Chapter 11<br><br>Case No. 22-11292 (JKS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 31, 33, 35, 257, 322, 363, 435, 437, 539, 546** |

## DECLARATION OF ALEXANDER SVOYSKIY IN SUPPORT OF ORDER APPROVING SALE OF THE RUBRACA ASSETS TO THE SUCCESSFUL BIDDER

I, Alexander Svoyskiy, hereby declare under penalty of perjury:

1.  I am a Managing Director at Perella Weinberg Partners LP (together with its corporate advisory affiliates, "PWP"), which has its principal office at 767 Fifth Avenue, New York, New York 10153. PWP is part of a global financial services firm that provides corporate advisory and asset management services. PWP is serving as investment banker to the above-captioned debtors and debtors in possession (collectively, the "Debtors") and has been engaged in such capacity since October 21, 2022.

2.  I am duly authorized to submit this declaration (this "Declaration") on behalf of the Debtors and in support of the Debtors' motion to sell all, substantially all, or a portion of their assets [D.I. 31] (the "Motion")[2]. In particular, I submit this Declaration in support of (a) the sale of the Rubraca Assets (as defined below) to the Successful Bidder, in accordance with the terms

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, to the extent applicable, are Clovis Oncology, Inc. (5355), Clovis Oncology UK Limited, and Clovis Oncology Ireland Limited. The Debtors' headquarters is located at 5500 Flatiron Parkway, Suite 110, Boulder, CO 80301.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the Bidding Procedures Order [D.I. 257], or the Sale Order (as defined herein), as applicable.

and conditions contained in that certain *Asset Purchase Agreement*, dated as of March 31, 2023 (including the exhibits and schedules thereto, the "Asset Purchase Agreement"), by and among Debtor Clovis Oncology, Inc. and pharma& Schweiz GmbH ("pharma&" or the "Purchaser") and (b) approval of the proposed *Order with Respect to the Debtors' Rubraca Assets (I) Authorizing and Approving the Sale of the Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts in Connection Therewith; and (III) Granting Related Relief* (the "Sale Order") [D.I. 546].

3. Unless otherwise indicated, all facts set forth in this Declaration are based on (a) my personal knowledge or information that I have received from employees of PWP working directly with me or under my supervision, direction, or control, (b) information learned from my review of relevant financial and operational data regarding the Debtors, (c) information received from members of the Debtors' management or other advisors, and (d) my past experience advising both distressed and non-distressed businesses and companies and their stakeholders.

4. I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtors. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am not being specifically compensated for this testimony other than through payments received by PWP, as a professional retained by the Debtors.

**Professional Background and Qualifications**

5. PWP and its professionals have extensive experience working with financially troubled companies across a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases. Major in-court restructurings in which PWP has been involved include: *In re Ector County Energy Center, LLC*, No. 22-10320 (Bankr. D. Del.); *In re Garrett*

*Motion Inc.*, Case No. 20-12212 (MEW) (Bankr. S.D.N.Y.); *In re California Resources Corporation*, Case No. 20-33568 (DRJ) (Bankr. S.D. Tex.); *In re The Commonwealth of Puerto Rico*, Case No. 17-3283 (LTS) (Bankr. D.P.R.); *In re Bristow Group, Inc.*, Case No. 19-32713 (DRJ) (Bankr. S.D. Tex.); *In re Halcón Resources Corporation*, Case No. 19-34446 (DRJ) (Bankr. S.D. Tex.); *In re CARBO Ceramics Inc.*, Case No. 20-31973 (MI) (Bankr. S.D. Tex.); *In re Hartshorne Holdings, LLC*, Case No. 20-40133 (Bankr, W.D. Ky.); *In re Alta Mesa Resources, Inc.*, Case No. 19-35133 (MI) (Bankr. S.D. Tex.); *In re Approach Resources Inc.*, Case No. 19-36444 (MI) (Bankr. S.D. Tex.); *In re Legacy Reserves Inc.*, Case No. 19-33395 (MI) (Bankr. S.D. Tex.); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y.); *In re PG&E Corporation and Pacific Gas and Electric Company*, Case No. 19-30088 (DM) (Bankr. N.D. Cal.); *In re iHeartMedia, Inc.*, Case No. 18-31274 (MI) (Bankr. S.D. Tex.); *In re Gastar Exploration Inc.*, Case No. 18-36057 (MI) (Bankr. S.D. Tex.); *In re Hexion Holdings LLC*, Case No. 19-10684 (Bankr. D. Del.); *In re R.E. Gas Dev., LLC*, Case No. 18-22032 (Bankr. W.D. Pa.); *In re EV Energy Partners, LP*, Case No. 18-10814 (CSS) (Bankr. D. Del.); *In re Fieldwood Energy LLC*, Case No. 18-30648 (Bankr. S.D. Tex.); *In re Memorial Production Partners LP*, Case No. 17-30262 (MI) (Bankr. S.D. Tex.); *In re Pacific Drilling S.A.*, Case No. 17- 13193 (Bankr. S.D.N.Y.); *In re Seadrill Limited*, Case No. 17-60079 (Bankr. S.D. Tex.); *In re Ocean Rig UDW Inc.*, Case No. 17-10736 (Bankr. S.D.N.Y.); *In re Bonanza Creek Energy, Inc.*, Case No. 17-10015 (Bankr. D. Del); *In re Breitburn Energy Partners LP*, Case No. 16-11390 (Bankr. S.D.N.Y.); *In re Chaparral Energy, Inc.*, Case No. 16-11144 (Bankr. D. Del.); *In re Stone Energy Corp.*, Case No. 16-36390 (Bankr. S.D. Tex.); *In re Atlas Resource Partners, L.P.*, Case No. 16-12149 (Bankr. S.D.N.Y); *In re Pac. Sunwear of California*, Case No. 16-10882 (Bankr. D. Del.); *In re Energy Future Holdings Corp.*, Case No. 14-10979 (Bankr. D. Del.); *In re ATD Corporation*, Case No.

18-12221 (Bankr. D. Del.); *In re Remington Outdoor Company, Inc.*, Case No. 18-10684 (Bankr. D. Del); *In re Hermitage Offshore Services Ltd.*, Case No. 20-11850 (Bankr. S.D.N.Y.); *In re Sears Holdings Corporation*, Case No. 18-23538 (Bankr. S.D.N.Y.); and *In re EB Holdings II, Inc.*, Case No. 19-16364 (Bankr. D. Nev.), among others.  PWP's professionals have also provided services in connection with the out-of-court restructurings of numerous companies, including Algeco Group; Blackhawk Mining; Danaos Corporation; International Automotive Components Group; Del Monte; Jack Cooper; Key Energy Services; Medical Depot Holdings; Pernix Therapeutics; Proserv; Salt Creek Midstream; Savers; SM Energy Company; Sprint Industrial Holdings; Titan Energy; Concordia International Corp.; and WeWork Companies.

6. I received a Bachelor of Science degree in Finance from the Stern School of Business at New York University.  I have more than twenty years of experience in investment banking advisory, over fifteen of which have been spent providing restructuring advice to companies, creditors, sponsors, and other interested parties on restructuring transactions, both in chapter 11 proceedings and out-of-court.  Since joining PWP in 2015, my restructuring and financial advisory engagements have included, among others, representations of debtors and creditors in the following chapter 11 cases: *In re Ector County Energy Center, LLC*, No. 22-10320 (Bankr. D. Del.); *In re Garrett Motion Inc.*, Case No. 20-12212 (MEW) (Bankr. S.D.N.Y.); *In re The Commonwealth of Puerto Rico*, Case No. 17-3283 (LTS) (Bankr. D.P.R.); *In re Approach Resources Inc., et al.*, No. 19-36444 (Bankr. S.D. Tex.); *In re Fieldwood Energy LLC*, No. 18-30648 (Bankr. S.D. Tex.); *In re EB Holdings II, Inc.*, Case No. 19-16364 (Bankr. D. Nev.); *In re Memorial Production Partners LP*, No. 17-30262 (Bankr. S.D. Tex.); *In re Pacific Drilling S.A.*, No. 17-13193 (Bankr. S.D.N.Y.); *In re ESML Holdings Inc. et. al.*, No. 16-11626 (Bankr. D. Del.); and *In re Atlas Resource Partners, L.P.*, No. 16-12149 (Bankr. S.D.N.Y.).

7.      PWP has overseen a broad and thorough marketing, sale, and auction process for the Rubraca Assets, which resulted in the Asset Purchase Agreement.  As discussed further below, I believe that the Asset Purchase Agreement represents the highest or otherwise best offer for the Rubraca Assets, and I believe that the Court should approve the sale of the Rubraca Assets as contemplated by the Asset Purchase Agreement.

### Marketing Efforts for the Rubraca Assets

8.      The Debtors and their advisors engaged in a robust prepetition marketing and sale process beginning in or around January 2022 to sell the Debtors' non-core assets outside the United States and to find a strategic partner for their pipeline clinical candidate.  This process was expanded in August 2022 to a wider targeted marketing process, focused on potential M&A partners for all of the Debtors' assets and well-funded bidders for which the Debtors' business represented a strategic opportunity and that possessed the capability of consummating a transaction on an accelerated timeline.  Since its retention in October 2022, PWP has led this marketing and sale process, including with respect to the Debtors' efforts to sell their global rights to commercialize their only marketed product, Rubraca® (rucaparib) and all salts, polymorphs and formulations thereof (the "Rubraca Assets").

9.      Prior to the Petition Date, the Debtors engaged in extensive negotiations with respect to a potential sale of the Debtors' rights to commercialize Rubraca in Europe.  However, despite months of diligence and negotiations with a potential bidder, a bid for the Rubraca Assets never materialized.

10.     In an effort to achieve the highest or otherwise best bid for the Rubraca Assets, the Debtors and PWP continued to market the Rubraca Assets on a postpetition basis in accordance with the Bidding Procedures Order and the Bidding Procedures. Beginning in October 2022, PWP contacted 76 prospective buyers for the Rubraca Assets, including parties that the Debtors had

engaged with prepetition, parties that had reached out to the Debtors postpetition, and certain parties identified by the Official Committee of Unsecured Creditors. Combined with the prospective buyers that were contacted prepetition, I believe that the Debtors and their advisors have solicited the most likely potential purchasers of the Rubraca Assets. The Debtors executed non-disclosure agreements with 36 prospective buyers and provided information regarding the Rubraca Assets to such parties, including through management presentations and data room access. Specifically, since March 2022, the Debtors, PWP, and the company's other advisors have provided prospective buyers with access to a virtual data room containing over 8,000 files pertaining to the Rubraca Assets, including, among other things, data from clinical studies, documents relating to regulatory matters and approvals, relevant contracts and agreements, and third-party publications relating to the Rubraca Assets (including medical journal articles). Based on my experience, I believe that potential purchasers of the Rubraca Assets were provided with all of the information and documents, as well as reasonable access to the Debtors' management team, needed to both determine an appropriate value for the Rubraca Assets and to conduct necessary due diligence in connection with submitting a bid.

11. Prior to the Bid Deadline for the Rubraca Assets on March 21, 2023, the Debtors received 11 indications of interest and five binding bids for the Rubraca Assets. The Debtors and their advisors, in consultation with the Consultation Parties, determined that three of the bids—submitted by Dr. Reddy's Laboratories, Inc. ("Dr. Reddy's"), pharma&, and Accord BioPharma, Inc., together with Intas Pharmaceuticals Ltd. ("Accord & Intas")—constituted Qualified Bids.[3]

---

[3] Prior to the Auction, the Debtors, in consultation with the Consultation Parties, determined that two of the binding bids submitted for the Rubraca Assets did not constitute Qualified Bids in accordance with the Bidding Procedures and the Bidding Procedures Order. The Prepetition Secured Parties also submitted a bid for the Rubraca Assets, which constituted a Qualified Bid in accordance with the Bidding Procedures and the Bidding Procedures Order. At the beginning of the Auction, counsel for the Prepetition Secured Parties indicated that the Prepetition Secured Parties would not submit an additional bid in excess of the Baseline Bid (as defined below).

12.     In accordance with the Bidding Procedures Order and the Bidding Procedures, the Debtors notified the Qualified Bidders and the Consultation Parties that the Auction for the Rubraca Assets would take place in person on March 30, 2023 at the New York offices of Willkie Farr & Gallagher LLP, the Debtors' outside counsel.

### Auction for the Rubraca Assets

13.     Following the Bid Deadline for the Rubraca Assets, after careful consideration of all of the Qualified Bids, the Debtors determined in their business judgment, in consultation with the Consultation Parties, to designate pharma&'s Qualified Bid as the starting bid for the Rubraca Assets (the "Baseline Bid").  The Baseline Bid submitted by pharma& (i) provided for an upfront cash payment of $60 million and the Debtors' and their advisors, in consultation with the Consultation Parties, calculated that the Baseline Bid had a total net present value of $94 million after taking into account potential milestone payments; (ii) provided for payment by pharma& of Cure Costs of up to $41 million; (iii) provided for a "hell or high water" standard for the buyer to obtain antitrust approvals; (iv) did not require any indemnity or survival of company representations; (v) did not require transition services; and (vi) contained minimal closing conditions.  The other Qualified Bidders were informed of the designation of the Baseline Bid prior to the start of the Auction.

14.     The Auction began on March 30, 2023 at 8:30 a.m. (Prevailing Eastern Time).  The Auction afforded participants the opportunity to hold breakout sessions throughout the process, with all bidding occurring in a main room.  All bids were transcribed to ensure an accurate recording of the bidding at the Auction.  Following the first round of bidding, Accord & Intas declined to submit any additional bids and withdrew from the Auction.  Following a competitive second and third round of bidding, Dr. Reddy's declined to match or submit an overbid to

pharma&'s final bid, which provided for an upfront cash payment of $70 million and which the Debtors and their advisors, in consultation with the Consultation Parties, calculated had a total net present value of $116 million after taking into account potential future milestone payments. Pharma&'s final bid includes a significantly increased total purchase price as compared to pharma&'s Baseline Bid, while maintaining or improving the favorable non-economic terms and conditions of its Baseline Bid.

15. The Debtors determined, in consultation with the Consultation Parties, that pharma&'s final bid, which the Debtors and their advisors, in consultation with the Consultation Parties, calculated had a total net present value of $116 million, represented the highest or otherwise best offer for the Rubraca Assets and therefore, constituted the Successful Bid. The Debtors also determined, in consultation with the Consultation Parties, that the final bid submitted by Dr. Reddy's, which provided for an upfront cash payment of $70 million and which the Debtors and their advisors, in consultation with the Consultation Parties, calculated had a total net present value of $107.5 million after taking into account potential milestone payments, constituted the next highest or otherwise best bid and therefore, constituted the Back-Up Bid. At the conclusion of the Auction, the Debtors announced the Successful Bid and the Back-Up Bid. The Auction concluded at approximately 9:40 p.m. (Prevailing Eastern Time)—following 13 hours of competitive bidding and culminating an approximately 14 months long marketing process for the Rubraca Assets. Following the Auction, the Debtors filed a notice announcing the Successful Bidder and the Back-Up Bidder on March 31, 2023 [D.I. 539].

16. Based on my experience, knowledge of the Debtors' marketing efforts, and the terms set forth in pharma&'s final bid, I believe that pharma&'s final bid provides greater value to the Debtors' estates as compared to the final bids submitted by the other Qualified Bidders. The

Successful Bid submitted by pharma& has a greater certainty of closing, ability to close promptly, and a higher total purchase price as compared to the other binding bids submitted prior to and at the Auction.

### Sale of the Rubraca Assets to Successful Bidder

17. I believe that the Debtors, with the assistance of PWP and their other advisors, conducted the marketing and sale process for the Rubraca Assets in a manner that afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Rubraca Assets. The Debtors and their representatives conducted the marketing and sale process, as well as the Auction, in accordance with the Bidding Procedures Order and the Bidding Procedures in all respects. All creditors, other parties in interest, and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Rubraca Assets. I believe that the terms set forth in the Asset Purchase Agreement, and the transactions contemplated thereby, represent the highest and best transaction presently available for the Rubraca Assets. No other person or entity has offered to purchase the Rubraca Assets on acceptable or more favorable terms for an amount that would provide greater economic value to the Debtors and their estates as compared to the value being provided by the Successful Bidder under the Asset Purchase Agreement. Moreover, the consideration being provided by the Purchaser under the Asset Purchase Agreement is substantial, and constitutes valuable consideration for the releases of potential successor liability claims and other relief in favor of the Purchaser.

18. I also believe that the Debtors have sound business justification for, and compelling circumstances to promptly consummate, the Sale Transaction and the other transactions contemplated by the Transaction Documents. Entry into the Transaction Documents, and the consummation of the transactions contemplated thereby, constitutes a reasonable exercise of the

Debtors' sound business judgment and is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest. Such business reasons include, but are not limited to: (a) the Asset Purchase Agreement constitutes the highest and best offer for the Rubraca Assets; (b) the Asset Purchase Agreement presents the best opportunity with respect to the Rubraca Assets to maximize the value of the Debtors' estates, is beneficial to the Debtors' estates and is in the best interests of the Debtors and their stakeholders; and (c) unless the Asset Purchase Agreement and all of the transactions contemplated by the Asset Purchase Agreement are concluded expeditiously, recoveries to creditors may be diminished. Moreover, the assumption and assignment of the Purchased Contracts to the Purchaser is a reasonable exercise of the Debtors' business judgment, and is in the best interests of the Debtors and their estates. The assumption and assignment of the Purchased Contracts also enhances the value of the Debtors' estates and in my opinion, does not constitute unfair discrimination.

19. It is my understanding that the Debtors have (a) full corporate power and authority to execute and deliver the Asset Purchase Agreement and the Transaction Documents, (b) all corporate authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents, and (c) taken all corporate action and formalities necessary to authorize and approve the Asset Purchase Agreement, any other Transaction Documents, and the consummation of the transactions contemplated thereby. I understand that the Sale Transaction has been duly and validly authorized by all necessary corporate action. No consents or approvals other than those expressly provided for in the Asset Purchase Agreement are required for the Debtors to consummate the Sale Transaction, the Asset Purchase Agreement, or the other Transaction Documents.

20. The Rubraca Assets constitute property of the Debtors and good title is vested in the Debtors within the meaning of section 541(a) of the Bankruptcy Code. The Debtors are the sole and rightful owners of the Rubraca Assets, and no other person has any ownership right, title, or interests therein. It is my understanding that the Purchaser's continued ownership and operation of the Rubraca Assets following the closing of the sale does not constitute a continuation of the Debtors or their respective estates. Moreover, I understand that the Sale Transaction does not amount to a consolidation, merger, or *de facto* merger of the Purchaser and the Debtors.

21. I believe that the Purchaser and its advisors have acted in good faith at all times in connection with the Asset Purchase Agreement and the contemplated sale of the Rubraca Assets. Specifically, I understand that: (a) the Purchaser recognized that the Debtors were free to deal with any other party interested in purchasing the Rubraca Assets; (b) the Purchaser complied in all respects with the provisions of the Bidding Procedures Order; (c) the Purchaser agreed to subject its bid to the competitive Bidding Procedures set forth in the Bidding Procedures Order; (d) all payments to be made by the Purchaser pursuant to the Asset Purchase Agreement have been disclosed; (e) no common identity of directors, officers or controlling stockholders exists among the Purchaser and the Debtors; (f) the negotiation and execution of the Transaction Documents were at arm's-length and in good faith, and at all times, each of the Purchaser and the Debtors were represented by competent counsel of their choosing; (g) the Purchaser did not in any way induce or cause the Debtors' filing of these Chapter 11 Cases; (h) the Purchaser has not acted in a collusive manner with any person or entity; and (i) the Purchaser has not otherwise violated Section 365(n) of the Bankruptcy Code by action or inaction. I understand that the Purchaser is not an "insider" of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code.

22. In addition, it is my understanding that the Purchaser would not acquire the Rubraca Assets without the protections afforded by the Sale Order, including as a good faith purchaser free from successor liability claims and all other liens and claims other than the Assumed Liabilities and Permitted Encumbrances. Not transferring the Rubraca Assets free and clear of all Interests would adversely impact the Debtors' efforts to maximize the value of their estates with respect to the Rubraca Assets, and the transfer of the Rubraca Assets other than pursuant to a transfer that is free and clear of all Interests would be of substantially less benefit to the Debtors' estates.

23. I am not aware of any facts demonstrating or suggesting that the purchase price for the Rubraca Assets in the Asset Purchase Agreement was controlled by any agreement among potential bidders. Moreover, to my knowledge, (a) the Asset Purchase Agreement was not entered into by the Debtors, and the transaction is not being consummated for the purpose of hindering, delaying, or defrauding present or future creditors; and (b) the Debtors did not enter into the Asset Purchase Agreement, and are not proposing to consummate the transaction, fraudulently.

24. Finally, in my opinion, the Debtors have demonstrated compelling circumstances for consummating the transactions contemplated by the Asset Purchase Agreement outside the ordinary course of business in order to maximize the value of the Debtors' estates for the benefit of all of their stakeholders.

[*Remainder of Page Intentionally Left Blank*]

- 13 -

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

| | |
|---|---|
| Dated: April 6, 2023<br>New York, New York | /s/ *Alexander Svoyskiy*<br>Alexander Svoyskiy<br>Managing Director<br>Perella Weinberg Partners LP |