# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| CLOVIS ONCOLOGY, INC., *et al.*,[1] | Case No. 22-11292 (JKS) |
| Debtors. | (Jointly Administered) |
|  | **Re: D.I. 31, 33, 35, 257, 322, 363, 435, 437, 539** |

### ORDER WITH RESPECT TO THE DEBTORS' RUBRACA ASSETS (I) AUTHORIZING AND APPROVING THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS IN CONNECTION THEREWITH; AND (III) GRANTING RELATED RELIEF

Upon the motion dated December 12, 2022 [D.I. No. 31] (the "Motion")[2] of the debtors and debtors in possession in the above-captioned cases (the "Debtors") for entry of an order (this "Order"), pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) authorizing and approving the sale (the "Sale") of the Purchased Assets (as defined in the Asset Purchase Agreement (as defined below)) free and clear of all liens, claims, Encumbrances (as defined in the Asset Purchase Agreement), and other interests to the fullest extent permitted by section 363(f) of the Bankruptcy Code, in accordance with the terms and conditions contained in that certain Asset Purchase Agreement, dated as of

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, to the extent applicable, are Clovis Oncology, Inc. (5355), Clovis Oncology UK Limited, and Clovis Oncology Ireland Limited.  The Debtors' headquarters is located at 5500 Flatiron Parkway, Suite 110, Boulder, CO 80301.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Asset Purchase Agreement (as defined herein), the Motion, or the Bidding Procedures Order (as defined herein), as applicable.

April 5, 2023 (including the exhibits and schedules thereto, the "Asset Purchase Agreement"),[3] by and among Debtor Clovis Oncology, Inc. and pharma& Schweiz GmbH (the "Purchaser"); (ii) authorizing and approving the assumption and assignment of certain executory contracts (the "Purchased Contracts"); (iii) authorizing the Debtors to take all actions necessary to consummate the Transactions (as defined in the Asset Purchase Agreement) (the foregoing clauses (i)–(iii) collectively, the "Sale Transaction"); and (iv) granting related relief, all as more fully set forth in the Motion; and this Court having entered the *Order (I) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (II) Authorizing the Debtors to Enter into the FAP Stalking Horse APA and to Provide the FAP Stalking Horse Bid Protections Thereunder, (III) Authorizing Procedures to Designate Additional Stalking Horse Bidder(s) and to Provide Bidding Protections, (IV) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (V) Approving Assumption and Assignment Procedures, (VI) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (VII) Granting Related Relief;* [D.I. 257] (the "Bidding Procedures Order" and the bidding procedures annexed thereto, the "Bidding Procedures"); and the Debtors having conducted an Auction for the Purchased Assets; and the Debtors having determined that the Purchaser has submitted the highest or otherwise best bid for the Purchased Assets, in accordance with the Bidding Procedures, and that Dr. Reddy's Laboratories, Inc. is the Back-Up Bidder (as defined in the Bidding Procedures); and the Court having held a hearing on April 11, 2023 (the "Sale Hearing") to approve the Sale Transaction; and the Court having reviewed and considered (a) the Motion, (b) the objections to the Motion and Sale, if any, (c) all other pleadings filed in support of the Motion, and (d) the arguments of counsel

---

[3]    A true and correct copy of the Asset Purchase Agreement (without schedules or exhibits) is attached hereto as **Exhibit 1**.

made, and the evidence proffered or adduced in connection with the Sale and any hearing related to the Motion or Sale; and due notice of the Motion and the form of this Order having been provided; and all objections to the Sale Transaction and this Order having been withdrawn, resolved or overruled; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors and all other parties in interest; and upon the record of the Sale Hearing and the Chapter 11 Cases; and after due deliberation thereon; and good cause appearing therefore,

**THE COURT HEREBY FINDS AS FOLLOWS:**

<u>**Jurisdiction, Final Order, and Statutory Predicates**</u>

A.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court may enter a final order hereon under Article III of the U.S. Constitution.

B.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.  Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regards to the transactions contemplated by this Order.

D.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding

pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.    The predicates for the relief requested by this Motion are sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014 and Rules 2002-1, 6004-1, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Corporate Authority

F.    Upon entry of this Order, each of the Debtors has or will be deemed to have, to the extent necessary and applicable, (a) full corporate power and authority to execute and deliver the Asset Purchase Agreement, the Ancillary Agreements, and all other documents contemplated thereby (collectively, the "Transaction Documents"), (b) all corporate authority necessary to consummate the Transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents, and (c) taken all corporate action and formalities necessary to authorize and approve the Asset Purchase Agreement, any other Transaction Documents, and the consummation of the transactions contemplated thereby.  The Sale Transaction has been duly and validly authorized by all necessary corporate action.  No consents or approvals other than those expressly provided for in the Asset Purchase Agreement are required for the Debtors to consummate the Sale Transaction, the Asset Purchase Agreement, the other Transaction Documents or the transactions contemplated thereby.

## Retention of Jurisdiction

G.    It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the Asset Purchase

Agreement, the other Transaction Documents, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes involving the Debtors concerning or relating in any way to, or affecting, the Sale Transaction or the transactions contemplated in the Asset Purchase Agreement and the other Transaction Documents or actions taken pursuant to the foregoing.

### Notice of Sale, Auction, Sale Hearing, Asset Purchase Agreement, and Assumption and Assignment of Purchased Contracts

H.     As evidenced by the affidavits of service and publication previously filed with the Court [D.I. 158, 272, 299, 540], actual written notice of the Motion, the Sale Transaction, the Auction, the Sale Hearing, and the transactions contemplated thereby, and a fair and reasonable opportunity to object and to be heard with respect to the Motion and the relief requested therein, has been given to all interested persons and entities, including, without limitation, the following parties in accordance with the Bidding Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules: the office of the United States Trustee for the District of Delaware; all persons and entities known by the Debtors to have asserted any lien, claim, interest, or encumbrance in the Purchased Assets (for whom identifying information and addresses are available to the Debtors); all relevant non-debtor parties (each, a "Counterparty") to any contract that may be assumed, assumed and assigned, or rejected in connection with the Sale Transaction; all of the Debtors' known creditors (for whom identifying information and addresses are available to the Debtors); any governmental authority known to have a claim against the Debtors in these Chapter 11 Cases; all applicable federal, state, and local taxing authorities, including the Internal Revenue Service; the United States Securities and Exchange Commission; the United States Attorney's Office for the District of Delaware; United States Attorney General's Office for the

District of Delaware; the Office of the Attorney General and the Secretary of State in each state in which the Debtors operate; the Antitrust Division of the United States Department of Justice; the Federal Trade Commission; counsel for the official committee of unsecured creditors appointed in these Chapter 11 Cases (the "Committee"); and all of the parties entitled to notice pursuant to Bankruptcy Rule 2002 as of the date of the mailing of the Sale Notice.

I.      In addition, the Debtors have caused notice of the Motion, the Sale, the Auction, and the Sale Hearing to be published in *USA Today* on January 31, 2023 [D.I. 301]. Such notice was sufficient and reasonably calculated under the circumstances to reach persons or entities whose identities are not reasonably ascertainable by the Debtors.

J.      In accordance with the provisions of the Bidding Procedures Order and the Assumption and Assignment Procedures, the Debtors have served the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Sale of the Debtors' Other Assets* [D.I. 322], the *Amended Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Sale of the Debtors' Other Assets* [D.I. 363], and the *Second Amended Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Sale of the Debtors' Other Assets* [D.I. 435] (collectively, the "Cure Notices") and the *Notice of Adequate Assurance Information Related to Successful Bidder for the Debtors' Other Assets,* filed concurrently herewith (the "Adequate Assurance Notice"), and the Notice of Filing of Closing Assigned Contracts, filed concurrently herewith and as may be amended prior to the Closing (as defined in the Asset Purchase Agreement) (the "Closing Assignment Notice") upon the Counterparties of the Purchased Contracts, which together provided notice (i) that the Debtors were seeking to assume and assign to the Purchaser the Purchased

6

Contracts, (ii) of the relevant Cure Costs for the Purchased Contracts, and (iii) of the adequate assurance of future performance of the Purchaser. Service of the Cure Notice and Adequate Assurance Notice was good and sufficient, and appropriate under the particular circumstances, and no other or further notice of the assumption and assignment of the Purchased Contracts or the Cure Costs is or shall be required. Each of the Counterparties to the Purchased Contracts has had an adequate opportunity to object to the Cure Amounts set forth in the Cure Notice and to the assumption and assignment to the Purchaser of the applicable Purchased Contracts, including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the Counterparty from accepting performance by, or rendering performance to, the Purchaser (or its designee) for purposes of Bankruptcy Code section 365(c)(1). All objections, responses, or requests for adequate assurance, if any, have been resolved, overruled, or denied, as applicable, except with respect to the outstanding Assignment and Cure Objections (as defined herein) and unresolved informal comments from the Outstanding Cure Counterparties (as defined herein) set forth in paragraph 49 herein.

K.      As evidenced by the affidavits of service and publication previously filed with the Court [D.I. 158, 299, 272, 540] and based on the representations of counsel at the Sale Hearing, proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures, the Auction, the Sale Hearing, and the Sale Transaction has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 2002-1, 6004-1, and 9013-1. The Debtors have complied with all obligations to provide notice of the Motion, the Bidding Procedures, the Sale Hearing, and the Sale Transaction as required by the Bidding Procedures Order, and the Court has not directed any further notice with respect to the foregoing. The notices described herein were good, sufficient, and appropriate under

the circumstances, and no other or further notice of the Motion, the Sale Transaction, the Auction, the Sale Hearing, or the assumption and assignment of the Purchased Contracts to the Purchaser was, is or shall be required.

### Business Judgment; Best Interests

L.      The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Sale Transaction and the other transactions contemplated by the Transaction Documents.  Entry into the Transaction Documents, and the consummation of the transactions contemplated thereby, including the Sale Transaction and the assumption and assignment of the Purchased Contracts, constitutes a reasonable exercise of the Debtors' sound business judgment and such acts are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.  Such business reasons include, but are not limited to, the following: (i) the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the Sale Transaction presents the best opportunity with respect to the Purchased Assets to maximize the value of the Debtors' estates, is beneficial to the Debtors' estates and is in the best interests of the Debtors and their stakeholders; and (iii) unless the Sale Transaction and all of the other transactions contemplated by the Transaction Documents are concluded expeditiously, recoveries to creditors may be diminished.

### Highest and Best Offer

M.      As demonstrated by the *Declaration of John Cesarz in Support of Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing Entry Into the FAP Stalking Horse APA and to Provide the FAP Stalking Horse Bid Protections Thereunder, (C) Authorizing Procedures to Designate Additional Stalking Horse Bidder(s) and to Provide Bid Protections, (D) Scheduling an Auction*

*and Approving the Form and Manner of Notice Thereof, (E) Approving Assumption and Assignment Procedures, (F) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (G) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [D.I. 35], the *Declaration of Alexander Svoyskiy in Support of Order Approving Sale of the Debtors' Rubraca Assets to the Successful Bidder* [D.I. 560], and the *Supplemental Declaration of Alexander Svoyskiy in Support of Order Approving Sale of the Debtors' Rubraca Assets to the Successful Bidder* [D.I. 569], the Debtors conducted a sale process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order.

N.    The sale process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets. The sale process and the Bidding Procedures were non-collusive, duly noticed, and provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Purchased Assets. In accordance with the Bidding Procedures, the Debtors determined that the bid submitted by the Purchaser and memorialized by the Asset Purchase Agreement is the Successful Bid (as defined in the Bidding Procedures). The Purchaser was the Successful Bidder (as defined in the Bidding Procedures) for the Purchased Assets in accordance with the Bidding Procedures Order and the Bidding Procedures. The Asset Purchase Agreement constitutes the overall highest and best offer for the Purchased Assets. No other person or entity or group of persons or entities has offered to purchase the Purchased Assets, on acceptable or more favorable terms, for an amount that would provide greater economic value to the Debtors and their estates than the value being provided by the Purchaser pursuant to the Asset Purchase Agreement

in the timeframe contemplated by the Bidding Procedures Order. The Debtors' determination, after consultation with the DIP Agent, acting at the direction of the DIP Lenders (as defined in the Final DIP Order)[4] and the Committee, that the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets and constitutes a valid and sound exercise of the Debtors' business judgment. Among other things, the Sale Transaction is the best alternative available to the Debtors to maximize the return to their estates with respect to the Purchased Assets. The terms and conditions of the Asset Purchase Agreement are fair and reasonable.

O.    The Purchaser has given substantial consideration under the Asset Purchase Agreement, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability against the Purchaser that may have been asserted by virtue of the Sale Transaction and/or the Purchaser's continued ownership and operation of the Purchased Assets following the Closing Date (as defined in the Asset Purchase Agreement), which releases shall be deemed to have been given in favor of the Purchaser by all holders of Interests (as defined below) in or against the Debtors, or the Purchased Assets.

P.    The Debtors have also determined, in a valid and sound exercise of their business judgment and in consultation with their advisors and the Consultation Parties, that the next highest or otherwise best Qualified Bid (as defined in the Bidding Procedures) for the Purchased Assets was that of Dr. Reddy's Laboratories, Inc. on the terms and conditions set forth on that certain Asset Purchase Agreement, dated as of March 21, 2023, by and among Debtor Clovis Oncology, Inc. and Dr. Reddy's Laboratories, Inc. (the "Back-Up Bid APA"), as modified by the terms and

---

[4]  "Final DIP Order" means that certain *Final Order (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying Automatic Stay, and (VI) Granting Related Relief*, entered by the Bankruptcy Court in the Chapter 11 Cases on January 24, 2023 [D.I. 256].

conditions of the last bid offered by Dr. Reddy's Laboratories, Inc. on the record at the Auction

and as may be further modified by the Debtors and Dr. Reddy's Laboratories, Inc. (the "Designated

Back-Up Bid").  Pursuant to the Bidding Procedures Order, the Designated Back-Up Bid is binding

on Dr. Reddy's Laboratories, Inc. until the earliest of (a) the first business day after closing of the

Sale Transaction with the Purchaser, (b) 60 days after the entry of this Order, or (c) 70 days after

the Auction.

## No Fraudulent Transfer

Q.     The consideration provided by the Purchaser for the Purchased Assets  pursuant to

the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the

Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be

provided by any other practical available alternative with respect to the Purchased Assets, and (iv)

constitutes reasonably equivalent value, fair consideration and fair value under the Bankruptcy

Code and applicable law, including, without limitation, the Uniform Fraudulent Conveyance Act,

the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, and any other

applicable law.

R.     The Purchaser, by virtue of the Sale Transaction and/or the Purchaser's continued

ownership and operation of the Purchased Assets following the Closing Date, is not a continuation

of the Debtors or their respective estates and the Purchaser is not holding itself out to the public as

a continuation of the Debtors or their respective estates and the Sale Transaction does not amount

to a consolidation, merger, or de facto merger of the Purchaser and the Debtors.

## Good Faith of Purchaser

S.     The Transaction Documents were negotiated, proposed and entered into by the

Debtors and the Purchaser without collusion, in good faith, and from arm's-length bargaining

positions.  None of the Debtors, the Purchaser, any other party in interest, or any of their respective representatives, has engaged in any conduct that would cause or permit the Transaction Documents, or the consummation of the Sale Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any person or entity in connection therewith. Specifically, the Purchaser has not acted in a collusive manner with any person or entity and the purchase price was not controlled by any agreement among bidders.  The Purchaser is not an "insider" of the Debtors as defined in Bankruptcy Code section 101(31).

T.     The Purchaser is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and non-bankruptcy law.  The Purchaser has acted in good faith and in compliance with the terms of the Bidding Procedures and the Bidding Procedures Order in all respects.  Specifically: (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in purchasing the Purchased Assets; (ii) the Purchaser complied in all respects with the provisions of the Bidding Procedures Order; (iii) the Purchaser agreed to subject its bid to the competitive Bidding Procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Purchaser pursuant to the Asset Purchase Agreement have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Purchaser and the Debtors; (vi) the negotiation and execution of the Transaction Documents were at arm's-length and in good faith, and at all times each of the Purchaser and the Debtors were represented by competent counsel of their choosing; (vii) the Purchaser did not in any way induce or cause the Debtors' filing of these Chapter 11 Cases; (viii) the Purchaser has not acted in a collusive manner with any person or entity; and (ix) the Purchaser has not otherwise violated

Section 365(n) of the Bankruptcy Code by action or inaction.  The Purchaser is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Asset Purchase Agreement in accordance with the terms thereof and as set forth in this Order.

### Satisfaction of Section 363(f); No Successor Liability

U.      The Debtors may sell the Purchased Assets free and clear of all liens, Encumbrances, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), rights, obligations, liabilities, and any other interest of any kind or nature whatsoever against the Debtors or the Purchased Assets (other than the Assumed Liabilities or Permitted Encumbrances (as defined in the Asset Purchase Agreement)), including, without limitation, liens of the Prepetition Secured Parties (as defined in the Final DIP Order), DIP Lenders and/or DIP Agent, any liabilities, debts or obligations arising under or out of, in connection with, or in any way relating to, any acts or omissions, agreements, rights, suits, demands, guaranties, contract rights, contractual commitments, licenses, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income, or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, options, option rights or claims, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, offsets, rights of setoff (except to the extent validly exercised prepetition), rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims, labor rights and claims, employment rights and claims, pension rights and claims, employee benefits rights and claims, wage claims, tax claims (including, without limitation, claims for Taxes (as defined in the Asset

Purchase Agreement) of or against the Debtors or their assets), assessments, assertions of regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, contractual or other commitment rights and claims, rights of licensees or sublicensees under section 365(n) of the Bankruptcy Code or any similar statute, the costs and expenses of the administration of the Debtors' estates, all other matters of any kind and nature, any derivative, vicarious, transferee or successor liability claims,  and any other rights, claims or causes of action (whether in law or in equity, under any law, statute, rule or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, direct or derivative, material or non-material, disputed or undisputed, legal or equitable, secured or unsecured, senior or subordinated, and whether imposed by agreement, understanding, law, equity or otherwise, arising under or out of, in connection with, or in any way related to the Debtors (or their predecessors), the Debtors' interests in the Purchased Assets, the operation of the Debtors' businesses before the Closing (as defined in the Asset Purchase Agreement), or the transfer of the Debtors' interests in the Purchased Assets to Purchaser, and all Excluded Liabilities (as defined in the Asset Purchase Agreement) (collectively, and excluding any Assumed Liabilities or Permitted Encumbrances (as defined in the Asset Purchase Agreement), the "Interests").

14

V.     For any party asserting an Interest, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Holders of an Interest in the Purchased Assets: (i) have, subject to the terms and conditions of this Order or the Bidding Procedures Order, consented to the Sale Transaction or are deemed to have consented; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.  Those holders of Interests with actual or constructive notice who did not object or withdrew objections to the Sale Transaction and entry of this Order are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.  The Interests of all holders of liens relating to the Purchased Assets are adequately protected, thereby satisfying section 363(e) of the Bankruptcy Code; provided that such liens, including the Liens of the Prepetition Secured Parties, DIP Agent and DIP Lenders (each as defined in the Final DIP Order), shall attach solely to the proceeds of the Sale Transaction in the order of their priority, and with the same validity, extent, nature, perfection, force and effect that they have against such Purchased Assets immediately prior to consummation of the Sale Transaction.  The Liens, claims, Encumbrances, and other Interests of the DIP Agent, DIP Lenders, and Prepetition Secured Parties shall attach to the proceeds of the Sale, including as set forth in the Final DIP Order and the DIP Credit Agreement (as defined in the Final DIP Order), with the same priority, validity, extent, nature, perfection, force, and effect they now have in, on, or against the Purchased Assets. Upon consummation of the Sale Transaction, the Debtors and their subsidiaries shall immediately deposit all Net Proceeds (as defined in the DIP Credit Agreement) realized by the Sale Transaction into the Rubraca Lockbox Account (as defined in the Final DIP Order [D.I. 256]) in accordance with the Final DIP Order.

W.     The Purchaser would not have entered into the Asset Purchase Agreement and the other Transaction Documents and would not consummate the transactions contemplated thereby, including the Sale Transaction and the assumption and assignment of the Purchased Contracts, (i) if the transfer of the Purchased Assets were not free and clear of all Interests, including, without limitation, rights or claims based on any successor or transferee liability of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase Agreement or this Order with respect to Assumed Liabilities or Permitted Encumbrances) and (ii) if the Purchaser would, or in the future could, be liable for any such Interest. The Purchaser will not consummate the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents, including the Sale Transaction and the assumption and assignment of the Purchased Contracts, unless this Court expressly orders that none of the Purchaser or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Interest.

X.     The Purchaser would not have entered into the Asset Purchase Agreement and would not acquire the Purchased Assets but for the protections against potential claims based upon successor liability, transferee or vicarious liability, de facto merger, or theories of similar effect that are set forth in this Order.

Y.     Not transferring the Purchased Assets free and clear of all Interests would adversely impact the Debtors' efforts to maximize the value of their estates with respect to the Purchased Assets, and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of all Interests would be of substantially less benefit to the Debtors' estates.  The prohibition set forth in this Order against creditors and third parties pursuing Interests on the Purchased Assets is necessary to induce the Purchaser to close on the Sale Transaction, and the issuance of such

relief is therefore necessary to avoid irreparable injury to the Debtors' estates and will benefit the Debtors' creditors.

## Assumption and Assignment of Purchased Contracts

Z.     Except as set forth in the Asset Purchase Agreement, the (i) transfer of the Purchased Assets to the Purchaser and (ii) assignment to the Purchaser of the Purchased Contracts will not subject the Purchaser to any liability whatsoever, including, without limitation, with respect to the operation of the Debtors' businesses or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including any laws affecting antitrust, successor, transferee or vicarious liability.  The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Purchased Contracts to the Purchaser in connection with the consummation of the Sale Transaction, and the assumption and assignment of the Purchased Contracts is in the best interests of the Debtors and their estates. The Purchased Contracts being assigned to the Purchaser are an integral part of the Purchased Assets being purchased by the Purchaser and, accordingly, such assumption and assignment of Purchased Contracts is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair discrimination.

AA.     To the extent applicable, the Debtors and the Purchaser have (i) cured (upon payment of the applicable Cure Costs), or have provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Purchased Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Purchased Contracts within the

meaning of section 365(b)(1)(B) of the Bankruptcy Code. The Purchaser has provided adequate assurance of future performance of and under the Purchased Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

BB.     Any party who asserts that its consent to assignment of any Purchased Contracts is required pursuant to 11 U.S.C. § 365(c) as a condition to the effectiveness of the assignment and failed to timely file an objection to assumption and assignment of its Purchased Contract is deemed to have consented to the assignment of its Purchased Contract.

### Validity of Transfer

CC.     The Debtors have full corporate power and authority (i) to perform all of their obligations under the Transaction Documents and (ii) to consummate the Sale Transaction.  The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets, and will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Interests, as set forth in the Asset Purchase Agreement, with all such Interests attaching to the proceeds of the Sale Transaction in accordance with the terms of this Order and the Final DIP Order.  The Purchased Assets constitute property of the Debtors and good title is vested in the Debtors within the meaning of section 541(a) of the Bankruptcy Code. The Debtors are the sole and rightful owners of the Purchased Assets, and no other person has any ownership right, title, or interests therein.

### Not a *Sub Rosa* Plan

DD.     The Sale Transaction does not constitute a *sub rosa* chapter 11 plan or an element of such plan for the Debtors, for which approval has been sought without the protections that a disclosure statement would afford. The Sale Transaction does not (i) impermissibly restructure the rights of the Debtors' creditors or equity interest holders, (ii) impair or circumvent voting rights

with respect to any future plan proposed by the Debtors, (iii) impermissibly dictate a plan of reorganization or liquidation for the Debtors, or (iv) classify claims or equity interests, compromise controversies, or extend debt maturities.

## Legal and Factual Bases

EE.    The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

## General Provisions

1.    The Motion and the relief requested therein is **GRANTED** and **APPROVED** as set forth herein, and the Debtors are authorized to enter into the Sale Transaction, the Asset Purchase Agreement, the Transaction Documents, and the transactions contemplated by the Transaction Documents, in each case as set forth in this Order.

2.    This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein by reference.

3.    Except with respect to the outstanding Assignment and Cure Objections and unresolved informal comments from the Outstanding Cure Counterparties set forth in paragraph 49 herein, objections to the Motion, if any, or the relief requested therein, the Transaction Documents, the Sale Transaction, the entry of this Order, or the relief granted herein that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof are hereby **DENIED** and **OVERRULED** on the merits with prejudice.  All withdrawn objections are deemed withdrawn with prejudice.  Those parties who did not object to the Motion or the entry of this Order in accordance with the Bidding Procedures Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to sections 363(f)(2) and 365(c) of the Bankruptcy Code.

4.      Dr. Reddy's Laboratories, Inc. is hereby approved as the Back-Up Bidder (as defined in the Bidding Procedures), and the terms and conditions set forth in the Back-Up Bid APA, as modified by the terms and conditions of the last bid offered by Dr. Reddy's Laboratories, Inc. on the record at the Auction and as may be further modified by the Debtors and Dr. Reddy's Laboratories, Inc., are hereby approved and authorized as the Designated Back-Up Bid. The Designated Back-Up Bid is binding on Dr. Reddy's Laboratories, Inc. until the earliest of (a) the first business day after closing of the Sale Transaction with the Purchaser, (b) 60 days after the entry of this Order, or (c) 70 days after the Auction.

### Approval of the Sale of the Purchased Assets

5.      The Debtors' entry into the Asset Purchase Agreement, including any amendments, supplements and modifications thereto, all other Transaction Documents, and all of the terms and conditions therein, is hereby **APPROVED** in all respects.

6.      Pursuant to section 363(b) and (f) of the Bankruptcy Code, the sale of the Purchased Assets to the Purchaser free and clear of all Interests is approved in all respects, with all such Interests attaching to the proceeds of the Sale Transaction in accordance with the terms of this Order and the Final DIP Order, with all such Interests to attach to the proceeds received by the Debtors with the same priority, validity, force and effect as such Interests had in the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

### Sale and Transfer of the Purchased Assets

7.      The consideration provided by the Purchaser for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and applicable law, including, without limitation, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable

law.  The Sale Transaction shall not be avoided or rejected by any person, and costs or damages shall not be imposed or awarded against the Purchaser, under section 363(n) or any other provision of the Bankruptcy Code or applicable state law.

8.      The Sale Transaction authorized herein shall be of full force and effect, regardless of the Debtors' lack or purported lack of good standing in any jurisdiction in which the Debtors are formed or authorized to transact business.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified to the extent necessary to implement the Sale Transaction and the other provisions of this Order; provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

9.      Subject to the terms, conditions, and provisions of this Order, all persons and entities are hereby forever prohibited, enjoined and barred from taking any action that would adversely affect or interfere, or that would be inconsistent with the ability of (a) the Debtors to sell and transfer the Purchased Assets to the Purchaser free and clear of all Interests in accordance with the terms of the Transaction Documents and this Order and (b) the Purchaser to acquire, take possession of, use and operate the Purchased Assets in accordance with the terms of the Transaction Documents and this Order.

10.      Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are hereby authorized to take any and all actions necessary or appropriate to (a) sell the Purchased Assets to the Purchaser, (b) consummate the Sale Transaction and the other transactions contemplated by the Transaction Documents in accordance with, and subject to the terms and conditions of, the Transaction Documents, and (c) transfer and assign all right, title and interest (including common law rights) to the Purchased Assets in accordance with and subject to the terms and conditions of the Transaction Documents, in each case without further notice to or order of

this Court. The Debtors are further authorized to execute and deliver, and are empowered to perform under, consummate and implement, the Transaction Documents, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, including the related documents, exhibits and schedules and to take all further actions as may be reasonably requested by the Purchaser for the purposes of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Purchased Assets, or as may be reasonably necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Asset Purchase Agreement without further notice to or order of this Court. The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any reasonable expenses or costs that are required to be paid to consummate the Sale Transaction or perform their obligations under the Transaction Documents.

11.     Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to the Purchaser on the Closing Date free and clear of all Interests, with all such Interests attaching to the proceeds of the Sale Transaction in accordance with the terms of this Order and the Final DIP Order. The provisions of this Order, including those authorizing and approving the transfer of the Purchased Assets free and clear of all Interests, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to (but may) execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, or implement the provisions of this Order, with all such Interests to attach to the proceeds received by the Debtors with the same priority, validity, force and effect as such Interests had in the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

12.     Following the Closing Date, the Purchaser may, but shall not be required to, file a certified copy of this Order in any filing or recording office in any federal, state, county, or other jurisdiction in which the Debtors are incorporated or have or had real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and, to the extent permitted by applicable law, such filing or recording may be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Order as of the Closing. Upon the Closing, this Order will be construed as, and constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Purchased Assets, including, upon payment of the applicable Cure Costs, the Purchased Contracts, or a bill of sale transferring good and marketable title in such assets to the Purchaser.  Each and every federal, state, and county governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement; provided that if the prior written approval from a foreign governmental entity is required to consummate the transactions contemplated by the Asset Purchase Agreement, then such authorization shall be obtained on or prior to Closing in accordance with the Asset Purchase Agreement.  Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any valid police or regulatory liability to a governmental unit, to which the Purchaser may be subject to as the owner or operator of any property that is a Purchased Asset after the date of entry of this Order; provided, however, that all rights and defenses of the Purchaser under nonbankruptcy law are preserved.  Nothing in this Order or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory

law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

13.    Upon entry of this Order, all persons and/or entities who are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets (the "Possessors of Purchased Assets") are hereby directed to surrender possession of the Purchased Assets directly to the Purchaser or its designee(s) at the Closing or at such time thereafter as the Purchaser may request.  As evidenced by the affidavits of service and publication previously filed with the Court [D.I. 158, 272, 299, 540], the Possessors of Purchased Assets have received notice of the Sale Transaction.  At no cost to itself, Lonza Ltd. will cooperate with surrendering Purchased Assets to the Purchaser without waiver of any rights the Debtors or Lonza Ltd. may have at law or in equity, including, but not limited to, those rights the Debtors or Lonza Ltd. have under the agreements between the Debtors and Lonza Ltd.

14.    Except as expressly permitted by the Asset Purchase Agreement or this Order, all persons and entities, including, but not limited to, the Prepetition Secured Parties, DIP Agent, the DIP Lenders, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, and other creditors, holding Interests against or in a Debtor or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the  Purchased Assets or the operation of the Purchased Assets before the Closing, or the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents, including the Sale Transaction and the assumption and assignment of the Purchased Contracts, are forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such

persons' or entities' Interests, whether by payment, setoff, or otherwise, directly or indirectly, against the Purchaser and its Affiliates, or any successors or assigns, their respective property and the Purchased Assets. Following the Closing of the Sale Transaction, no party shall interfere with the Purchaser's title to, or use and enjoyment of, the Purchased Assets based on or related to any such Interest or based on any action the Debtors have taken or may take in the Chapter 11 Cases.

15.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests against or in the Purchased Assets (including, for the avoidance of doubt, the Prepetition Secured Parties, the DIP Agent and the DIP Lenders) shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all interests which the person or entity has with respect to the Purchased Assets, then with regard to the Purchased Assets that are purchased by the Purchaser pursuant to the Sale Transaction and this Order, to the fullest extent permitted under applicable law (i) the Debtors or their designee are hereby authorized to execute and file such statements, instruments, or releases on behalf of the person or entity with respect to the Purchased Assets and (ii) the Purchaser or its designee is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded shall constitute conclusive evidence of the release of Interests against the Purchased Assets.

16.    At the Closing of the Sale Transaction, (i) each of the Debtors' creditors is authorized to execute such documents and take all other actions as may be reasonably necessary to release its Interests in or against the Purchased Assets, if any, as such Interests may have been recorded or otherwise exist and (ii) the Debtors and the Purchaser are authorized to take such actions as may be necessary to obtain a release of any and all Interests in, on or against the

Purchased Assets, if any, and to the extent contemplated hereby and by the Transaction Documents.

17.     To the extent provided by section 525 of the Bankruptcy Code, no federal, state, or county governmental unit may deny, revoke, suspend, or refuse to renew any permit, license or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents, including the Sale Transaction and the assumption and assignment of the Purchased Contracts. Each and every federal, state, and county governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents, including the Sale Transaction and the assumption and assignment of the Purchased Contracts.

18.     To the greatest extent available under applicable law and in accordance with the Asset Purchase Agreement and the other Transaction Documents, the Purchaser shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and, to the greatest extent available under applicable law and in accordance with the Asset Purchase Agreement and the other Transaction Documents, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Purchaser as of the Closing.

19.     Subject to the terms and conditions of this Order, the transfer of the Purchased Assets to the Purchaser pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Purchaser with all right, title, and

interest of the Debtors in and to the Purchased Assets free and clear of all Interests, with all such Interests attaching to the proceeds of the Sale Transaction in accordance with the terms of this Order and the Final DIP Order, with all such Interests to attach to the proceeds received by the Debtors with the same priority, validity, force and effect as such Interests had in the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

## No Successor Liability

20.     The Purchaser is not, by virtue of the Sale Transaction, the Purchaser's continued ownership and operation of the Purchased Assets following the Closing Date, and/or otherwise, a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, or be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates, other than the Assumed Liabilities or Permitted Encumbrances, with respect to the Purchased Assets, including but not limited to, under any doctrine of successor liability or similar theory of liability.  Except to the extent the Purchaser assumes Assumed Liabilities and Purchased Contracts pursuant to the Asset Purchase Agreement, neither the purchase of the Purchased Assets by the Purchaser nor the fact that the Purchaser is using any of the Purchased Assets previously operated by the Debtors will cause the Purchaser to be deemed a successor in any respect to the Debtors' businesses or incur any liability derived therefrom within the meaning of any foreign, federal, state or county debt collection practices, insurance, revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

21.     Upon consummation of the Sale Transaction, the Purchaser shall not, by virtue of the Sale Transaction and/or the Purchaser's continued ownership and operation of the Purchased

Assets following the Closing Date, be deemed to (a) be the successor to the Debtors, (b) have, *de facto* or otherwise, merged or consolidated with or into the Debtors, or (c) be a mere continuation, alter ego or substantial continuation of the Debtors, including, without limitation, within the meaning of any foreign, federal, state or county debt collection practices, insurance, revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

22.     Except to the extent the Purchaser has specifically agreed in the Asset Purchase Agreement or as otherwise set forth in this Order, the Purchaser shall not have any liability, responsibility or obligation for any claims, liabilities or other obligations of the Debtors or their estates, including any (a) claims or liabilities related to the Purchased Assets that relate to the period prior to the Closing or (b) any claims against and liabilities of the Debtors or any of their predecessors, insiders or affiliates or their respective current or former directors, officers, employees or agents.  By virtue of the Purchaser's purchase of the Purchased Assets, neither the Purchaser nor any of its Affiliates shall have any liability whatsoever with respect to the Debtors' (or their predecessors', insiders' or affiliates' or their respective current or former directors, officers, employees or agents) respective businesses or operations or any of the Debtors' (or their predecessors', insiders' or affiliates' or their respective current or former directors, officers, employees or agents) obligations based, in whole or part, directly or indirectly, on any theory of successor, transferee or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, de facto merger or substantial continuity, discrimination, labor and employment, any law applicable to debt collection practices, insurance law or products liability law, whether known or unknown as of the Closing, now existing or

hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, direct or derivative, including liabilities on account of any Taxes (other than as provided in the Asset Purchase Agreement) arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing.  Under no circumstances shall the Purchaser be deemed a successor of or to the Debtors for any Interests against, in or to the Debtors or the Purchased Assets. The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby but for the foregoing protections against potential claims based upon "successor liability" theories.

23.    None of the Purchaser or its Affiliates, successors, assigns, equity holders, employees or professionals shall have or incur any liability to, or be subject to any action by any of the Debtors or any of their estates, predecessors, successors or assigns, arising out of the negotiation, investigation, preparation, execution or delivery of the Asset Purchase Agreement or the other Transaction Documents or the entry into and consummation of the sale of the Purchased Assets, except as expressly provided in the Asset Purchase Agreement and this Order.

## Good Faith

24.    The transactions contemplated by the Transaction Documents are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided by this Order to consummate the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents, including the Sale Transaction and the assumption and assignment of the Purchased Contracts shall not alter, affect, limit, or otherwise impair the validity of the sale of the Purchased Assets to the Purchaser, including the assumption, assignment, and/or transfer of the Purchased Contracts.  The Purchaser is a good faith purchaser of the Purchased Assets within the meaning of section 363(m) of the Bankruptcy Code and, as

such is entitled to, and is hereby granted, the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code.  The Debtors and the Purchaser shall be acting in good faith if they proceed to consummate the Sale Transaction in accordance with the Asset Purchase Agreement, the other Transaction Documents, and the terms set forth herein.

25.     As a good faith purchaser of the Purchased Assets, the Purchaser has not entered into an agreement with any other potential bidders, and has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Purchased Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Purchaser, and the Sale Transaction may not be avoided pursuant to section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) in respect of the Asset Purchase Agreement, the other Transaction Documents or the Sale Transaction.

## Assumption and Assignment of Purchased Contracts

26.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, and payment of the applicable Cure Costs, the Debtors' assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Asset Purchase Agreement, of the Purchased Contracts is hereby approved.

27.     To the extent applicable in accordance with the Asset Purchase Agreement, the Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon the Closing of the Sale Transaction and the payment by the Purchaser of the Cure Costs associated with the Purchased Contracts, up to the Cure Cost Cap (as defined in the Asset Purchase Agreement), and any remaining Cure Costs being paid by the Debtors on or prior to the Closing, the Purchased Contracts free and clear of all Interests of any kind or nature whatsoever and (b) execute and deliver to the Purchaser such

documents or other instruments as may be necessary to assign and transfer the Purchased Contracts to the Purchaser.

28.     The Purchased Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Purchased Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that purport to prohibit, restrict, or condition such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Purchased Contracts after such assignment to, and assumption by, the Purchaser, except as provided in the Asset Purchase Agreement.

29.     To the extent applicable, and upon payment of the applicable Cure Costs, all Counterparties to the Purchased Contracts have either expressly consented to assumption and assignment of their contracts prior to the Closing or shall be deemed to have consented to such assumption and assignment under section 365(c)(1)(B) of the Bankruptcy Code and any other applicable law and the Purchaser, to the extent applicable, shall enjoy all of the Debtors' rights, benefits, and privileges under each such Purchased Contract as of the applicable date of assumption and assignment.

30.     Upon payment of the applicable Cure Costs and the Debtors' assumption and assignment of the Purchased Contracts under the provisions of this Order, no default shall exist under any Purchased Contract and no Counterparty to any such Purchased Contract shall be permitted to declare or enforce, or otherwise take action against the Purchaser based on, a default by the Debtors that relates to the period prior to the effective date of such assumption and assignment, including failure to perform any obligations under the relevant Purchased Contract, or that relates to any of the Debtors' financial condition, any change in control, or the Chapter 11

Cases.  Any provision in a Purchased Contract that prohibits or conditions the assignment or sublease of such Purchased Contract (including the granting of a lien therein) or allows the Counterparty thereto to terminate, recapture, impose any penalty, declare a default, condition on renewal or extension, or modify any term or condition upon such assignment, sublease, or change of control, constitutes an unenforceable anti-assignment provision that is void and of no force and effect only in connection with the assumption and assignment of such Purchased Contract to the Purchaser.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of the Purchased Contract.  Nothing in this Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors or Purchaser that any Purchased Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code or, subject to the terms of the Asset Purchase Agreement, must be assumed and assigned pursuant to the Asset Purchase Agreement or in order to consummate the Sale Transaction (provided, however, that this shall not apply to the Essential Contracts (as defined in the Asset Purchase Agreement).

31.    All Cure Costs under the Purchased Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be paid by the Purchaser, up to the Cure Cost Cap (as provided in the Asset Purchase Agreement) on or prior to the Closing, and any remaining Cure Costs shall be paid by the Debtors on or prior to the Closing.  For the avoidance of doubt, the Purchaser or the Debtors, as applicable, must pay the Cure Costs to the applicable Counterparty to any Purchased Contract on or prior to the Closing (or as soon as reasonably practicable thereafter); *provided* that, for the avoidance of doubt, the License Agreement, dated as

of June 2, 2011, by and among Debtor Clovis Oncology, Inc. and Pfizer, Inc., is a Purchased Contract.

32.     The Cure Costs for Purchased Contracts listed on the Cure Notices (i) to which no timely objection was submitted, (ii) to which have been revised or modified as agreed between the Debtors and the non-Debtor counterparty, or (iii) to which a timely objection was submitted and was resolved consensually between the Debtors and the non-Debtor party or resolved by the Bankruptcy Court, are hereby fixed at the amounts set forth in the Cure Notices, as resolved consensually or as fixed by the Bankruptcy Court, and the contract Counterparties to such Purchased Contracts are forever bound by such Cure Costs; *provided* that any defaults that arise between the filing of the Cure Notices or the Closing Assignment Notice, as applicable, and the Closing Date must be paid by the Purchaser up to the Cure Cost Cap, or the Debtors, as applicable, as a cure for the applicable contract to be assumed and assigned, and all counterparties rights are reserved with respect to any defaults occurring within that time period.

33.     Upon payment by the Purchaser of the Cure Costs, each non-Debtor party to a Purchased Contract hereby is forever barred, estopped, and permanently enjoined from raising or asserting against the Debtors, the Purchaser, or the property of such parties, any assignment fee, default, breach or claim of pecuniary loss, penalty, or condition to assignment, arising under or related to the Purchased Contracts, existing as of the date that such contracts are assumed, or arising by reason of the consummation of transactions contemplated by the Asset Purchase Agreement or the other Transaction Documents, including the Sale Transaction and the assumption and assignment of the Purchased Contracts.

34.     To the extent a Counterparty to a Purchased Contract failed to timely object, either formally or informally, to a Cure Cost, such Cure Cost shall be deemed to be finally determined

and any such Counterparty shall be prohibited from challenging, objecting to or denying the validity and finality of the Cure Cost at any time, and such Cure Cost, when paid, shall completely revive any Purchased Contract to which it relates.

35.     Notwithstanding anything else contained in this Order, the Bidding Procedures Order, or the Bidding Procedures, the Debtors together with the Purchaser jointly reserve all rights to remove Contracts from the Closing Assignment Notice on or before the date that is three (3) business days prior to Closing, but solely to the extent such Contracts have already been terminated, expired by their terms, are duplicative of other Contracts with the same Counterparty, or are otherwise not related to the Purchased Assets, and such removed contracts shall not qualify as a Purchased Contracts; *provided* that the Debtors and Purchaser may remove other categories of Contracts in accordance with the terms set forth herein with the prior reasonable consent of the Consultation Parties.  The Statement of Work No. 5, dated February 2, 2022, between Clovis Oncology, Inc. and Lonza Ltd., listed on Exhibit A of the Closing Assignment Notice, line 1098.1, shall be removed from the Closing Assignment Notice and shall not qualify as a Purchased Contract.

36.     Upon payment of the applicable Cure Costs, the requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code are hereby deemed satisfied with respect to the Purchased Contracts based on the Purchaser's evidence of its financial condition and wherewithal and without any further action by the Purchaser, including, but not limited to, any other or further deposit. Pursuant to section 365(f) of the Bankruptcy Code, the Purchaser has provided adequate assurance of future performance of the obligations under the Purchased Contracts.

## **Additional Provisions**

37.     To the maximum extent permitted by applicable law, and in accordance with the Transaction Documents, the Purchaser (or its designee) shall be authorized, as of the Closing, to

34

operate under any license, permit, registration, and governmental authorization or approval (collectively, the "Licenses") of the Debtors with respect to the Purchased Assets.  To the extent the Purchaser (or its designee) cannot operate under any Licenses in accordance with the previous sentence, such Licenses shall remain in effect, to the maximum extent permitted by applicable law (including the Bankruptcy Code), while the Purchaser (or its designee), with commercially reasonable assistance from the Debtors, works promptly and diligently to apply for and secure all necessary government or other approvals for new issuance of Licenses to the Purchaser (or its designee). The Debtors shall, at Purchaser's sole cost, maintain the Licenses in good standing to the fullest extent allowed by applicable law (including the Bankruptcy Code) for the Purchaser's benefit until equivalent new Licenses are issued to the Purchaser (or its designee).

38.    The terms and provisions of the Transaction Documents and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their respective affiliates, successors and assigns, their estates, and their creditors, the Committee and any other statutory committee appointed in these Chapter 11 Cases, the Purchaser, and its respective Affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Interests in, on or against the Purchased Assets  to be sold to the Purchaser and all Counterparties to any Purchased Contracts pursuant to the Asset Purchase Agreement and any trustees, examiners, "responsible persons," liquidating trusts, liquidating trustees or other fiduciaries appointed in the Chapter 11 Cases or upon a conversion of the Debtors' cases to cases under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee; and the Transaction Documents shall not be subject to rejection or avoidance under any circumstances.  If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide (in accordance with Bankruptcy Code sections 105 and 349) that this Order and the rights granted to the Purchaser

hereunder shall remain effective and shall remain binding as set forth above, notwithstanding any subsequent dismissal, conversion or appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to trustee(s) such terms and provisions likewise shall be binding.

39.     The failure specifically to include any particular provisions of the Asset Purchase Agreement or the other Transaction Documents in this Order shall not diminish or impair the effectiveness of such provision, and the Asset Purchase Agreement is authorized and approved in its entirety.

40.     The Transaction Documents or any other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, in accordance with the terms thereof, without further order of the Court; provided that any modification, amendment or supplement that has a material and negative effect on the Debtors' estates or their creditors shall be subject to further Court approval.  The Debtors shall consult with the DIP Lenders and the Prepetition Secured Parties and provide notice to the U.S. Trustee and the Official Committee of Unsecured Creditors with respect to any material amendments or modifications to the Transaction Documents.  To the extent that any provision of the Asset Purchase Agreement conflicts with or is, in any way, inconsistent with any provision of this Order, this Order shall govern and control. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion, the terms of this Order shall govern; provided, however, nothing herein shall be deemed to amend, supersede, alter, impair, or otherwise modify (a) the provisions of the (i) Final DIP Order, (ii) the DIP Credit Agreement, or (iii) the other DIP Documents, or (b) the rights of the DIP Agent and DIP Lenders as set forth in the foregoing (a)(i)–(iii).

41.     The Debtors are authorized to enter into any contract or amend any existing contract necessary to meet their obligations under the Asset Purchase Agreement, including, without

limitation, any Ancillary Agreements or other Transaction Documents executed in connection with the Asset Purchase Agreement.  The Debtors shall identify for the advisors to the Committee any Ancillary Agreements or other Transaction Documents the Debtors contemplate executing in connection with the Asset Purchase Agreement as soon as reasonably practicable.  Upon request, the Debtors shall provide the advisors to the Committee with copies of any Ancillary Agreements or other Transaction Documents no later than three (3) business days prior to the earlier of the (a) entry into any such Ancillary Agreements or other Transaction Documents, or (b) the Closing Date. The Committee's rights are reserved in all respects regarding the terms of any Ancillary Agreements or other Transaction Documents.

42.      Any and all valid and perfected liens or other Interests in the Purchased Assets, including those of the Prepetition Secured Parties, DIP Agent and DIP Lenders, shall solely attach to any and all proceeds of the Sale Transaction immediately upon receipt of such proceeds by the Debtors with the same priority, validity, extent, nature, perfection, force, and effect they now have in, on, or against such Purchased Assets, subject to any rights, claims, and defenses of the Debtors, the Debtors' estates or any trustee for any Debtor, as applicable, may possess with respect thereto. In accordance with the terms of the Final DIP Order, the Net Proceeds (as defined in the DIP Credit Agreement) of the Sale Transaction will be immediately paid into and held in the Rubraca Lockbox Account, and shall immediately be used to mandatorily prepay (i) first, all Prepetition Financing Obligations (as defined in the Final DIP Order [D.I. 256]) in full in cash to the Prepetition Agent on behalf of the Prepetition Lenders, and (ii) second, all DIP Loans (as defined in the Final DIP Order) in full in cash to the DIP Agent on behalf of the DIP Lenders, in each case in accordance with the terms of the Final DIP Order, the DIP Credit Agreement, the Prepetition Financing Agreement, and the Plan; provided, that, the Debtors shall provide the Committee with two

business days' notice prior to depositing any Net Proceeds (as defined in the DIP Credit Agreement) of the Sale Transaction into the Rubraca Lockbox Account; provided, further, that any payment of any such Net Proceeds of the Sale Transaction in satisfaction of the Prepetition Financing Obligations (from the Rubraca Lockbox Account or otherwise) shall be subject to any successful Challenge (as defined in the Final DIP Order) to the Prepetition Financing Obligations.

43.     The provisions of this Order are nonseverable and mutually dependent.

44.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale Transaction.

45.     The Debtors and each other person or entity having duties or responsibilities under the Transaction Documents or this Order, and their respective agents, representatives, and attorneys, are authorized and empowered to carry out all of the provisions of the Asset Purchase Agreement, to issue, execute, deliver, file and record, as appropriate, the Asset Purchase Agreement and the other Transaction Documents, and to take any action contemplated by the Transaction Documents or this Order, and to issue, execute, deliver, file and record, as appropriate, such other contracts, instruments, releases, deeds, bills of sale, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary or appropriate to, implement, effectuate and consummate the Asset Purchase Agreement, the other Transaction Documents and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents required by this Court with respect to the implementation and consummation of the Asset Purchase Agreement, the other Transaction Documents and this Order and the transactions contemplated thereby and hereby.  The transfer of the Purchased Assets to the

Purchaser pursuant to the Transaction Documents does not require any consents other than those specifically provided for in the Asset Purchase Agreement or as provided for herein.

46.     Notwithstanding any provision in the Motion, Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, the Asset Purchase Agreement, the Transaction Documents, any Cure Notice(s), Supplemental Cure Notice(s) and/or Closing Assignment Notice(s) (or any other list(s) of Contracts proposed to be assumed and assigned and/or Cure Costs), this Order, or any documents relating to any of the foregoing, solely with respect to the United States federal government, nothing shall: (1) authorize the assumption, sale, assignment or other transfer to the Purchaser of any United States federal government (i) grants, (ii) grant funds, (iii) contracts, (iv) property, including but not limited to, intellectual property and patents, (v) leases, (vi) agreements, (vii) certifications, (viii) applications or other interests of the federal government (collectively, "Federal Interests") without compliance by the Debtors and the Purchaser with all terms of the Federal Interests and with all applicable non-bankruptcy law; (2) be interpreted to set cure amounts or to require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (3) waive, alter or otherwise limit the United States' property rights, including but not limited to, in inventory, inventions, records, patents, intellectual property, licenses, and data; (4) affect the setoff or recoupment rights or defenses of the United States; (5) authorize the assumption, transfer, sale or assignment of any governmental unit's (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements, obligations and approvals under non-bankruptcy laws; (6) release, nullify, preclude or enjoin the enforcement of any police or regulatory liability to a United States federal governmental unit that any entity would be subject to as the post-sale owner or operator of

property after the date of entry of this Order; (7) confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (8) divest any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order; or (9) expand the scope of 11 U.S.C.§ 525.   For the avoidance of doubt and without limiting the foregoing, notwithstanding any provision in the Motion, Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, the Asset Purchase Agreement, the Transaction Documents, any Cure Notice(s), Supplemental Cure Notice(s) and/or Closing Assignment Notice(s) (or any other list(s) of Contracts proposed to be assumed and assigned and/or Cure Costs), this Order, or any documents relating to any of the foregoing, nothing shall impair, affect, alter or modify the rights of the United States government under any statutes (including but not limited to the Federal Food, Drug, and Cosmetic Act and the Public Health Service Act), regulations, rules, guidelines, standards, policies and procedures of the Department of Veterans Affairs or the Department of Health and Human Services, including but not limited to, the Food and Drug Administration.

47.     In the event that the Purchaser fails to consummate the Sale Transaction, the Back-Up Bidder will be deemed to have the new prevailing bid, and the Debtors will be authorized, without further order of this Court, to consummate the Sale Transaction with the Back-Up Bidder as the Purchaser (as such term is used throughout this Order) and such Back-Up Bidder's asset purchase agreement as the Asset Purchase Agreement (as such term is used throughout this Order), including assigning the Purchased Contracts to the Back-Up Bidder.

48.     Notwithstanding anything to the contrary in the Motion, Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, the Asset Purchase

Agreement, the Transaction Documents, any Cure Notice(s), Supplemental Cure Notice(s) and/or Closing Assignment Notice(s) (or any other list(s) of Contracts proposed to be assumed and assigned and/or Cure Costs), this Order, or any documents relating to any of the foregoing, (a) nothing shall permit or otherwise effectuate a sale, an assignment or any other transfer at this time of (i) any insurance policies that have been issued by Federal Insurance Company, Pacific Indemnity Company, and/or any of their U.S.-based affiliates, and/or any predecessors and successors of any of the foregoing (collectively, the "Chubb Companies") to or that provide coverage to any of the Debtors (or their predecessors) at any time and all agreements, documents or instruments relating thereto (collectively, the "Chubb Insurance Contracts"), and/or (ii) any rights, proceeds, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts, unless and until a further order is entered by this Court, at a subsequent hearing, or as submitted under certification of counsel by agreement of the Debtors, the Purchaser and the Chubb Companies, with two business days' advance notice to the Committee, with the rights of all parties in interest fully preserved pending entry of such further order (for the avoidance of doubt, if the Committee does not consent to entry of the order, the order may be entered only after notice and an opportunity to object); (b) such further order, without further notice, may provide, among other things, that (i) subject to the execution of an assumption agreement by the Debtors, the Purchaser and the Chubb Companies, in form and substance satisfactory to each of the parties (the "Chubb Assumption Agreement"), the Debtors are authorized to assume and assign the Chubb Insurance Contracts to the Purchaser, and the Purchaser shall assume and shall be liable for any and all now existing or hereinafter arising obligations, liabilities, terms, provisions and covenants of any of the Debtors under the Chubb Insurance Contracts; (ii) subject to the terms of this paragraph, the Debtors are authorized to enter into the Chubb Assumption Agreement; and/or

(iii) such other and further relief as may be requested by the Chubb Companies, the Debtors and/or the Purchaser; (c) nothing shall alter, modify or otherwise amend the terms or conditions of the Chubb Insurance Contracts; and (d) for the avoidance of doubt, the Purchaser is not, and shall not be deemed to be, an insured under any of the Chubb Insurance Contracts.

49.    At the time of the Sale Hearing, there remain outstanding Assignment and Cure Objections and unresolved informal comments from certain contract counterparties (the "Outstanding Cure Counterparties") regarding the Purchased Contracts. The following Outstanding Cure Counterparties have timely filed Assignment and Cure Objections: AmerisourceBergen Drug Corporation and Affiliates [D.I. 395], Caremark, L.L.C., Caremark PCS Health LLC, and Zinc Health Services LLC [D.I. 512], McKesson Corporation and Certain Corporate Affiliates [D.I. 367], Patheon Inc. [D.I. 377], Patheon UK Limited [D.I. 396], and Synteract, Inc. [D.I. 557].  The Debtors have also received informal comments from IQVIA and MDcentRx LLC which remain subject to ongoing discussion and negotiation.  The Debtors and the Outstanding Cure Counterparties shall continue to use reasonable best efforts to consensually resolve the Assignment and Cure Objections and informal comments after the Sale Hearing and prior to the Closing Date. The Debtors and Outstanding Cure Counterparties reserve all rights to seek further relief from the Court if such consensual resolution cannot be reached, including, among other things (in the case of those Outstanding Cure Counterparties that have filed Assignment and Cure Objections): (i) the Debtors or any Outstanding Cure Counterparty may request a hearing with the Court to determine the Assignment and Cure Objection, and (ii) in the event such a hearing is scheduled, the Debtors may file a reply in response to the Assignment and Cure Objection prior to such hearing date.

50.     Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement, the Purchaser has agreed that AmerisourceBergen Drug Corporation and its affiliates and/or subsidiaries (collectively, "ABDC") and McKesson Corporation and its affiliates and/or subsidiaries (collectively, "McKesson") are authorized to exercise setoff and/or recoupment rights, if any, that arise pursuant to their agreements with the Debtors that are being assumed and assigned by this Order (collectively, the "ABDC and McKesson Agreements") against Purchaser and/or its affiliates or assigns, regardless of whether the respective obligations accrued prior to or after the closing of the Sale Transaction and regardless of whether the product that gave rise to the obligation was purchased from Seller or Purchaser.  Furthermore, Purchaser shall honor return obligations  under the ABDC and McKesson Agreements regardless of whether the product being returned was purchased from Purchaser or Seller.  ABDC and McKesson shall use commercially reasonably efforts to setoff and/or recoup any such obligations against payments due to Purchaser promptly when discovered.

51.     The Debtors may assume and assign to Purchaser (a) the Product Purchase Agreement, dated as of November 14, 2016, between Caremark, L.L.C. and Clovis Oncology, Inc. (the "Product Purchase Agreement"), and (b) the Specialty Pharmacy Services Agreement, dated as of November 14, 2016, between Caremark, L.L.C. and Clovis Oncology, Inc. (the "Specialty Pharmacy Services Agreement", and together with the Product Purchase Agreement, the "Caremark/CVS Agreements," each as amended, supplemented, or modified).  Notwithstanding the proposed Cure Costs set forth on the Cure Notices and Closing Assignment Notice served on Caremark, L.L.C. ("Caremark/CVS"), in the event that the Debtors do assume and assign to Purchaser either of the Caremark/CVS Agreements, Purchaser shall pay the amounts necessary to cure all defaults (whether prepetition or postpetition) under such Caremark/CVS Agreements,

provided that, as set forth in the Asset Purchase Agreement, in no event shall the Purchaser be liable for any Cure Costs, or other amounts necessary to cure any defaults, in excess of the Cure Cost Cap.   The Debtors shall pay any additional amounts necessary to cure all defaults. Notwithstanding Finding U. of this Order, Caremark/CVS retains all rights of recoupment with respect to amounts owed under the Caremark/CVS Agreements, and reserves all rights to cure pursuant to section 365 of the Bankruptcy Code should there be any additional defaults or other obligations of the Debtors under the Caremark/CVS Agreements arising or accruing prior to the Closing Date.

52.     Notwithstanding Bankruptcy Rules 6004(h), 6006(d) and 7062, this Order shall be effective and enforceable immediately upon entry.

53.     This Court shall retain jurisdiction with respect to the terms of this Order and the Asset Purchase Agreement.

54.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

**Dated: April 12th, 2023**
**Wilmington, Delaware**

**J. KATE STICKLES**
**UNITED STATES BANKRUPTCY JUDGE**