```
                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE

                                      .  Chapter 11
IN RE:                                .
                                      .  Case No. 22-11292(JKS)
CLOVIS ONCOLOGY, INC.,                .
et al,                                .
                                      .  824 Market Street
                                      .  Wilmington, Delaware 19801
                       Debtors.       .
. . . . . . . . . . . . . . . . . . . .  Friday June 9, 2023
```

<u>TRANSCRIPT OF VIDEO HEARING RE:
COURT DECISION</u>
ON PLAN CONFIRMATION AND APPROVAL OF DISCLOSURE STATEMENT
BEFORE THE HONORABLE J. KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES VIA ZOOM:

| | |
|---|---|
| For the Debtors: | Andrew R. Remming, Esq. |
| | Matthew O. Talmo, Esq. |
| | Michael A. Ingrassia, Esq. |
| | Sophie Rogers Churchill, Esq. |
| | MORRIS, NICHOLS, ARSHT |
| |  & TUNNELL, LLP |
| | |
| | Rachel C. Strickland, Esq. |
| | Andrew S. Mordkoff, Esq. |
| | Erin C. Ryan, Esq. |
| | Alison Ambeault, Esq. |
| | Steven Ballew, Esq. |
| | Stuart Lombardi, Esq. |
| | Ben McCallen, Esq. |
| | WILLKIE, FARR & GALLAGHER, LLP |

(Appearances Continued)

| | |
|---|---|
| Audio Operator: | Electronically Recorded by Sean Moran, ECRO |
| Transcription Company: | Reliable |
| | 1007 N. Orange Street |
| | Wilmington, Delaware 19801 |
| | (302)654-8080 |
| | Email:  gmatthews@reliable-co.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
APPEARANCES VIA ZOOM:   (Continued)

For the U.S. Trustee:        Jane Leamy, Esq.
                             Rosa Sierra-Fox, Esq.
                             OFFICE OF THE U.S. TRUSTEE


For the Official Committee
of Unsecured Creditors:      Katherine Good, Esq.
                             Christopher M. Samis, Esq.
                             Aaron H. Stulman, Esq.
                             POTTER, ANDERSON & CORROON, LLP

                             Michael Birnbaum, Esq.
                             Raff Ferraioli, Esq.
                             Theresa Foudy, Esq.
                             Seth Kleinman, Esq
                             Lorenzo Marinuzzi, Esq.
                             Alexander Severance, Esq.
                             MORRISON & FOERSTER, LLP


For the Securities and
Exchange Commission:         David Baddley, Esq.
                             U.S. SECURITIES AND EXCHANGE
                              COMMISSION


For ARE - San Francisco:     Michael Busenkell, Esq.
                             GELLERT, SCALI, BUSENKELL
                              & BROWN, LLC


For the Ad Hoc Equity
Committee:                   Robert Weber, Esq
                             CHIPMAN, BROWN, CICERO &
                              COLE, LLP

                             Blaire Cahn, Esq.
                             Jacob Kaplan, Esq.
                             Paul Keenan, Esq.
                             Reginald Sainvil, Esq.
                             BAKER & MCKENZIE, LLP


For TOP IV PSV GP, LLC:      Daniel DeFranceschi, Esq.
                             Zachary Shapiro, Esq.
                             Alexander Steiger, Esq.
                             RICHARDS, LAYTON & FINGER, PA


For Sixth Street:            Jeffrey Saferstein, Esq.
                             WEIL, GOTSHAL & MANGES, LLP



 (Appearances Continued)
```

APPEARANCES VIA ZOOM:   (Continued)

| | |
|---|---|
| For the Ad Hoc Committee of Noteholders: | Mark Felger, Esq.<br>COZEN O'CONNOR |
| For the Ad Hoc Committee of Convertible Noteholders: | Kyle Satterfield, Esq.<br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP |
| For the Chubb Companies: | Catherine Heitzenrater, Esq.<br>DUANE MORRIS, LLP |
| For Alex Zyngier, as Designated Liquidation Trustee: | Seven Levine, Esq.<br>BROWN RUDNICK |
| For 3B Pharmaceuticals GmbH: | Daniela Mondragon, Esq.<br>REED SMITH, LLP |
| For the Bank of New York Mellon Trust Company, N.A.: | Thomas Pitta, Esq.<br>EMMET, MARVIN AND MARTIN, LLP |
| Also Appearing: | Cecilia Gong<br>JEFFERIES, LLC |
| | Iqbal Ahmen, Interested Party on behalf of Shareholders |
| | Peter Boystan, *Pro Se* |
| | Gerald Bumbaugh, Interested Party on behalf of the Equity Committee |
| | Steven "C.," *Pro Se* |
| | John Dodd, Interested Party on behalf of the Equity Committee |
| | Melissa Ellis, *Pro Se* |
| | Leslie FitzGerald, Equity Holder |

(Appearances Continued)

APPEARANCES VIA ZOOM: (Continued)

| | |
|---|---|
| Also Appearing: | Paul Forrest, Interested Party |
| | Bill "H.," Shareholder |
| | Steve Harter, Investor |
| | J. Hertzberg, Interested Party |
| | Scott Ingram, Equity Shareholder |
| | Ryan Kennedy, Interested Party on behalf of Wells Fargo |
| | Robert Kennedy, Shareholder |
| | Mohsen Kheradbin, Shareholder |
| | Hossein Kheradbin, Interested Party on behalf of Shareholders |
| | Chris Nashed, *Pro Se* |
| | Chris Prohoroff, Shareholder |
| | Jeremy Paye, Interested Party on behalf of Shareholders/Equity Committee |
| | Reid Roak, Interested Party on behalf of OEC |
| | Stephen "S.," Interested Party on behalf of Clovis Recovery Group |
| | Richard Sain, Shareholder |
| | Gibbons Sinclair, Interested Party on behalf of the Official Committee of Unsecured Creditors |
| | Fernando Sirio, Interested Party on behalf of OEC |
| | Al Stockli, Interested Party on behalf of EC |
| | David Yao, Shareholder |

(Appearances Continued)

```
APPEARANCES VIA ZOOM:   (Continued)

Also Appearing:            Patrick Holohan
                           DEBTWIRE

                           Cathy Ta
                           REORG RESEARCH
```

1      (Proceedings commence at 11:01 a.m.)

2             THE ECRO:  Counsel, we're now live in the courtroom

3  and the hearing is about to begin.

4             Please remember to state your name for the record

5  when you speak and every time you speak.  Please stay muted

6  if you're not speaking to the Judge, so the Judge can

7  concentrate on the parties that are presenting at the time.

8  Thank you.

9             THE COURT:  Good morning, everyone.  This is Judge

10 Stickles.  We're on the record in Clovis Oncology, Case

11 Number 22-11292.

12            This is the time set aside for the Court's ruling

13 on confirmation of the debtors' third amended plan.  All

14 objections have been presented and the evidence closed,

15 except for with respect to the plan settlement.

16            As discussed on the record at the hearing on

17 Monday, the creditors' committee and Sixth Street have

18 entered into a plan settlement that settles the committee's

19 challenge and claim objection.  The terms of the proposed

20 plan settlement are incorporated into the third amended plan.

21            The debtors filed a 9019 motion seeking approval of

22 the plan settlement.  And based on agreement between the

23 parties, the Court will hold a hearing on the plan settlement

24 on June 14.  The hearing on the merits of the proposed plan

25 settlement is a gating confirmation issue.  And although

bifurcated from today's ruling, that issue will be addressed on the 14th.

Today's ruling relates to the first part of the bifurcated confirmation of the debtors' third amended plan.

Prior to the confirmation hearing on June 5, I reviewed the second and third amended plan, plan supplement, and related documents, as well as the objections to confirmation filed by the SEC, the United States Trustee, the equity committee, and Chubb Companies. The Chubb objection was withdrawn prior to the hearing.

I also reviewed the debtors' comprehensive memorandum in support of approval of the disclosure statement and confirmation of the plan. And while that memorandum is not evidence, it is part of the record before the Court. The memorandum lays out with specificity how the debtors have satisfied their various statutory burdens and requirements.

I also reviewed the creditors' committee's reply.

I listened to the evidence and weighed the arguments of counsel and the evidence presented, including:

The Orchowski declaration regarding solicitation of votes and tabulation of ballots at Docket 809, and his cross-examination at the hearing;

The DelConte declaration in support of confirmation at Docket 825 and his cross-examine at the hearing -- his cross-examination at the hearing.

1   With respect to the disclosure statement, I'm
2   satisfied that the debtors have carried their burden under
3   Section 1125 of the Bankruptcy Code.  The disclosure
4   statement describes, among other things:
5       The background of the debtors;
6       Events leading to the Chapter 11 filings;
7       Events during the cases;
8       Various provisions of the plan, including
9   classification, treatment of claims, means for implementing
10  the plan, distributions, treatment of executory contracts and
11  leases, the plan's release and injunction and exculpation,
12  risk factors, and tax consequences.
13      The disclosure statement contains information
14  adequate to permit a hypothetical stakeholder to make an
15  informed decision to vote for or against the plan.  So the
16  disclosure statement is approved on a final basis.
17      The debtors have also met their burden and all of
18  the applicable subsections of Section 1129 of the Bankruptcy
19  Code are satisfied to confirm the third amended plan.  I'm
20  not going to address each standard, but I will note:
21      No one has challenged classification.
22      The plan satisfies the best interests test.
23      The liquidation analysis annexed as Exhibit B to
24  the disclosure statement reflects that holders would receive
25  less under a Chapter 7 liquidation than under the plan.

1       And the plan satisfies the cramdown requirement
2  because the plan does not discriminate unfairly and is fair
3  and equitable with respect to the non-accepting impaired
4  classes.
5       Objections were raised to three plan provisions:
6  Exculpation, debtor releases, and third-party releases.  The
7  following are my factual findings and legal rulings in the
8  order of the issues that were presented at the confirmation
9  hearing:
10      With respect to exculpation, on multi-judge court,
11 I think it is appropriate to resolve disputes in ways that
12 are broadly aligned with how other judges on this Court will
13 resolve them whenever there is a potential to do so to
14 promote consistency and predictability.
15      This Court has interpreted PWS as implying that a
16 party's exculpation is based upon its role or status as an
17 estate fiduciary.  And this Court has further held that
18 exculpation must exclude non-fiduciaries.
19      Here, the debtors have limited the period of
20 exculpation from the petition date to the effective date.
21 However, I am going to require modification of the definition
22 of "exculpation" to include the period of exculpation by
23 insertion of the phrase "at any time between the petition
24 date and effective date" at Clauses 4 and 5.
25      The remaining objection lies with the definition of

the "exculpated party."  The U.S. Trustee asserts the definition is overly broad and should be limited to identified actual estate fiduciaries who served during the Chapter 11 cases, whereas the debtors seek a more inclusive definition.

The definition includes language limiting the exculpation to estate fiduciaries.  This limiting language allows the Court to make a determination at a later date, if necessary, as to whether an individual served as an estate fiduciary.  This language has been previously approved by judges on this Court in other plans in this District.  So I will overrule the United States Trustee's objection to the exculpation provision in the plan.

With respect to releases, first I'll address debtor releases that are opposed by the equity committee.  The equity committee argues that, given the totality of the facts, the debtor releases are not warranted because the releases are not critical to the liquidation, there has been no substantial contributions by the directors and officers, and certain employees received court-approved KEIP payments.

The creditors' committee and Sixth Street support the debtors' releases.

A debtor may release claims under Section 1123(b)(3)(A) if the release is a valid exercise of the debtors' business judgment, is fair, reasonable, and in the

1  best interests of the estate.

2  The DelConte declaration establishes that the
3  debtors' releases are the product of good faith, arm's length
4  negotiations in exchange for substantial consideration from
5  various parties, including the released parties, and are
6  critical to obtaining the support of various constituencies
7  for the plan and the funding of the plan.  The DelConte
8  declaration details the substantial contribution of the
9  released parties.  No contrary evidence has been presented.

10  Excuse me.

11  Further, the creditors' committee conducted an
12  investigation with comprehensive discovery and concluded no
13  estate causes of action exist.  Again, no contrary evidence
14  has been presented.

15  The propriety of the debtor releases is also
16  supported by the identity of interests that exists between
17  the debtors and their D&Os arising out of certain indemnity
18  relationships.

19  Accordingly, the Court finds that the debtor
20  releases satisfy the Zenith factors and are fair and
21  reasonable and a valid exercise of debtors' business
22  judgment.

23  Second, the SEC, the United States Trustee, and the
24  equity committee object to the third-party releases, arguing
25  the opt-out mechanism should be overruled.

1           As a threshold matter, I find that the third-party
2  releases are consensual because creditors and interest
3  holders had the ability to opt out of the plan release
4  provision.  The record reflects, with respect to non-voting
5  classes, the notice of non-voting status and combined hearing
6  contains the full text of the injunction, exculpation, and
7  release provisions set forth in Article 11 of the plan.  The
8  notice conspicuously states in bold, capitalized, and
9  partially underscored text that:
10                "Upon confirmation of the plan, any non-voting
11           party deemed to reject the plan will be deemed to
12           have consented to the release provisions, unless
13           such party completes the opt-out election form
14           enclosed with the notice and returns the completed
15           and signed opt-out election form."
16           The notice further states:
17           "Any such non-voting party that submits an opt-out
18           election form will be deemed to opt out of such
19           release provisions."
20           The opt-out election form provides instructions for
21  opting out of the third-party release, stating:
22           "You must affirmatively check the box above in
23           order to opt out of the third-party release."
24           None of the objectors challenged the content of the
25  notice or the opt-out election form.

As I and others on this Court have previously ruled, where the disclosure is prominent and conspicuous, an opt-out mechanism is a valid means of obtaining consent. It is incumbent upon affected parties who have been properly served to protect their own rights. Parties that fail to act in response to a judicial process are routinely bound by the results of the process. Creditors have an obligation to read their mail and respond, if appropriate. This procedure is not unique and is routinely utilized.

The SEC, the U.S. Trustee, and the equity committee argue that public shareholders in Class 7 should not be required to grant a release since they are non-voting parties and their equity interests will be canceled and eliminated under the plan. The objectors suggest that the Court impose a different standard, depending on whether a holder is voting or non-voting, or depending on the anticipated recovery to the holder under the plan.

They rely on the Court's ruling in Tricida, Inc., that an opt-out provision for out-of-the-money, non-voting public shareholders does not constitute a consensual release. In that case, the Judge remarked common sense would dictate that such shareholder would lose interest in the case, in contrast to the typical situation for general unsecured creditors who participate fully in the case and have their interests represented by an official unsecured creditors'

1    committee.

2            Here, there are two official committees with
3    experienced counsel, representing the interests of both
4    general unsecured creditors and equity holders. The record
5    in this case reflects that the equity holders have been
6    involved in these cases, both through an ad hoc committee and
7    an official committee.

8            In fact, at the May 25 hearing on the motion to
9    disband the equity committee, it was represented to this
10   Court that the United States Trustee's Office received
11   nonstop calls, emails, and requests to form an equity
12   committee from the equity holders. Unlike Tricida, there is
13   no indication that equity has lost interest in these cases.

14           There is no principal or logical way to distinguish
15   the use of an opt-out notice between a non-voting or voting
16   creditor, whether in the money or not, when adequate notice
17   has been provided. An equity security holder is a party-in-
18   interest in a case under Section 1109.

19           Further, the objection contends that, where a
20   holder is not receiving a distribution under the plan, an
21   opt-out is inappropriate. In this specific case, equity has
22   argued that it is in the money and the plan provides for an
23   intra-CVR in the event that equity is in the money. Because
24   equity may be in the money, this argument fails.

25           The objectors also argue service discrepancies,

comparing certain names on the equity service -- equity security holders list as of the petition date to the equity security holders service list as of the record date that was used to serve the notice and non-voting status.

Absent evidence of an actual service defect for consideration, the Court finds it plausible that the equity security holders as of the petition date may not be the same equity holders as of the record date. The use of a record date ensures that the equity security holder's claim is based on a security of record on a date fixed by the Court. Here, the record date was April 18th, four months after the petition date. So it's not surprising that the equity security holders might have changed.

If the debtors did not serve an equity holder, debtors did so at their peril. The Court has repeatedly stated, if a creditor or an equity holder has not been served with notice, the third-party release is not binding on that equity holder.

The SEC also challenges the notice process, arguing that service of the notice of non-voting status and the opt-out election form to equity holders through nominees turns notice on its head because there's no evidence that the nominee actually sent the notice.

It is customary for public corporations to rely on nominees to serve notices and other corporate communications.

1  I see no reason why service of court-approved documents,
2  including solicitation materials, should be treated
3  differently from service of proxy statements or other
4  corporate documents.
5      And to be clear, again, if a holder was not served
6  with notice, the release is not binding on them.
7      Third, the SEC argues this Court lacks
8  constitutional authority to enter a final order confirming a
9  plan that releases and enjoins shareholder claims against
10 nondebtor entities.  The argument is joined by the equity
11 committee.
12     The Court disagrees.  The Court can exercise its
13 authority because the releases and consensual; and,
14 furthermore, based on the evidence, the releases were
15 critical to obtaining the support of various constituencies
16 for the plan and the funding of the plan.
17     Lastly, based on the evidence presented and the
18 lack of any objection, I find that cause exists to waive the
19 stay of the confirmation order so that it will be effective
20 immediately upon its entry.
21     So, in conclusion, I will require that the
22 definition of "exculpated party" be modified, or
23 "exculpation" be modified.
24     And as a housekeeping matter, we have a hearing
25 next Wednesday, or this coming Wednesday, to address the 9019

```
 1    motion.  So I don't know if the debtors want to wait until
 2    then to submit a form of order.  It seems to me that would
 3    make sense at this juncture, but I -- does anyone want to be
 4    heard on that issue?
 5              MS. STRICKLAND:  Yes, Your Honor.  We are planning
 6    on submitting one order at the conclusion of that hearing,
 7    and that will give us time to address the language and confer
 8    with all of the parties.
 9              THE COURT:  Okay.  All right.  Thank you, all.
10              And I very much appreciate everyone getting on the
11    phone this morning.  I'm looking forward to our hearing next
12    week.
13              Unless there's anything further, we are adjourned
14    for today.  Is there anything further?
15              MS. STRICKLAND:  Thank you, Your Honor.
16              THE COURT:  Okay.
17              COUNSEL:  Thank you.  Thank you, Your Honor.
18              MS. STRICKLAND:  Have a good weekend.
19              THE COURT:  Thank you, all.  Have a great weekend.
20    We stand adjourned.
21              UNIDENTIFIED:  Thank you.
22              THE COURT:  I will see you all Wednesday.
23         (Proceedings concluded at 11:19 a.m.)
24                              *****
```

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

_____    June 9, 2023

Coleen Rand, AAERT Cert. No. 341

Certified Court Transcriptionist

For Reliable